# Consolidated Class Action Complaint

# Part 3 of 3

135.    The foregoing advertisement is misleading and/or deceptive as it fails to disclose that AstraZeneca has manufactured and distributed for sale Nexium solely to maintain the profits that derive from sales of a brand name drug and that AstraZeneca manufacturers a far less expensive drug that is equally as effective. The foregoing advertisement is part of an unfair scheme by AstraZeneca to falsely promote and create demand for this product through a combination of promotion to doctors and direct-to-consumer advertising. The effect of the unfair scheme was to create demand for Nexium where no such demand would have existed if AstraZeneca had told the truth about Nexium, and a further effect was to increase the price of Nexium beyond its worth if the truth had been told. Further, this advertisement makes additional claims that are misleading. First, that it's proven effective compared with a placebo. This is deceptive because it fails to disclose that at the same time AstraZeneca studied Nexium versus a placebo it also studied Nexium versus Prilosec and that the FDA specifically found that these studies did not demonstrate any superiority over Prilosec. In this advertisement, AstraZeneca actually mentions studies comparing Nexium to Prilosec, but omits all of the conclusions showing a lack of superiority. The advertisement also is false or misleading for failure to disclose the manner in which Nexium's dosage was slanted to try and prove superiority over Prilosec and that certainly at the dose recommended by FDA reviewers, no superiority exists. The statement, "proven acid control" is deceptive in that there is no clinical study, or data making any clinical relevance, supporting such a claim. The term "first-line of PPI therapy" is misleading in that it implies that other PPIs are second line when in fact all are equivalent. And the statement "#1 PPI recommended by GEs" is intended to convey the impression that doctors believe Nexium is superior. This statement is misleading as doctors' prescription of Nexium was the direct result of AstraZeneca's misleading promotional practices.

136.   The following advertisement appeared in print throughout the nation:



137.    The foregoing advertisement is misleading and/or deceptive as it fails to disclose that AstraZeneca has manufactured and distributed for sale Nexium solely to maintain the profits that derive from sales of a brand name drug and that AstraZeneca manufacturers a far less expensive drug that is equally as effective. The foregoing advertisement is part of an unfair and deceptive scheme by AstraZeneca to falsely promote and create demand for this product through a combination of promotion to doctors and direct-to-consumer advertising. The effect of the unfair scheme was to create demand for Nexium where no such demand would have existed if AstraZeneca had told the truth about Nexium, and a further effect was to increase the price of Nexium beyond its worth if the truth had been told. Further, by referring to clinical evidence, but by suppressing clinical evidence as to studies showing a lack of superiority over Prilosec, the advertisement is additionally deceptive. The statement "#1 PPI prescribed by gastroenterologists" is deceptive and creates a false impression in that Nexium's popularity with doctors is the by-product of AstraZeneca's unlawful promotional activities described in this Complaint. The statement "Protection Beyond Symptom Relief" ... in "GERD patients" is misleading in that it implies Nexium is effective for GERD patients when the FDA reviewers found that Nexium and other PPIs are "not very effective in this indication" and that a "large portion of s-GERDs patients (66% in one trial and 58% in another) do not benefit ... from such treatment."

138.    The following advertisement appeared in the print media throughout the nation:



## It's Different For People with Acid Reflux Disease.

How often is it that you're up at night because heartburn just won't leave you alone? If you've changed your diet, treated the symptoms, but still suffer from persistent heartburn 2 or more days a week, you could have acid reflux disease. And if you do, it can affect everything, from how you sleep to what you eat. But for many people, just one prescription NEXIUM daily–along with sensible diet and lifestyle changes–can take away the heartburn, day and night, for a full 24 hours.

### Relieve the heartburn. Heal the damage.

 NEXIUM tackles acid reflux at the source. That's important because even a little heartburn, over time, can still mean serious damage to your esophagus. For most people, NEXIUM heals that damage. Your results may vary.

Unlike your stomach, your esophagus offers no protection against churning acid. When acid rises into the esophagus, it can eventually wear away the lining. This condition is called erosive esophagitis and only a doctor can determine if you have it.

NEXIUM works by "turning off" many of the pumps that produce acid. Once the amount of acid has been reduced, NEXIUM can begin to heal any erosions caused by acid reflux disease. Most erosions heal in 4 to 8 weeks with NEXIUM. Your results may vary.

Talk with your health care professional to see if NEXIUM is right for you. NEXIUM has a low occurrence of side effects, including headache, diarrhea and abdominal pain. Symptom relief does not rule out serious stomach conditions.

Don't let acid reflux keep you up.

### Relief. Healing. NEXIUM.



For a Free Trial Offer, visit us at purplepill.com or call 1-800-79-NEXIUM
Please read the important Product Information about NEXIUM on the following page and discuss it with your doctor.
AstraZeneca

139.    The foregoing advertisement is misleading and/or deceptive as it fails to disclose that AstraZeneca has manufactured and distributed for sale Nexium solely to maintain the profits that derive from sales of a brand name drug and that AstraZeneca manufacturers a far less

expensive drug that is equally as effective. The advertisement also fails to disclose that Nexium has a greater incidence of the most common side effects, including headache, abdominal pain, and diarrhea. The foregoing advertisement is part of a scheme by AstraZeneca to falsely promote and create demand for this product through a combination of promotion to doctors and direct-to-consumer advertising. The effect of the unfair scheme was to create demand for Nexium where no such demand would have existed if AstraZeneca had told the truth about Nexium, and a further effect was to increase the price of Nexium beyond its worth if the truth had been told. Further, this advertisement again uses the term "healing purple pill" and the depiction of a jazzed up purple pill (Prilosec didn't have the stripes). Even though Prilosec is not mentioned per se, the implicit message is that Prilosec was the purple pill, but that this purple pill has healing powers that the old purple pill didn't have. If you want some relief, get Prilosec; if you want to get healed get Nexium. The fact that Prilosec went OTC plays into this perception, Nexium must be stronger if you need a prescription for it, Prilosec must not be as powerful because you can take it off the shelf without a prescription.

140.    The following advertisement appeared throughout the nation:



141.    The foregoing advertisement is misleading and/or deceptive as it fails to disclose

that AstraZeneca has manufactured and distributed for sale Nexium solely to maintain the profits

that derive from sales of a brand name drug and that AstraZeneca manufacturers a far less

expensive drug that is equally as effective. The foregoing advertisement is part of an unfair

scheme by AstraZeneca to falsely promote and create demand for this product through a

combination of promotion to doctors and direct-to-consumer advertising. The effect of the unfair

scheme was to create demand for Nexium where no such demand would have existed if AstraZeneca had told the truth about Nexium, and a further effect was to increase the price of Nexium beyond its worth if the truth had been told. Further this advertisement also is deceptive where it states that "nationwide, doctors who specialize in acid reflux have switched more patients to Nexium," in that such switching was the result of an unfair and deceptive promotional scheme not, as implied by the advertisement, due to the superiority of Nexium. Further, this advertisement again uses the term "purple pill" and the depiction of a jazzed up purple pill (Prilosec didn't have the stripes). Even though Prilosec is not mentioned per se, the implicit message is that Prilosec was the purple pill, but that this purple pill has healing powers that the old purple pill didn't have. If you want some relief, get Prilosec; if you want to get healed get Nexium. The fact that Prilosec went OTC likely plays into this perception, Nexium must be stronger if you need a prescription for it, Prilosec must not be as powerful because you can take it off the shelf without a prescription.

142.    The following advertisement appeared in print throughout the nation:



143.    The foregoing advertisement is misleading and/or deceptive as it fails to disclose that AstraZeneca has manufactured and distributed for sale Nexium solely to maintain the profits that derive from sales of a brand name drug and that AstraZeneca manufacturers a far less expensive drug that is equally as effective. The foregoing advertisement is part of an unfair scheme by AstraZeneca to falsely promote and create demand for this product through a combination of promotion to doctors and direct-to-consumer advertising. The effect of the unfair scheme was to create demand for Nexium where no such demand would have existed if AstraZeneca had told the truth about Nexium, and a further effect was to increase the price of Nexium beyond its worth if the truth had been told. Further, by referring to clinical data while suppressing clinical data regarding the lack of superiority over Prilosec, the advertisement is misleading. And by referring to "#1 PPI," AstraZeneca implies that it is the most widely accepted treatment due to its superiority, when in fact its acceptance was achieved as a direct result of AstraZeneca's deceptive promotion to doctors. The statement "Protection Beyond Symptom Relief" ... in "GERD patients" is misleading in that it implies Nexium is effective for GERD patients when the FDA reviewers found that Nexium and other PPIs are "not very effective in this indication" and that a "large portion of s-GERDs patients (66% in one trial and 58% in another) do not benefit ... from use of Nexium or other PPIs"

144.   The following advertisement appeared in print media throughout the nation:





145.    The foregoing advertisement is misleading and/or deceptive as it fails to disclose that AstraZeneca has manufactured and distributed for sale Nexium solely to maintain the profits that derive from sales of a brand name drug and that AstraZeneca manufactures a far less expensive drug that is equally as effective.  The foregoing advertisement is part of an unfair scheme by AstraZeneca to falsely promote and create demand for this product through a combination of promotion to doctors and direct-to-consumer advertising.  The effect of the unfair scheme was to create demand for Nexium where no such demand would have existed if AstraZeneca had told the truth about Nexium, and a further effect was to increase the price of Nexium beyond its worth if the truth had been told.  This advertisement is also misleading in that the statement "Nexium heals better than the other leading medicine," fails to disclose that it does not heal better than Nexium's own drug, Prilosec.  Further, this advertisement again uses the term "healing purple pill" and the depiction of a jazzed up purple pill (Prilosec didn't have the stripes).  Even though Prilosec is not mentioned per se, the implicit message is that Prilosec was the purple pill, but that this purple pill has healing powers that the old purple pill didn't have.  If you want some relief, get Prilosec; if you want to get healed get Nexium.  The fact that Prilosec went OTC likely plays into this perception, Nexium must be stronger if you need a prescription for it, Prilosec must not be as powerful because you can take it off the shelf without a prescription.

146.    The foregoing advertisements are just examples of the themes and messages conveyed in advertisements and promotional materials distributed to doctors and/or consumers during the Class Period.  The net effect of this misleading campaign was to establish Nexium in the minds of doctors and consumers as a superior drug for acid relief and as such to allow it to command a price substantially in excess of generic Prilosec.

## V.   CLASS ALLEGATIONS

147.   Plaintiffs bring this action on behalf of themselves and a Class defined as follows:

> All persons or entities who purchased Nexium up to and including
> the present. Said Class includes consumer, third party payors, cash
> payors and those making a co-pay. Excluded from the Class are
> persons or entities whose purchase was made in the
> Commonwealth of Massachusetts or the State of California.

148.   The Class consists of hundreds of thousands of individuals and entities throughout

the nation, making individual joinder impractical. The disposition of the claims of the Class

members in a single class action will provide substantial benefits to all parties and to the Court.

149.   The claims of the representative Plaintiffs are typical of the claims of the Class

because they, like all Class members, have purchased Nexium and have been harmed by

Defendants' misconduct because they would not have purchased Nexium had they known the

truth.

150.   The factual and legal bases of Defendants' misconduct are common to all Class

members and represent a common thread of deception and other misconduct resulting in injury to

the representative Plaintiffs and all members of the Class.

151.   There are many questions of law and fact common to the representative Plaintiffs

and the Class, and those questions substantially predominate over any questions that may affect

individual Class members. Common questions include, but are not limited to, the following:

    (a) Whether Defendants' active concealment of and/or failure to disclose
      the true benefits and costs of Nexium was likely to mislead or
      deceive within the meaning of the state law;

    (b) Whether Defendants' active concealment of and/or failure to disclose
      the true nature of Nexium's effectiveness is unfair within the
      meaning of state law, in that the harm to consumers and the public of
      such conduct outweighs its benefits;

    (c) Whether Defendants' active concealment of and/or failure to disclose
      the true nature of Nexium's effectiveness and benefits is unlawful
      within the meaning of state consumer protection law;

(d)     Whether Defendants engaged in false advertising within the meaning of relevant consumer protection statutes when it represented, through its advertisements, promotions and other representations, that Nexium had characteristics that it does not actually have or omitted to disclose material facts regarding Nexium's actual characteristics;

(e)     Whether Defendants should be declared financially responsible for notifying all Class members of the true nature of Nexium; and

(f)     Whether Defendants should be ordered to disgorge, for the benefit of the Class, all or part of their ill-gotten profits received from the sale of Nexium, and/or to make restitution to Plaintiffs and the members of the Class.

152.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving pharmaceutical sales. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel has any interests adverse to those of the Class.

153.    Plaintiffs and the members of the Class suffered, and will continue to suffer, harm as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most members of the Class likely would find the cost of litigating their claims to be prohibitive, and will have no effective remedy at law. Because of the relatively small size of each individual Class member's claims, few Class members likely could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class members will continue to suffer harm and Defendants' misconduct will proceed without remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. Additionally, Defendants have acted and failed to act on grounds generally applicable to the

representative Plaintiffs and the Class, and require Court imposition of relief as to the Class as a whole.

## VI.    CAUSES OF ACTION

### FIRST CLAIM
### Violations of Delaware Consumer Fraud Act
### (6 Del. C. § 2511, *et seq.*)

154.    The preceding paragraphs of this Complaint are realleged and incorporated by reference as if fully set forth herein.  Plaintiffs assert this claim on behalf of themselves, the general public, and the members of the Class.

155.    Defendants' actions, as complained of herein, constitute false promises, misrepresentations, and/or the concealment, suppression, or omission of material facts committed with the intent that others rely on such actions in violation of the Delaware Consumer Fraud Act.  Defendants violated the law by engaging in the following conduct:

(a)    Creating demand for Nexium that would not have existed had AstraZeneca told the truth to doctors and consumers;

(b)    Advertising, marketing and promoting a more expensive product without full disclosure that virtually the exact same product can be bought from the same manufacturer at a lower price and that the lower priced product can achieve the same clinical benefits;

(c)    Advertising, marketing and promoting Nexium to doctors and consumers as "more powerful," as offering "significant improvements over Prilosec," and as being "more effective."  In comparable doses Nexium is certainly not more effective and at 40 mg was found by the FDA to not be superior to Prilosec.  Further, Nexium is far more expensive than comparable drugs, and in fact, Nexium was promoted solely for financial reasons and not due to any material increase in medical efficacy;

(d)    Advertising, marketing and promoting Nexium by suppressing and/or omitting studies that demonstrated that Nexium was not more effective than Prilosec for most

patients and was not more effective at equivalent doses to the standard therapeutic dose of Prilosec;

(e)    Advertising, marketing and promoting Nexium by suppressing and/or omitting that the recommended dose of Nexium was 20 mg and that the clinical trials showed no difference between 20 mg of Nexium and 20 mg of Prilosec. Therefore, to "justify" marketing Nexium, AstraZeneca escalated the dose used in clinical trials to 40 mg, to create a basis, albeit a false one, for claiming that Nexium was superior to Prilosec or other PPIs;

(f)    Advertising, marketing and promoting Nexium as the "new purple pill," "today's purple pill," the "healing purple pill" and similar phrases that were intended to and did implicitly or explicitly suggest that Nexium was more efficacious than Prilosec and that relieving heartburn and healing damage is "possible with the purple pill called Nexium" but not similarly possible with Prilosec;

(g)    Advertising, marketing and promoting Nexium in a manner constituting a deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of material facts with intent that others rely upon such concealment, suppression or omission for the reasons set forth in ¶¶ 48-80, 89, 91-96, 112-45, which identify specific promotions and the reasons why such materials constitute deceptions, frauds, false pretenses, false promises, misrepresentations, or the concealment, suppression, or omission of material facts with intent that others rely upon such concealments, suppressions or omissions;

(h)    Advertising, marketing and promoting Nexium directly to consumers who have inferior knowledge and sophistication in a manner that created demand for Nexium that would not have existed if Defendants had disclosed the truth about Nexium versus Prilosec and/or other PPIs;

(i)    Advertising, marketing and promoting Nexium by concealing, suppressing, or omitting material facts with the intent that others rely on such concealments, suppression or omissions in order to induce doctors to prescribe Nexium and consumers to

purchase Nexium, which concealments, suppressions and omissions resulted in advertising, marketing and promotional materials and messages that implicitly or explicitly stated, suggested or implied that Nexium is superior to Prilosec, when several tests showed that it was not more effective and from a cost-benefit standpoint Nexium is inferior;

(j)     Advertising, marketing and promoting Nexium to doctors and consumers by implicitly or explicitly stating, suggesting or implying, contrary to the FDA's findings that Nexium has no significant clinical advantage over Prilosec, that Nexium is medically or clinically superior to Prilosec;

(k)     Advertising, marketing and promoting Nexium by concealing, suppressing or omitting that the FDA recommended that AstraZeneca not be allowed to claim that Nexium has any significant clinical advantage over Prilosec. AstraZeneca's promotions to doctors and PTC advertising either expressly or by implication claimed such a clinical advantage, and in doing so represented that Nexium had qualities that it did not have;

(l)     Advertising, marketing and promoting Nexium at a cost below Prilosec in order to establish brand loyalty, while secretly intending to then take advantage of a price gap that AstraZeneca knew would develop later, was misleading and a false practice;

(m)     Sending sales teams into doctors' offices with free samples, and false promotional messages, with the intent that doctors would rely on Defendants' false and misleading messages and materials;

(n)     Launching a promotional campaign to promote a drug that is not statistically proven to be more effective and is not beneficial from a cost/benefit analysis without disclosure of these facts is a deceptive practice; and

(o)     Advertising, marketing and promoting Nexium over Prilosec when Defendants knew that the FDA's review of the Nexium new drug application showed Nexium to be no more effective than Prilosec, and in fact, the FDA found, "there are no studies which

demonstrate that H (Nexium) is superior to O (Prilosec) clinically or even statistically" is a deceptive practice.

156.    Defendants' conduct was also unfair, unlawful and deceptive, in that by virtue of the acts described herein, Defendants have misbranded Nexium in violation of 16 Del. Code § 3302, *et seq.* 16 Del. Code § 3308 provides that a drug is misbranded if it is misbranded under the Federal Food, Drug and Cosmetic Act.

157.    Regulations adopted pursuant to the Federal Food, Drug and Cosmetic Act describes the requirements of advertising for drugs such as Nexium. These regulations provide definitions of misbranding as a result of inadequate advertising. In particular, sections of 21 CFR § 202.1 provide in part:

> (6) *Advertisements that are false, lacking in fair balance, or otherwise misleading.* An advertisement for a prescription drug is false, lacking in fair balance, or otherwise misleading, or otherwise violative of section 502(n) of the act, among other reasons, if it:
>
> * * *
>
> (ii) Contains a drug comparison that represents or suggests that a drug is safer or more effective than another drug in some particular when it has not been demonstrated to be safer or more effective in such particular by substantial evidence or substantial clinical experience....

158.    The advertisements, promotions and marketing schemes promulgated by Defendants violate the foregoing provisions in numerous aspects as set forth above. In particular, they fail to provide a fair balance and wrongfully promote or suggest that Nexium is more effective than Prilosec or other PPIs.

159.    Plaintiffs and members of the Class were injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at physicians and consumers was to artificially create demand for Nexium at an artificially inflated price. Each aspect of Defendants' conduct combined to unlawfully create sales of Nexium.

160.    Had Defendants not engaged in the false, misleading and deceptive conduct described above, Plaintiffs and members of the Class would not have purchased Nexium or would have done so at a price that was substantially reduced.

161.    Each of the Plaintiffs has purchased Nexium and has been injured as a result. As a direct and foreseeable result of Defendants' multi-faceted, false, misleading, deceptive and unfair conduct, each Plaintiff and members of the Class purchased Nexium at artificially inflated prices. Had Defendants not engaged in the conduct alleged herein, Nexium would have been priced at the same cost as generic Prilosec.

162.    Plaintiffs and each member of the Class was injured by Defendants' conduct in that the cumulative effect of Defendants' unfair and deceptive campaign was to cause each Class member to pay a price for Nexium that would not have been the established price if Defendants had disclosed that Nexium was no different from Prilosec.

163.    AstraZeneca's conduct, as set forth above, has resulted in substantial injury to the Class and that injury is not outweighed by any countervailing benefits to consumers or third-party payors. In fact, Nexium provides no benefit to consumers over Prilosec and the injury to the Class could have been avoided by either not marketing Nexium or by doing so with full and adequate disclosure.

164.    All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

## SECOND CLAIM
### Violation of the Consumer Protection Statutes of the 50 States

165.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

166.    Alternatively, Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of various state consumer protection statutes listed below:

(a)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, *et seq.*;

(b)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Alaska Stat. Code § 40.50.471, *et seq.*;

(c)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, *et seq.*;

(d)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq.*;

(e)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*;

(f)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq.*;

(g)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, *et seq.*;

(h)     Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et seq.*;

(i)     Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*;

(j)     Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Ga. Stat. § 10-1-392, *et seq.*;

(k)     Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*;

(l)     Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*;

(m)     Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of 815 ILCS § 505/1, *et seq.*;

(n)     Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

(o)     Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Iowa Code § 714.1b, *et seq.*;

(p)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*;

(q)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*;

(r)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

(s)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, *et seq.*;

(t)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

(u)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*;

(v)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, *et seq.*;

(w)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

(x)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Mo. Rev. Stat. § 407.010, *et seq.*;

(y)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*;

(z)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

(aa)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

(bb)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

(cc)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

(dd)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, *et seq.*;

(ee)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*;

(ff)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

(gg)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*;

(hh)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*;

(ii)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices or made representations in violation of Okla. Stat. tit. 15 § 751, *et seq.*;

(jj)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq.*;

(kk)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*;

(ll)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, *et seq.*;

(mm)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*;

(nn)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, *et seq.*;

(oo)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.*;

(pp)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*;

(qq)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-1 1-1, *et seq.*;

(rr)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. tit. 9, § 245 1, *et seq.*;

(ss)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*;

(tt)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair, deceptive acts or fraudulent acts or practices in violation of Wash. Rev. Code § 19.86.010, *et seq.*;

(uu)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, *et seq.*;

(vv)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq.*; and

(ww)    Defendants have engaged in false, misleading and deceptive advertising, marketing and promotion or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, *et seq.*

167.    Plaintiffs and members of the Class were injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at physicians and consumers was to artificially create demand for Nexium at an artificially inflated price. Each aspect of Defendants' conduct combined to artificially create sales of Nexium.

168.    Had Defendants not engaged in the deceptive conduct described above, Plaintiffs and members of the Class would not have purchased Nexium or would have done so at a price that was substantially reduced.

169.    Each of the Plaintiffs has purchased Nexium and has been injured as a result. As a direct and foreseeable result of Defendants' multi-faceted, false, misleading, deceptive and unfair conduct, each Plaintiff paid for Nexium at artificially inflated prices. Had Defendants not engaged in the conduct alleged herein, Nexium would have been priced at the same cost as generic Prilosec.

170.    Plaintiffs and each member of the Class were injured by Defendants' conduct in that the cumulative effect of Defendants' false, misleading, unfair and deceptive campaign was to cause each Class member to pay a price for Nexium that would not have been the established price if Defendants had disclosed the truth about Nexium and Prilosec.

171.    AstraZeneca's conduct, as set forth above, has resulted in substantial injury to the Class and that injury is not outweighed by any countervailing benefits to consumers or third-party payors. In fact, Nexium provides no benefit to consumers over Prilosec and the injury to

the Class could have been avoided by either not marketing Nexium or by doing so with full and adequate disclosure.

172.    As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and members of the Class have suffered actual economic damage by paying for Nexium instead of the equally efficacious generic version of Prilosec, or another generic equivalent.

## THIRD CLAIM
### For Restitution, Disgorgement and
### Constructive Trust for Unjust Enrichment

173.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

174.    Plaintiffs and members of the Class were injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at physicians and consumers was to artificially create demand for Nexium at an artificially inflated price. Each aspect of Defendants' conduct combined to artificially create sales of Nexium.

175.    Had Defendants not engaged in the deceptive conduct described above, Plaintiffs and members of the Class would not have purchased Nexium or would have done so at a price that was substantially reduced.

176.    As a result of their unlawful conduct described above, Defendants have been and will continue to be unjustly enriched. Defendants' unlawful acts include misrepresenting the efficacy of Nexium. Specifically, Defendants have been unjustly enriched, to the detriment of Plaintiffs and the Class by the receipt of, at a minimum, unlawfully inflated prices obtained from the sale of Nexium.

177.    Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of their ill-gotten gains resulting from the overpayments for Nexium made by Plaintiffs and the Class.

178.    Plaintiffs and members of the Class are entitled to the amount of Defendants' ill-gotten gains resulting from Defendants' unlawful, unjust and inequitable conduct. Plaintiffs and the Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the Class members may make claims on a *pro rata* basis.

### FOURTH CLAIM
### Negligent Misrepresentation

179.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

180.    Plaintiffs and members of the Class were injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at physicians and consumers was to artificially create demand for Nexium at an artificially inflated price. Each aspect of Defendants' conduct combined to artificially create sales of Nexium.

181.    Had Defendants not engaged in the deceptive conduct described above, Plaintiffs and members of the Class would not have purchased Nexium or would have done so at a price that was substantially reduced.

182.    In making the representations of fact to Plaintiffs and the members of the Class described herein, Defendants failed to fulfill their duty to disclose the material facts set forth above. Among the direct and proximate causes of said failure to disclose were the negligence and carelessness of Defendants.

183.    Plaintiffs and the Class members, as a direct and proximate cause of Defendants' breach of its duties, reasonably relied upon such representations to their detriment.

184.    By virtue of the foregoing, Plaintiffs and the Class have been damaged.

### VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the Class request that the Court enter an order or judgment against Defendants as follows:

A.    Certification of the Class and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

B.    Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendants as a result of the false, misleading, unfair, unlawful and/or deceptive conduct alleged in this Complaint;

C.    Prejudgment and post-judgment interest on such monetary relief, awarded in accordance with state law;

D.    Appropriate injunctive relief;

E.    An order awarding Plaintiffs the costs of bringing this suit, including attorneys' fees;

F.    All other relief to which Plaintiffs and members of the Class may be entitled at law or in equity; and

G.    Actual damages, punitive damages, injunctive relief, restitution of money or property, and such other relief as provided by law.

DATED:  May 27, 2005.

CHIMICLES & TIKELLIS LLP

Pamela S. Tikellis (#2172)
Robert J. Kriner, Jr. (#2546)
A. Zachary Naylor (#4439)
Robert R. Davis (#4536)
One Rodney Square
P.O. Box 1035
Wilmington, DE  19899
Telephone:  (302) 656-2500
Facsimile:  (302) 656-9053

*Proposed Interim Liasion Counsel*

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:  (206) 623-7292

Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone:  (617) 482-3700

Barbara J. Hart
Christopher J. McDonald
GOODKIND LABATON RUDOFF &
    SUCHAROW, LLP
100 Park Avenue
New York, NY  10017
Telephone:  (212) 907-0700

Jeffrey L. Kodroff
Theodore M. Lieveman
SPECTOR, ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300

### *Proposed Interim Co-Lead Counsel for Plaintiffs*

James R. Malone, Jr.
Michael D. Gottsch
Daniel B. Scott
Timothy N. Mathews
CHIMICLES & TIKELLIS LLP
361 W. Lancaster Avenue
Haverford, PA  19041
Telephone:  (610) 642-8500

Ellen Meriwether
Bryand L. Clobes
MILLER FAUCHER & CAFFERTY LLP
One Logan Square
18th & Cherry Streets, Suite 1700
Philadelphia, PA  19103
Telephone:  (215) 864-2800

L. Kendall Satterfield
Richard M. Volin
FINKELSTEIN, THOMPSON & LOUGHRAN
1050 30th Street, N.W.
Washington, D.C.  20007
Telephone:  (202) 337-8000

Robert S. Schachter
Joseph Lipofsky
Paul Kleidman
ZWERLING, SCHACHTER & ZWERLING, LLP
41 Madison Avenue, 32nd Floor
New York, NY 10010
Telephone: (212) 223-3900

Richard Kirschner
KIRSCHNER & GARTRELL
4910 Massachusetts Ave., NW, Suite 215
Washington, D.C. 20016
Telephone: (202) 775-0087

Ronald S. Goldser
ZIMMERMAN REED, PLLP
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402
Telephone: (612) 341-0400

Jason J. Thompson
CHARFOOS & CHRISTENSEN, P.C.
5510 Woodward Avenue
Detroit, MI 48202
Telephone: (313) 875-8080

Jeffrey S. Goddess
ROSENTHAL MONHAIT GROSS &
 GODDESS, P.A.
919 Market Street, Suite 1401
Wilmington, DE 19801
Telephone: (302) 656-4433

***Attorneys for Plaintiffs***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE NEXIUM CONSUMER/PAYOR ADVERTISING LITIGATION | Master File No. 1:05-cv-75 |
| | Hon. Sue L. Robinson, USDJ |
| This document relates to:  All Actions | |

## CERTIFICATE OF SERVICE

I, A. Zachary Naylor do hereby certify that I caused to be served two copies of the Consolidated Class Action Complaint in the manner indicated below.

**BY HAND**
R. Judson Scaggs, Jr., Esquire
Natalie J. Haskins, Esquire
Morris Nichols Arsht and Tunnell
1201 North Market Street
Wilmington, DE 19801

**BY UPS**
Mark E. Haddad, Esquire
Sidley Austin Brown & Wood
555 West Fifth Street
Los Angeles, California 90013

A. Zachary Naylor (D.S.B.A. No. 4439)