**TAB 1**

21 U.S.C.A. § 321
ᐳ

Effective: August 02, 2004

UNITED STATES CODE ANNOTATED
TITLE 21. FOOD AND DRUGS
CHAPTER 9--FEDERAL FOOD, DRUG, AND COSMETIC ACT
SUBCHAPTER II--DEFINITIONS
ᐳ ᐳ § 321. Definitions; generally

For the purposes of this chapter--

(a)(1) The term "State", except as used in the last sentence of section 372(a) of this title, means any State or Territory of the United States, the District of Columbia, and the Commonwealth of Puerto Rico.

(2) The term "Territory" means any Territory or possession of the United States, including the District of Columbia, and excluding the Commonwealth of Puerto Rico and the Canal Zone.

(b) The term "interstate commerce" means (1) commerce between any State or Territory and any place outside thereof, and (2) commerce within the District of Columbia or within any other Territory not organized with a legislative body.

(c) The term "Department" means Department of Health and Human Services.

(d) The term "Secretary" means the Secretary of Health and Human Services.

(e) The term "person" includes individual, partnership, corporation, and association.

(f) The term "food" means (1) articles used for food or drink for man or other animals, (2) chewing gum, and (3) articles used for components of any such article.

(g)(1) The term "drug" means (A) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any article specified in clause (A), (B), or (C). A food or dietary supplement for which a claim, subject to sections 343(r)(1)(B) and 343(r)(3) of this title or sections 343(r)(1)(B) and 343(r)(5)(D) of this title, is made in accordance with the requirements of section 343(r) of this title is not a drug solely because the label or the labeling contains such a claim. A food, dietary ingredient, or dietary supplement for which a truthful and not misleading statement is made in accordance with section 343(r)(6) of this title is not a drug under clause (C) solely because the label or the labeling contains such a statement.

(2) The term "counterfeit drug" means a drug which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, or device, or any likeness thereof, of a drug manufacturer, processor, packer, or distributor other than the person or persons who in fact manufactured, processed, packed, or distributed such drug and which thereby falsely purports or is represented to be the product of, or to have been packed or distributed by, such other drug manufacturer, processor, packer, or distributor.

(h) The term "device" (except when used in paragraph (n) of this section and in sections 331(i), 343(f), 352(c), and 362(c) of this title) means an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is--

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



(1) recognized in the official National Formulary, or the United States Pharmacopeia, or any supplement to them,

(2) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or

(3) intended to affect the structure or any function of the body of man or other animals, and

which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of its primary intended purposes.

(i) The term "cosmetic" means (1) articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance, and (2) articles intended for use as a component of any such articles; except that such term shall not include soap.

(j) The term "official compendium" means the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, official National Formulary, or any supplement to any of them.

(k) The term "label" means a display of written, printed, or graphic matter upon the immediate container of any article; and a requirement made by or under authority of this chapter that any word, statement, or other information appear on the label shall not be considered to be complied with unless such word, statement, or other information also appears on the outside container or wrapper, if any there be, of the retail package of such article, or is easily legible through the outside container or wrapper.

(l) The term "immediate container" does not include package liners.

(m) The term "labeling" means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article.

(n) If an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article to which the labeling or advertising relates under the conditions of use prescribed in the labeling or advertising thereof or under such conditions of use as are customary or usual.

(o) The representation of a drug, in its labeling, as an antiseptic shall be considered to be a representation that it is a germicide, except in the case of a drug purporting to be, or represented as, an antiseptic for inhibitory use as a wet dressing, ointment, dusting powder, or such other use as involves prolonged contact with the body.

(p) The term "new drug" means--

(1) Any drug (except a new animal drug or an animal feed bearing or containing a new animal drug) the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof, except that such a drug not so recognized shall not be deemed to be a "new drug" if at any time prior to June 25, 1938, it was subject to the Food and Drugs Act of June 30, 1906, as amended, and if at such time its labeling contained the same representations concerning the conditions of its use; or

(2) Any drug (except a new animal drug or an animal feed bearing or containing a new animal drug) the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



composition of which is such that such drug, as a result of investigations to determine its safety and effectiveness for use under such conditions, has become so recognized, but which has not, otherwise than in such investigations, been used to a material extent or for a material time under such conditions.

(q)(1)(A) Except as provided in clause (B), the term "pesticide chemical" means any substance that is a pesticide within the meaning of the Federal Insecticide, Fungicide, and Rodenticide Act [7 U.S.C.A. § 136 et seq.], including all active and inert ingredients of such pesticide. Notwithstanding any other provision of law, the term "pesticide" within such meaning includes ethylene oxide and propylene oxide when such substances are applied on food.

(B) In the case of the use, with respect to food, of a substance described in clause (A) to prevent, destroy, repel, or mitigate microorganisms (including bacteria, viruses, fungi, protozoa, algae, and slime), the following applies for purposes of clause (A):

(i) The definition in such clause for the term "pesticide chemical" does not include the substance if the substance is applied for such use on food, or the substance is included for such use in water that comes into contact with the food, in the preparing, packing, or holding of the food for commercial purposes. The substance is not excluded under this subclause from such definition if the substance is ethylene oxide or propylene oxide, and is applied for such use on food. The substance is not so excluded if the substance is applied for such use on a raw agricultural commodity, or the substance is included for such use in water that comes into contact with the commodity, as follows:

(I) The substance is applied in the field.

(II) The substance is applied at a treatment facility where raw agricultural commodities are the only food treated, and the treatment is in a manner that does not change the status of the food as a raw agricultural commodity (including treatment through washing, waxing, fumigating, and packing such commodities in such manner).

(III) The substance is applied during the transportation of such commodity between the field and such a treatment facility.

(ii) The definition in such clause for the term "pesticide chemical" does not include the substance if the substance is a food contact substance as defined in section 348(h)(6) of this title, and any of the following circumstances exist: The substance is included for such use in an object that has a food contact surface but is not intended to have an ongoing effect on any portion of the object; the substance is included for such use in an object that has a food contact surface and is intended to have an ongoing effect on a portion of the object but not on the food contact surface; or the substance is included for such use in or is applied for such use on food packaging (without regard to whether the substance is intended to have an ongoing effect on any portion of the packaging). The food contact substance is not excluded under this subclause from such definition if any of the following circumstances exist: The substance is applied for such use on a semipermanent or permanent food contact surface (other than being applied on food packaging); or the substance is included for such use in an object that has a semipermanent or permanent food contact surface (other than being included in food packaging) and the substance is intended to have an ongoing effect on the food contact surface.

With respect to the definition of the term "pesticide" that is applicable to the Federal Insecticide, Fungicide, and Rodenticide Act [7 U.S.C.A. § 136 et seq.], this clause does not exclude any substance from such definition.

(2) The term "pesticide chemical residue" means a residue in or on raw agricultural commodity or processed food of--

(A) a pesticide chemical; or

(B) any other added substance that is present on or in the commodity or food primarily as a result of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



metabolism or other degradation of a pesticide chemical.

(3) Notwithstanding subparagraphs (1) and (2), the Administrator may by regulation except a substance from the definition of "pesticide chemical" or "pesticide chemical residue" if--

(A) its occurrence as a residue on or in a raw agricultural commodity or processed food is attributable primarily to natural causes or to human activities not involving the use of any substances for a pesticidal purpose in the production, storage, processing, or transportation of any raw agricultural commodity or processed food; and

(B) the Administrator, after consultation with the Secretary, determines that the substance more appropriately should be regulated under one or more provisions of this chapter other than sections 342(a)(2)(B) and 346a of this title.

(r) The term "raw agricultural commodity" means any food in its raw or natural state, including all fruits that are washed, colored, or otherwise treated in their unpeeled natural form prior to marketing.

(s) The term "food additive" means any substance the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component or otherwise affecting the characteristics of any food (including any substance intended for use in producing, manufacturing, packing, processing, preparing, treating, packaging, transporting, or holding food; and including any source of radiation intended for any such use), if such substance is not generally recognized, among experts qualified by scientific training and experience to evaluate its safety, as having been adequately shown through scientific procedures (or, in the case of a substance used in food prior to January 1, 1958, through either scientific procedures or experience based on common use in food) to be safe under the conditions of its intended use; except that such term does not include--

(1) a pesticide chemical residue in or on a raw agricultural commodity or processed food;  or

(2) a pesticide chemical;  or

(3) a color additive;  or

(4) any substance used in accordance with a sanction or approval granted prior to September 6, 1958, pursuant to this chapter, the Poultry Products Inspection Act [21 U.S.C.A. § 451 et seq.] or the Meat Inspection Act of March 4, 1907, as amended and extended [21 U.S.C.A. § 601 et seq.];

(5) a new animal drug;  or

(6) an ingredient described in paragraph (ff) in, or intended for use in, a dietary supplement.

(t)(1) The term "color additive" means a material which--

(A) is a dye, pigment, or other substance made by a process of synthesis or similar artifice, or extracted, isolated, or otherwise derived, with or without intermediate or final change of identity, from a vegetable, animal, mineral, or other source, and

(B) when added or applied to a food, drug, or cosmetic, or to the human body or any part thereof, is capable (alone or through reaction with other substance) of imparting color thereto;

except that such term does not include any material which the Secretary, by regulation, determines is used (or intended to be used) solely for a purpose or purposes other than coloring.

(2) The term "color" includes black, white, and intermediate grays.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

(3) Nothing in subparagraph (1) of this paragraph shall be construed to apply to any pesticide chemical, soil or plant nutrient, or other agricultural chemical solely because of its effect in aiding, retarding, or otherwise affecting, directly or indirectly, the growth or other natural physiological processes of produce of the soil and thereby affecting its color, whether before or after harvest.

(u) The term "safe" as used in paragraph (s) of this section and in sections 348, 360b, 360ccc, and 379e of this title, has reference to the health of man or animal.

(v) The term "new animal drug" means any drug intended for use for animals other than man, including any drug intended for use in animal feed but not including such animal feed,--

(1) the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of animal drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof; except that such a drug not so recognized shall not be deemed to be a "new animal drug" if at any time prior to June 25, 1938, it was subject to the Food and Drug Act of June 30, 1906, as amended, and if at such time its labeling contained the same representations concerning the conditions of its use; or

(2) the composition of which is such that such drug, as a result of investigations to determine its safety and effectiveness for use under such conditions, has become so recognized but which has not, otherwise than in such investigations, been used to a material extent or for a material time under such conditions.

Provided that any drug intended for minor use or use in a minor species that is not the subject of a final regulation published by the Secretary through notice and comment rulemaking finding that the criteria of paragraphs (1) and (2) have not been met (or that the exception to the criterion in paragraph (1) has been met) is a new animal drug.  -

(w) The term "animal feed", as used in paragraph (w) [FN1] of this section, in section 360b of this title, and in provisions of this chapter referring to such paragraph or section, means an article which is intended for use for food for animals other than man and which is intended for use as a substantial source of nutrients in the diet of the animal, and is not limited to a mixture intended to be the sole ration of the animal.

(x) The term "informal hearing" means a hearing which is not subject to  section 554, 556, or 557 of Title 5 and which provides for the following:

(1) The presiding officer in the hearing shall be designated by the Secretary from officers and employees of the Department who have not participated in any action of the Secretary which is the subject of the hearing and who are not directly responsible to an officer or employee of the Department who has participated in any such action.

(2) Each party to the hearing shall have the right at all times to be advised and accompanied by an attorney.

(3) Before the hearing, each party to the hearing shall be given reasonable notice of the matters to be considered at the hearing, including a comprehensive statement of the basis for the action taken or proposed by the Secretary which is the subject of the hearing and a general summary of the information which will be presented by the Secretary at the hearing in support of such action.

(4) At the hearing the parties to the hearing shall have the right to hear a full and complete statement of the action of the Secretary which is the subject of the hearing together with the information and reasons supporting such action, to conduct reasonable questioning, and to present any oral or written information relevant to such action.

(5) The presiding officer in such hearing shall prepare a written report of the hearing to which shall be attached all written material presented at the hearing.  The participants in the hearing shall be given the opportunity to review and correct or supplement the presiding officer's report of the hearing.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



(6) The Secretary may require the hearing to be transcribed.  A party to the hearing shall have the right to have the hearing transcribed at his expense. Any transcription of a hearing shall be included in the presiding officer's report of the hearing.

(y) The term "saccharin" includes calcium saccharin, sodium saccharin, and ammonium saccharin.

(z) The term "infant formula" means a food which purports to be or is represented for special dietary use solely as a food for infants by reason of its simulation of human milk or its suitability as a complete or partial substitute for human milk.

(aa) The term "abbreviated drug application" means an application submitted under section 355(j) of this title for the approval of a drug that relies on the approved application of another drug with the same active ingredient to establish safety and efficacy, and--

(1) in the case of section 335a of this title, includes a supplement to such an application for a different or additional use of the drug but does not include a supplement to such an application for other than a different or additional use of the drug, and

(2) in the case of sections 335b and 335c of this title, includes any supplement to such an application.

(bb) The term "knowingly" or "knew" means that a person, with respect to information--

(1) has actual knowledge of the information, or

(2) acts in deliberate ignorance or reckless disregard of the truth or falsity of the information.

(cc) For purposes of section 335a of this title, the term "high managerial agent"--

(1) means--

(A) an officer or director of a corporation or an association,

(B) a partner of a partnership, or

(C) any employee or other agent of a corporation, association, or partnership,

having duties such that the conduct of such officer, director, partner, employee, or agent may fairly be assumed to represent the policy of the corporation, association, or partnership, and

(2) includes persons having management responsibility for--

(A) submissions to the Food and Drug Administration regarding the development or approval of any drug product,

(B) production, quality assurance, or quality control of any drug product, or

(C) research and development of any drug product.

(dd) For purposes of sections 335a and 335b of this title, the term "drug product" means a drug subject to regulation under section 355, 360b, or 382 of this title or under section 262 of Title 42.

(ee) The term "Commissioner" means the Commissioner of Food and Drugs.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

(ff) The term "dietary supplement"--

(1) means a product (other than tobacco) intended to supplement the diet that bears or contains one or more of the following dietary ingredients:

(A) a vitamin;

(B) a mineral;

(C) an herb or other botanical;

(D) an amino acid;

(E) a dietary substance for use by man to supplement the diet by increasing the total dietary intake;  or

(F) a concentrate, metabolite, constituent, extract, or combination of any ingredient described in clause (A), (B), (C), (D), or (E);

(2) means a product that--

(A)(i) is intended for ingestion in a form described in section 350(c)(1)(B)(i) of this title;  or

(ii) complies with section 350(c)(1)(B)(ii) of this title;

(B) is not represented for use as a conventional food or as a sole item of a meal or the diet;  and

(C) is labeled as a dietary supplement;  and

(3) does--

(A) include an article that is approved as a new drug under section 355 of this title or licensed as a biologic under section 262 of Title 42 and was, prior to such approval, certification, or license, marketed as a dietary supplement or as a food unless the Secretary has issued a regulation, after notice and comment, finding that the article, when used as or in a dietary supplement under the conditions of use and dosages set forth in the labeling for such dietary supplement, is unlawful under section 342(f) of this title;  and

(B) not include--

(i) an article that is approved as a new drug under section 355 of this title, certified as an antibiotic under section 357 of this title, or licensed as a biologic under section 262 of Title 42, or

(ii) an article authorized for investigation as a new drug, antibiotic, or biological for which substantial clinical investigations have been instituted and for which the existence of such investigations has been made public,

which was not before such approval, certification, licensing, or authorization marketed as a dietary supplement or as a food unless the Secretary, in the Secretary's discretion, has issued a regulation, after notice and comment, finding that the article would be lawful under this chapter.

Except for purposes of paragraph (g), a dietary supplement shall be deemed to be a food within the meaning of this chapter.

(gg) The term "processed food" means any food other than a raw agricultural commodity and includes any raw agricultural commodity that has been subject to processing, such as canning, cooking, freezing, dehydration, or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



milling.

(hh) The term "Administrator" means the Administrator of the United States Environmental Protection Agency.

(ii) The term "compounded positron emission tomography drug"--

(1) means a drug that--

(A) exhibits spontaneous disintegration of unstable nuclei by the emission of positrons and is used for the purpose of providing dual photon positron emission tomographic diagnostic images; and

(B) has been compounded by or on the order of a practitioner who is licensed by a State to compound or order compounding for a drug described in subparagraph (A), and is compounded in accordance with that State's law, for a patient or for research, teaching, or quality control; and

(2) includes any nonradioactive reagent, reagent kit, ingredient, nuclide generator, accelerator, target material, electronic synthesizer, or other apparatus or computer program to be used in the preparation of such a drug.

(jj) The term "antibiotic drug" means any drug (except drugs for use in animals other than humans) composed wholly or partly of any kind of penicillin, streptomycin, chlortetracycline, chloramphenicol, bacitracin, or any other drug intended for human use containing any quantity of any chemical substance which is produced by a micro-organism and which has the capacity to inhibit or destroy micro-organisms in dilute solution (including a chemically synthesized equivalent of any such substance) or any derivative thereof.

(kk) The term "priority supplement" means a drug application referred to in section 101(4) of the Food and Drug Administration Modernization Act of 1997 (111 Stat. 2298).

(ll)(1) The term "single-use device" means a device that is intended for one use, or on a single patient during a single procedure.

(2)(A) The term "reprocessed", with respect to a single-use device, means an original device that has previously been used on a patient and has been subjected to additional processing and manufacturing for the purpose of an additional single use on a patient. The subsequent processing and manufacture of a reprocessed single-use device shall result in a device that is reprocessed within the meaning of this definition.

(B) A single-use device that meets the definition under clause (A) shall be considered a reprocessed device without regard to any description of the device used by the manufacturer of the device or other persons, including a description that uses the term "recycled" rather than the term "reprocessed".

(3) The term "original device" means a new, unused single-use device.

(mm)(1) The term "critical reprocessed single-use device" means a reprocessed single-use device that is intended to contact normally sterile tissue or body spaces during use.

(2) The term "semi-critical reprocessed single-use device" means a reprocessed single-use device that is intended to contact intact mucous membranes and not penetrate normally sterile areas of the body.

(nn) The term "major species" means cattle, horses, swine, chickens, turkeys, dogs, and cats, except that the Secretary may add species to this definition by regulation.

(oo) The term "minor species" means animals other than humans that are not major species.

(pp) The term "minor use" means the intended use of a drug in a major species for an indication that occurs

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



infrequently and in only a small number of animals or in limited geographical areas and in only a small number of animals annually.

[FN1]  So in original.  Probably should be "paragraph (v)".

AMENDMENT OF SECTION

<Pub.L.108-282, Title II, § 203(c)(1), (d), Aug. 2, 2004, 118 Stat. 908, provided that, effective Jan. 1, 2006, this section is amended by adding at the end the following: >

<(qq) The term "major food allergen" means any of the following: >

<(1) Milk, egg, fish (e.g., bass, flounder, or cod), Crustacean shellfish (e.g., crab, lobster, or shrimp), tree nuts (e.g., almonds, pecans, or walnuts), wheat, peanuts, and soybeans. >

<(2) A food ingredient that contains protein derived from a food specified in paragraph (1), except the following: >

<(A) Any highly refined oil derived from a food specified in paragraph (1) and any ingredient derived from such highly refined oil. >

<(B) A food ingredient that is exempt under paragraph (6) or (7) of section 343(w) of this title. >

21 U.S.C.A. § 321, **21 USCA § 321**

Current through P.L. 109-13, approved 05-11-05

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**TAB 2**

21 U.S.C.A. § 331
▷

Effective: August 02, 2004

UNITED STATES CODE ANNOTATED
TITLE 21. FOOD AND DRUGS
CHAPTER 9--FEDERAL FOOD, DRUG, AND COSMETIC ACT
SUBCHAPTER III--PROHIBITED ACTS AND PENALTIES
> > § 331. Prohibited acts

The following acts and the causing thereof are prohibited:

(a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded.

(b) The adulteration or misbranding of any food, drug, device, or cosmetic in interstate commerce.

(c) The receipt in interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise.

(d) The introduction or delivery for introduction into interstate commerce of any article in violation of section 344 , 355, or 360bbb-3 of this title.

(e) The refusal to permit access to or copying of any record as required by  section 350a, 350c, 354, 360bbb-3, 373, or 374(a) of this title;  or the failure to establish or maintain any record, or make any report, required under section 350a, 350c(b), 354, 355(i) or (k), 360b(a)(4)(C), 360b(j), (l), or (m), 360ccc-1(i), [FN1] 360e(f), 360i, or 360bbb-3 of this title, or the refusal to permit access to or verification or copying of any such required record.

(f) The refusal to permit entry or inspection as authorized by section 374 of this title.

(g) The manufacture within any Territory of any food, drug, device, or cosmetic that is adulterated or misbranded.

(h) The giving of a guaranty or undertaking referred to in section 333(c)(2) of this title, which guaranty or undertaking is false, except by a person who relied upon a guaranty or undertaking to the same effect signed by, and containing the name and address of, the person residing in the United States from whom he received in good faith the food, drug, device, or cosmetic;  or the giving of a guaranty or undertaking referred to in section 333(c)(3) of this title, which guaranty or undertaking is false.

(i)(1) Forging, counterfeiting, simulating, or falsely representing, or without proper authority using any mark, stamp, tag, label, or other identification device authorized or required by regulations promulgated under the provisions of section 344 or 379e of this title.

(2) Making, selling, disposing of, or keeping in possession, control, or custody, or concealing any punch, die, plate, stone, or other thing designed to print, imprint, or reproduce the trademark, trade name, or other identifying mark, imprint, or device of another or any likeness of any of the foregoing upon any drug or container or labeling thereof so as to render such drug a counterfeit drug.

(3) The doing of any act which causes a drug to be a counterfeit drug, or the sale or dispensing, or the holding for sale or dispensing, of a counterfeit drug.

(j) The using by any person to his own advantage, or revealing, other than to the Secretary or officers or employees of the Department, or to the courts when relevant in any judicial proceeding under this chapter, any

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



information acquired under authority of section 344, 348, 350a, 350c, 355, 360, 360b, 360c, 360d, 360e, 360f, 360h, 360i, 360j, 360ccc, 360ccc-1, 360ccc-2, 374, 379, or 379e of this title concerning any method or process which as a trade secret is entitled to protection; or the violating of section 346a(i)(2) of this title or any regulation issued under that section.. [FN2]  This paragraph does not authorize the withholding of information from either House of Congress or from, to the extent of matter within its jurisdiction, any committee or subcommittee of such committee or any joint committee of Congress or any subcommittee of such joint committee.

(k) The alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, or cosmetic, if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded.

(l) Repealed. Pub.L. 105-115, Title IV, § 421, Nov. 21, 1997, 111 Stat. 2380.

(m) The sale or offering for sale of colored oleomargarine or colored margarine, or the possession or serving of colored oleomargarine or colored margarine in violation of subsections (b) or (c) of section 347 of this title.

(n) The using, in labeling, advertising or other sales promotion of any reference to any report or analysis furnished in compliance with section 374 of this title.

(o) In the case of a prescription drug distributed or offered for sale in interstate commerce, the failure of the manufacturer, packer, or distributor thereof to maintain for transmittal, or to transmit, to any practitioner licensed by applicable State law to administer such drug who makes written request for information as to such drug, true and correct copies of all printed matter which is required to be included in any package in which that drug is distributed or sold, or such other printed matter as is approved by the Secretary.  Nothing in this paragraph shall be construed to exempt any person from any labeling requirement imposed by or under other provisions of this chapter.

(p) The failure to register in accordance with section 360 of this title, the failure to provide any information required by section 360(j) or 360(k) of this title, or the failure to provide a notice required by section 360(j) (2) of this title.

(q)(1) The failure or refusal to (A) comply with any requirement prescribed under section 360h or 360j(g) of this title, (B) furnish any notification or other material or information required by or under section 360i or 360j(g) of this title, or (C) comply with a requirement under section 360l of this title.

(2) With respect to any device, the submission of any report that is required by or under this chapter that is false or misleading in any material respect.

(r) The movement of a device in violation of an order under section 334(g) of this title or the removal or alteration of any mark or label required by the order to identify the device as detained.

(s) The failure to provide the notice required by section 350a(c) or  350a(e) of this title, the failure to make the reports required by section 350a(f)(1)(B) of this title, the failure to retain the records required by section 350a(b)(4) of this title, or the failure to meet the requirements prescribed under section 350a(f)(3) of this title.

(t) The importation of a drug in violation of section 381(d)(1) of this title, the sale, purchase, or trade of a drug or drug sample or the offer to sell, purchase, or trade a drug or drug sample in violation of section 353(c) of this title, the sale, purchase, or trade of a coupon, the offer to sell, purchase, or trade such a coupon, or the counterfeiting of such a coupon in violation of section 353(c)(2) of this title, the distribution of a drug sample in violation of section 353(d) of this title or the failure to otherwise comply with the requirements of section 353(d) of this title, or the distribution of drugs in violation of section 353(e) of this title or the failure to otherwise comply with the requirements of section 353(e) of this title.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Page   3

(u) The failure to comply with any requirements of the provisions of, or any regulations or orders of the Secretary, under section 360b(a)(4)(A), 360b(a)(4)(D), or 360b(a)(5) of this title.

(v) The introduction or delivery for introduction into interstate commerce of a dietary supplement that is unsafe under section 350b of this title.

(w) The making of a knowingly false statement in any statement, certificate of analysis, record, or report required or requested under section 381(d)(3) of this title;  the failure to submit a certificate of analysis as required under such section;  the failure to maintain records or to submit records or reports as required by such section;  the release into interstate commerce of any article or portion thereof imported into the United States under such section or any finished product made from such article or portion, except for export in accordance with section 381(e) or 382 of this title, or with section 262(h) of Title 42;  or the failure to so export or to destroy such an article or portions thereof, or such a finished product.

(x) The falsification of a declaration of conformity submitted under section 360d(c) of this title or the failure or refusal to provide data or information requested by the Secretary under paragraph (3) of such section.

(y) In the case of a drug, device, or food--

(1) the submission of a report or recommendation by a person accredited under  section 360m of this title that is false or misleading in any material respect;

(2) the disclosure by a person accredited under section 360m of this title of confidential commercial information or any trade secret without the express written consent of the person who submitted such information or secret to such person;  or

(3) the receipt by a person accredited under section 360m of this title of a bribe in any form or the doing of any corrupt act by such person associated with a responsibility delegated to such person under this chapter.

(z) The dissemination of information in violation of section 360aaa of this title.

(aa) The importation of a prescription drug in violation of section 384 of this title, the falsification of any record required to be maintained or provided to the Secretary under such section, or any other violation of regulations under such section.

(bb) The transfer of an article of food in violation of an order under  section 334(h) of this title, or the removal or alteration of any mark or label required by the order to identify the article as detained.

(cc) The importing or offering for import into the United States of an article of food by, with the assistance of, or at the direction of, a person debarred under section 335a(b)(3) of this title.

(dd) The failure to register in accordance with section 350d of this title.

(ee) The importing or offering for import into the United States of an article of food in violation of the requirements under section 381(m) of this title.

(ff) The importing or offering for import into the United States of a drug or device with respect to which there is a failure to comply with a request of the Secretary to submit to the Secretary a statement under section 381(o) of this title.

(gg) The knowing failure to comply with paragraph (7)(E) of section 374(g) of this title;  the knowing inclusion by a person accredited under paragraph (2) of such section of false information in an inspection report under paragraph (7)(A) of section 374(g) of this title;  or the knowing failure of such a person to include material facts

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



in such a report.

[FN1]  So in original.  Probably should follow "360bbb-3".

[FN2]  So in original.  The second period probably should not appear.

21 U.S.C.A. § 331, **21 USCA § 331**

Current through P.L. 109-12, approved 05/05/05

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

**TAB 3**

21 U.S.C.A. § 352
▷

Effective: August 02, 2004

UNITED STATES CODE ANNOTATED
TITLE 21. FOOD AND DRUGS
CHAPTER 9--FEDERAL FOOD, DRUG, AND COSMETIC ACT
SUBCHAPTER V--DRUGS AND DEVICES
PART A--DRUGS AND DEVICES
 > > § 352. Misbranded drugs and devices

A drug or device shall be deemed to be misbranded--

(a) False or misleading label

If its labeling is false or misleading in any particular.  Health care economic information provided to a formulary committee, or other similar entity, in the course of the committee or the entity carrying out its responsibilities for the selection of drugs for managed care or other similar organizations, shall not be considered to be false or misleading under this paragraph if the health care economic information directly relates to an indication approved under section 355 or under section 262(a) of Title 42 for such drug and is based on competent and reliable scientific evidence.  The requirements set forth in section 355(a) of this title or in section 262(a) of Title 42 shall not apply to health care economic information provided to such a committee or entity in accordance with this paragraph.  Information that is relevant to the substantiation of the health care economic information presented pursuant to this paragraph shall be made available to the Secretary upon request.  In this paragraph, the term "health care economic information" means any analysis that identifies, measures, or compares the economic consequences, including the costs of the represented health outcomes, of the use of a drug to the use of another drug, to another health care intervention, or to no intervention.

(b) Package form;  contents of label

If in package form unless it bears a label containing (1) the name and place of business of the manufacturer, packer, or distributor;  and (2) an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count:  *Provided*, That under clause (2) of this paragraph reasonable variations shall be permitted, and exemptions as to small packages shall be established, by regulations prescribed by the Secretary.

(c) Prominence of information on label

If any word, statement, or other information required by or under authority of this chapter to appear on the label or labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

(d) Repealed.  Pub.L. 105-115, Title I, § 126(b), Nov. 21, 1997, 111 Stat. 2327

(e) Designation of drugs or devices by established names

(1)(A) If it is a drug, unless its label bears, to the exclusion of any other nonproprietary name (except the applicable systematic chemical name or the chemical formula)--

(i) the established name (as defined in subparagraph (3)) of the drug, if there is such a name;

(ii) the established name and quantity or, if determined to be appropriate by the Secretary, the proportion of each active ingredient, including the quantity, kind, and proportion of any alcohol, and also including whether active

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



or not the established name and quantity or if determined to be appropriate by the Secretary, the proportion of any bromides, ether, chloroform, acetanilide, acetophenetidin, amidopyrine, antipyrine, atropine, hyoscine, hyoscyamine, arsenic, digitalis, digitalis glucosides, mercury, ouabain, strophanthin, strychnine, thyroid, or any derivative or preparation of any such substances, contained therein, except that the requirement for stating the quantity of the active ingredients, other than the quantity of those specifically named in this subclause, shall not apply to nonprescription drugs not intended for human use;  and

(iii) the established name of each inactive ingredient listed in alphabetical order on the outside container of the retail package and, if determined to be appropriate by the Secretary, on the immediate container, as prescribed in regulation promulgated by the Secretary, except that nothing in this subclause shall be deemed to require that any trade secret be divulged, and except that the requirements of this subclause with respect to alphabetical order shall apply only to nonprescription drugs that are not also cosmetics and that this subclause shall not apply to nonprescription drugs not intended for human use.

(B) For any prescription drug the established name of such drug or ingredient, as the case may be, on such label (and on any labeling on which a name for such drug or ingredient is used) shall be printed prominently and in type at least half as large as that used thereon for any proprietary name or designation for such drug or ingredient, except that to the extent that compliance with the requirements of subclause (ii) or (iii) of clause (A) or this clause is impracticable, exemptions shall be established by regulations promulgated by the Secretary.

(2) If it is a device and it has an established name, unless its label bears, to the exclusion of any other nonproprietary name, its established name (as defined in subparagraph (4)) prominently printed in type at least half as large as that used thereon for any proprietary name or designation for such device, except that to the extent compliance with the requirements of this subparagraph is impracticable, exemptions shall be established by regulations promulgated by the Secretary.

(3) As used in subparagraph (1), the term "established name", with respect to a drug or ingredient thereof, means (A) the applicable official name designated pursuant to section 358 of this title, or (B), if there is no such name and such drug, or such ingredient, is an article recognized in an official compendium, then the official title thereof in such compendium, or (C) if neither clause (A) nor clause (B) of this subparagraph applies, then the common or usual name, if any, of such drug or of such ingredient, except that where clause (B) of this subparagraph applies to an article recognized in the United States Pharmacopeia and in the Homoeopathic Pharmacopoeia under different official titles, the official title used in the United States Pharmacopeia shall apply unless it is labeled and offered for sale as a homoeopathic drug, in which case the official title used in the Homoeopathic Pharmacopoeia shall apply.

(4) As used in subparagraph (2), the term "established name" with respect to a device means (A) the applicable official name of the device designated pursuant to section 358 of this title, (B) if there is no such name and such device is an article recognized in an official compendium, then the official title thereof in such compendium, or (C) if neither clause (A) nor clause (B) of this subparagraph applies, then any common or usual name of such device.

(f) Directions for use and warnings on label

Unless its labeling bears (1) adequate directions for use;  and (2) such adequate warnings against use in those pathological conditions or by children where its use may be dangerous to health, or against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users, except that where any requirement of clause (1) of this paragraph, as applied to any drug or device, is not necessary for the protection of the public health, the Secretary shall promulgate regulations exempting such drug or device from such requirement. Required labeling for prescription devices intended for use in health care facilities or by a health care professional and required labeling for in vitro diagnostic devices intended for use by health care professionals or in blood establishments may be made available solely by electronic means, provided that the labeling complies with all applicable requirements of law, and that the manufacturer affords such users the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

opportunity to request the labeling in paper form, and after such request, promptly provides the requested information without additional cost.

(g) Representations as recognized drug;  packing and labeling;  inconsistent requirements for designation of drug

If it purports to be a drug the name of which is recognized in an official compendium, unless it is packaged and labeled as prescribed therein.  The method of packing may be modified with the consent of the Secretary. Whenever a drug is recognized in both the United States Pharmacopoeia and the Homoeopathic Pharmacopoeia of the United States, it shall be subject to the requirements of the United States Pharmacopoeia with respect to packaging and labeling unless it is labeled and offered for sale as a homoeopathic drug, in which case it shall be subject to the provisions of the Homoeopathic Pharmacopoeia of the United States, and not those of the United States Pharmacopoeia, except that in the event of inconsistency between the requirements of this paragraph and those of paragraph (e) as to the name by which the drug or its ingredients shall be designated, the requirements of paragraph (e) shall prevail.

(h) Deteriorative drugs;  packing and labeling

If it has been found by the Secretary to be a drug liable to deterioration, unless it is packaged in such form and manner, and its label bears a statement of such precautions, as the Secretary shall by regulations require as necessary for the protection of the public health.  No such regulation shall be established for any drug recognized in an official compendium until the Secretary shall have informed the appropriate body charged with the revision of such compendium of the need for such packaging or labeling requirements and such body shall have failed within a reasonable time to prescribe such requirements.

(i) Drug;  misleading container;  imitation;  offer for sale under another name

(1) If it is a drug and its container is so made, formed, or filled as to be misleading;  or (2) if it is an imitation of another drug;  or (3) if it is offered for sale under the name of another drug.

(j) Health-endangering when used as prescribed

If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.

(k) Repealed.  Pub.L. 105-115, Title I, § 125(a)(2)(B), Nov. 21, 1997, 111 Stat. 2325

(l) Repealed.  Pub.L. 105-115, Title I, § 125(b)(2)(D), Nov. 21, 1997, 111 Stat. 2325

(m) Color additives;  packing and labeling

If it is a color additive the intended use of which is for the purpose of coloring only, unless its packaging and labeling are in conformity with such packaging and labeling requirements applicable to such color additive, as may be contained in regulations issued under section 379e of this title.

(n) Prescription drug advertisements: established name;  quantitative formula;  side effects, contraindications, and effectiveness;  prior approval;  false advertising;  labeling;  construction of the Convention on Psychotropic Substances

In the case of any prescription drug distributed or offered for sale in any State, unless the manufacturer, packer, or distributor thereof includes in all advertisements and other descriptive printed matter issued or caused to be issued by the manufacturer, packer, or distributor with respect to that drug a true statement of (1) the established name as defined in paragraph (e) of this section, printed prominently and in type at least half as large as that used for any trade or brand name thereof, (2) the formula showing quantitatively each ingredient of such drug to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

extent required for labels under paragraph (e) of this section, and (3) such other information in brief summary relating to side effects, contraindications, and effectiveness as shall be required in regulations which shall be issued by the Secretary in accordance with the procedure specified in section 371(e) of this title, except that (A) except in extraordinary circumstances, no regulation issued under this paragraph shall require prior approval by the Secretary of the content of any advertisement, and (B) no advertisement of a prescription drug, published after the effective date of regulations issued under this paragraph applicable to advertisements of prescription drugs, shall with respect to the matters specified in this paragraph or covered by such regulations, be subject to the provisions of sections 52 to 57 of Title 15. This paragraph (n) shall not be applicable to any printed matter which the Secretary determines to be labeling as defined in section 321(m) of this title. Nothing in the Convention on Psychotropic Substances, signed at Vienna, Austria, on February 21, 1971, shall be construed to prevent drug price communications to consumers.

(o) Drugs or devices from nonregistered establishments

If it was manufactured, prepared, propagated, compounded, or processed in an establishment in any State not duly registered under section 360 of this title, if it was not included in a list required by section 360(j) of this title, if a notice or other information respecting it was not provided as required by such section or section 360(k) of this title, or if it does not bear such symbols from the uniform system for identification of devices prescribed under section 360(e) of this title as the Secretary by regulation requires.

(p) Packaging or labeling of drugs in violation of regulations

If it is a drug and its packaging or labeling is in violation of an applicable regulation issued pursuant to section 1472 or 1473 of Title 15.

(q) Restricted devices using false or misleading advertising or used in violation of regulations

In the case of any restricted device distributed or offered for sale in any State, if (1) its advertising is false or misleading in any particular, or (2) it is sold, distributed, or used in violation of regulations prescribed under section 360j(e) of this title.

(r) Restricted devices not carrying requisite accompanying statements in advertisements and other descriptive printed matter

In the case of any restricted device distributed or offered for sale in any State, unless the manufacturer, packer, or distributor thereof includes in all advertisements and other descriptive printed matter issued or caused to be issued by the manufacturer, packer, or distributor with respect to that device (1) a true statement of the device's established name as defined in subsection (e) of this section, printed prominently and in type at least half as large as that used for any trade or brand name thereof, and (2) a brief statement of the intended uses of the device and relevant warnings, precautions, side effects, and contraindications and, in the case of specific devices made subject to a finding by the Secretary after notice and opportunity for comment that such action is necessary to protect the public health, a full description of the components of such device or the formula showing quantitatively each ingredient of such device to the extent required in regulations which shall be issued by the Secretary after an opportunity for a hearing. Except in extraordinary circumstances, no regulation issued under this paragraph shall require prior approval by the Secretary of the content of any advertisement and no advertisement of a restricted device, published after the effective date of this paragraph shall, with respect to the matters specified in this paragraph or covered by regulations issued hereunder, be subject to the provisions of sections 52 through 55 of Title 15. This paragraph shall not be applicable to any printed matter which the Secretary determines to be labeling as defined in section 321(m) of this title.

(s) Devices subject to performance standards not bearing requisite labeling

If it is a device subject to a performance standard established under section 360d of this title, unless it bears such

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



labeling as may be prescribed in such performance standard.

(t) Devices for which there has been a failure or refusal to give required notification or to furnish required material or information

If it is a device and there was a failure or refusal (1) to comply with any requirement prescribed under section 360h of this title respecting the device, (2) to furnish any material or information required by or under section 360i of this title respecting the device, or (3) to comply with a requirement under section 360l of this title.

(v) [FN1] Single-use medical devices; required statements on labeling

If it is a reprocessed single-use device, unless all labeling of the device prominently and conspicuously bears the statement "Reprocessed device for single use. Reprocessed by ___." The name of the manufacturer of the reprocessed device shall be placed in the space identifying the person responsible for reprocessing.

(w) If it is a new animal drug--

(1) that is conditionally approved under section 360ccc of this title and its labeling does not conform with the approved application or section 360ccc(f) of this title, or that is not conditionally approved under section 360ccc of this title and its label bears the statement set forth in section 360ccc(f)(1)(A) of this title; or

(2) that is indexed under section 360ccc-1 of this title and its labeling does not conform with the index listing under section 360ccc-1(e) of this title or 360ccc-1(h) of this title, or that has not been indexed under section 360ccc-1 of this title and its label bears the statement set forth in section 360ccc-1(h) of this title.

[FN1]  Paragraph (u) has been enacted but not yet effective.  See note below.

ENACTMENT OF PAR. (U)

< Pub.L. 107-250, Title III, § 301, Oct. 26, 2002, 116 Stat. 1616, as amended Pub.L. 108-214, § 2(c)(1), Apr. 1, 2004, 118 Stat. 575, provided that effective 36 months after Oct. 26, 2002, par. (u) of this section is added to read as follows: >

< "(u) Identification of manufacturer of medical devices >

< "If it is a device, unless it, or an attachment thereto, prominently and conspicuously bears the name of the manufacturer of the device, a generally recognized abbreviation of such name, or a unique and generally recognized symbol identifying such manufacturer, except that the Secretary may waive any requirement under this paragraph for the device if the Secretary determines that compliance with the requirement is not feasible for the device or would compromise the provision of reasonable assurance of the safety or effectiveness of the device." >

21 U.S.C.A. § 352, **21 USCA § 352**

Current through P.L. 109-12, approved 05/05/05

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

© 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works.



**TAB 4**

21 U.S.C.A. § 353
℞

Effective: August 02, 2004

UNITED STATES CODE ANNOTATED
TITLE 21. FOOD AND DRUGS
CHAPTER 9--FEDERAL FOOD, DRUG, AND COSMETIC ACT
SUBCHAPTER V--DRUGS AND DEVICES
PART A--DRUGS AND DEVICES
> > § 353. Exemptions and consideration for certain drugs, devices, and biological products

(a) Regulations for goods to be processed, labeled, or repacked elsewhere

The Secretary is directed to promulgate regulations exempting from any labeling or packaging requirement of this chapter drugs and devices which are, in accordance with the practice of the trade, to be processed, labeled, or repacked in substantial quantities at establishments other than those where originally processed or packed, on condition that such drugs and devices are not adulterated or misbranded under the provisions of this chapter upon removal from such processing, labeling, or repacking establishment.

(b) Prescription by physician; exemption from labeling and prescription requirements; misbranded drugs; compliance with narcotic and marihuana laws

(1) A drug intended for use by man which--

(A) because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or

(B) is limited by an approved application under section 355 of this title to use under the professional supervision of a practitioner licensed by law to administer such drug;

(C) Redesignated (B)

shall be dispensed only (i) upon a written prescription of a practitioner licensed by law to administer such drug, or (ii) upon an oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist, or (iii) by refilling any such written or oral prescription if such refilling is authorized by the prescriber either in the original prescription or by oral order which is reduced promptly to writing and filed by the pharmacist. The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale.

(2) Any drug dispensed by filling or refilling a written or oral prescription of a practitioner licensed by law to administer such drug shall be exempt from the requirements of section 352 of this title, except paragraphs (a), (i)(2) and (3), (k), and (l), and the packaging requirements of paragraphs (g), (h), and (p), if the drug bears a label containing the name and address of the dispenser, the serial number and date of the prescription or of its filling, the name of the prescriber, and, if stated in the prescription, the name of the patient, and the directions for use and cautionary statements, if any, contained in such prescription. This exemption shall not apply to any drug dispensed in the course of the conduct of a business of dispensing drugs pursuant to diagnosis by mail, or to a drug dispensed in violation of paragraph (1) of this subsection.

(3) The Secretary may by regulation remove drugs subject to section 355 of this title from the requirements of paragraph (1) of this subsection when such requirements are not necessary for the protection of the public health.

(4)(A) A drug that is subject to paragraph (1) shall be deemed to be misbranded if at any time prior to dispensing

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



the label of the drug fails to bear, at a minimum, the symbol "Rx only".

(B) A drug to which paragraph (1) does not apply shall be deemed to be misbranded if at any time prior to dispensing the label of the drug bears the symbol described in subparagraph (A).

(5) Nothing in this subsection shall be construed to relieve any person from any requirement prescribed by or under authority of law with respect to drugs now included or which may hereafter be included within the classifications stated in sections 4721, 6001, and 6151 of Title 26, or to marihuana as defined in section 4761 of Title 26.

(c) Sales restrictions

(1) No person may sell, purchase, or trade or offer to sell, purchase, or trade any drug sample.  For purposes of this paragraph and subsection (d) of this section, the term "drug sample" means a unit of a drug, subject to subsection (b) of this section, which is not intended to be sold and is intended to promote the sale of the drug. Nothing in this paragraph shall subject an officer or executive of a drug manufacturer or distributor to criminal liability solely because of a sale, purchase, trade, or offer to sell, purchase, or trade in violation of this paragraph by other employees of the manufacturer or distributor.

(2) No person may sell, purchase, or trade, offer to sell, purchase, or trade, or counterfeit any coupon.  For purposes of this paragraph, the term "coupon" means a form which may be redeemed, at no cost or at a reduced cost, for a drug which is prescribed in accordance with subsection (b) of this section.

(3)(A) No person may sell, purchase, or trade, or offer to sell, purchase, or trade, any drug--

(i) which is subject to subsection (b) of this section, and

(ii)(I) which was purchased by a public or private hospital or other health care entity, or

(II) which was donated or supplied at a reduced price to a charitable organization described in section 501(c)(3) of Title 26.

(B) Subparagraph (A) does not apply to--

(i) the purchase or other acquisition by a hospital or other health care entity which is a member of a group purchasing organization of a drug for its own use from the group purchasing organization or from other hospitals or health care entities which are members of such organization,

(ii) the sale, purchase, or trade of a drug or an offer to sell, purchase, or trade a drug by an organization described in subparagraph (A)(ii)(II) to a nonprofit affiliate of the organization to the extent otherwise permitted by law,

(iii) a sale, purchase, or trade of a drug or an offer to sell, purchase, or trade a drug among hospitals or other health care entities which are under common control,

(iv) a sale, purchase, or trade of a drug or an offer to sell, purchase, or trade a drug for emergency medical reasons, or

(v) a sale, purchase, or trade of a drug, an offer to sell, purchase, or trade a drug, or the dispensing of a drug pursuant to a prescription executed in accordance with subsection (b) of this section.

For purposes of this paragraph, the term "entity" does not include a wholesale distributor of drugs or a retail pharmacy licensed under State law and the term "emergency medical reasons" includes transfers of a drug between health care entities or from a health care entity to a retail pharmacy undertaken to alleviate temporary shortages of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



the drug arising from delays in or interruptions of regular distribution schedules.

(d) Distribution of drug samples

(1) Except as provided in paragraphs (2) and (3), no person may distribute any drug sample. For purposes of this subsection, the term "distribute" does not include the providing of a drug sample to a patient by a--

(A) practitioner licensed to prescribe such drug,

(B) health care professional acting at the direction and under the supervision of such a practitioner, or

(C) pharmacy of a hospital or of another health care entity that is acting at the direction of such a practitioner and that received such sample pursuant to paragraph (2) or (3).

(2)(A) The manufacturer or authorized distributor of record of a drug subject to subsection (b) of this section may, in accordance with this paragraph, distribute drug samples by mail or common carrier to practitioners licensed to prescribe such drugs or, at the request of a licensed practitioner, to pharmacies of hospitals or other health care entities. Such a distribution of drug samples may only be made--

(i) in response to a written request for drug samples made on a form which meets the requirements of subparagraph (B), and

(ii) under a system which requires the recipient of the drug sample to execute a written receipt for the drug sample upon its delivery and the return of the receipt to the manufacturer or authorized distributor of record.

(B) A written request for a drug sample required by subparagraph (A)(i) shall contain--

(i) the name, address, professional designation, and signature of the practitioner making the request,

(ii) the identity of the drug sample requested and the quantity requested,

(iii) the name of the manufacturer of the drug sample requested, and

(iv) the date of the request.

(C) Each drug manufacturer or authorized distributor of record which makes distributions by mail or common carrier under this paragraph shall maintain, for a period of 3 years, the request forms submitted for such distributions and the receipts submitted for such distributions and shall maintain a record of distributions of drug samples which identifies the drugs distributed and the recipients of the distributions. Forms, receipts, and records required to be maintained under this subparagraph shall be made available by the drug manufacturer or authorized distributor of record to Federal and State officials engaged in the regulation of drugs and in the enforcement of laws applicable to drugs.

(3) The manufacturer or authorized distributor of record of a drug subject to subsection (b) of this section may, by means other than mail or common carrier, distribute drug samples only if the manufacturer or authorized distributor of record makes the distributions in accordance with subparagraph (A) and carries out the activities described in subparagraphs (B) through (F) as follows:

(A) Drug samples may only be distributed--

(i) to practitioners licensed to prescribe such drugs if they make a written request for the drug samples, or

(ii) at the written request of such a licensed practitioner, to pharmacies of hospitals or other health care entities.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



A written request for drug samples shall be made on a form which contains the practitioner's name, address, and professional designation, the identity of the drug sample requested, the quantity of drug samples requested, the name of the manufacturer or authorized distributor of record of the drug sample, the date of the request and signature of the practitioner making the request.

(B) Drug manufacturers or authorized distributors of record shall store drug samples under conditions that will maintain their stability, integrity, and effectiveness and will assure that the drug samples will be free of contamination, deterioration, and adulteration.

(C) Drug manufacturers or authorized distributors of record shall conduct, at least annually, a complete and accurate inventory of all drug samples in the possession of representatives of the manufacturer or authorized distributor of record. Drug manufacturers or authorized distributors of record shall maintain lists of the names and address of each of their representatives who distribute drug samples and of the sites where drug samples are stored. Drug manufacturers or authorized distributors of record shall maintain records for at least 3 years of all drug samples distributed, destroyed, or returned to the manufacturer or authorized distributor of record, of all inventories maintained under this subparagraph, of all thefts or significant losses of drug samples, and of all requests made under subparagraph (A) for drug samples. Records and lists maintained under this subparagraph shall be made available by the drug manufacturer or authorized distributor of record to the Secretary upon request.

(D) Drug manufacturers or authorized distributors of record shall notify the Secretary of any significant loss of drug samples and any known theft of drug samples.

(E) Drug manufacturers or authorized distributors of record shall report to the Secretary any conviction of their representatives for violations of subsection (c)(1) of this section or a State law because of the sale, purchase, or trade of a drug sample or the offer to sell, purchase, or trade a drug sample.

(F) Drug manufacturers or authorized distributors of record shall provide to the Secretary the name and telephone number of the individual responsible for responding to a request for information respecting drug samples.

(c) Wholesale distributors; guidelines for licensing; definitions

(1)(A) Each person who is engaged in the wholesale distribution of a drug subject to subsection (b) of this section and who is not the manufacturer or an authorized distributor of record of such drug shall, before each wholesale distribution of such drug (including each distribution to an authorized distributor of record or to a retail pharmacy), provide to the person who receives the drug a statement (in such form and containing such information as the Secretary may require) identifying each prior sale, purchase, or trade of such drug (including the date of the transaction and the names and addresses of all parties to the transaction).

(B) Each manufacturer of a drug subject to subsection (b) of this section shall maintain at its corporate offices a current list of the authorized distributors of record of such drug.

(2)(A) No person may engage in the wholesale distribution in interstate commerce of drugs subject to subsection (b) of this section in a State unless such person is licensed by the State in accordance with the guidelines issued under subparagraph (B).

(B) The Secretary shall by regulation issue guidelines establishing minimum standards, terms, and conditions for the licensing of persons to make wholesale distributions in interstate commerce of drugs subject to subsection (b) of this section. Such guidelines shall prescribe requirements for the storage and handling of such drugs and for the establishment and maintenance of records of the distributions of such drugs.

(3) For the purposes of this subsection and subsection (d) of this section--

(A) the term "authorized distributors of record" means those distributors with whom a manufacturer has

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



established an ongoing relationship to distribute such manufacturer's products, and

(B) the term "wholesale distribution" means distribution of drugs subject to subsection (b) of this section to other than the consumer or patient but does not include intracompany sales and does not include distributions of drugs described in subsection (c)(3)(B) of this section.

(f) Veterinary prescription drugs

(1)(A) A drug intended for use by animals other than man, other than a veterinary feed directive drug intended for use in animal feed or an animal feed bearing or containing a veterinary feed directive drug, which--

(i) because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary for its use, is not safe for animal use except under the professional supervision of a licensed veterinarian, or

(ii) is limited by an approved application under subsection (b) of section 360b of this title, a conditionally-approved application under section 360ccc of this title, or an index listing under section 360ccc-1 of this title to use under the professional supervision of a licensed veterinarian,

shall be dispensed only by or upon the lawful written or oral order of a licensed veterinarian in the course of the veterinarian's professional practice.

(B) For purposes of subparagraph (A), an order is lawful if the order--

(i) is a prescription or other order authorized by law,

(ii) is, if an oral order, promptly reduced to writing by the person lawfully filling the order, and filed by that person, and

(iii) is refilled only if authorized in the original order or in a subsequent oral order promptly reduced to writing by the person lawfully filling the order, and filed by that person.

(C) The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale.

(2) Any drug when dispensed in accordance with paragraph (1) of this subsection--

(A) shall be exempt from the requirements of section 352 of this title, except subsections (a), (g), (h), (i)(2), (i)(3), and (p) of such section, and

(B) shall be exempt from the packaging requirements of subsections (g), (h), and (p) of such section, if--

(i) when dispensed by a licensed veterinarian, the drug bears a label containing the name and address of the practitioner and any directions for use and cautionary statements specified by the practitioner, or

(ii) when dispensed by filling the lawful order of a licensed veterinarian, the drug bears a label containing the name and address of the dispenser, the serial number and date of the order or of its filling, the name of the licensed veterinarian, and the directions for use and cautionary statements, if any, contained in such order.

The preceding sentence shall not apply to any drug dispensed in the course of the conduct of a business of dispensing drugs pursuant to diagnosis by mail.

(3) The Secretary may by regulation exempt drugs for animals other than man subject to section 360b, 360ccc, or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



360ccc-1 of this title from the requirements of paragraph (1) when such requirements are not necessary for the protection of the public health.

(4) A drug which is subject to paragraph (1) shall be deemed to be misbranded if at any time prior to dispensing its label fails to bear the statement "Caution: Federal law restricts this drug to use by or on the order of a licensed veterinarian.". A drug to which paragraph (1) does not apply shall be deemed to be misbranded if at any time prior to dispensing its label bears the statement specified in the preceding sentence.

(g) Regulation of combination products

(1) The Secretary shall in accordance with this subsection assign an agency center to regulate products that constitute a combination of a drug, device, or biological product. The Secretary shall determine the primary mode of action of the combination product. If the Secretary determines that the primary mode of action is that of-

(A) a drug (other than a biological product), the agency center charged with premarket review of drugs shall have primary jurisdiction,

(B) a device, the agency center charged with premarket review of devices shall have primary jurisdiction, or

(C) a biological product, the agency center charged with premarket review of biological products shall have primary jurisdiction.

(2) Nothing in this subsection shall prevent the Secretary from using any agency resources of the Food and Drug Administration necessary to ensure adequate review of the safety, effectiveness, or substantial equivalence of an article.

(3) The Secretary shall promulgate regulations to implement market clearance procedures in accordance with paragraphs (1) and (2) not later than 1 year after November 28, 1990.

(4)(A) Not later than 60 days after October 26, 2002, the Secretary shall establish within the Office of the Commissioner of Food and Drugs an office to ensure the prompt assignment of combination products to agency centers, the timely and effective premarket review of such products, and consistent and appropriate postmarket regulation of like products subject to the same statutory requirements to the extent permitted by law. Additionally, the office shall, in determining whether a product is to be designated a combination product, consult with the component within the Office of the Commissioner of Food and Drugs that is responsible for such determinations. Such office (referred to in this paragraph as the "Office") shall have appropriate scientific and medical expertise, and shall be headed by a director.

(B) In carrying out this subsection, the Office shall, for each combination product, promptly assign an agency center with primary jurisdiction in accordance with paragraph (1) for the premarket review of such product.

(C)(i) In carrying out this subsection, the Office shall ensure timely and effective premarket reviews by overseeing the timeliness of and coordinating reviews involving more than one agency center.

(ii) In order to ensure the timeliness of the premarket review of a combination product, the agency center with primary jurisdiction for the product, and the consulting agency center, shall be responsible to the Office with respect to the timeliness of the premarket review.

(D) In carrying out this subsection, the Office shall ensure the consistency and appropriateness of postmarket regulation of like products subject to the same statutory requirements to the extent permitted by law.

(E)(i) Any dispute regarding the timeliness of the premarket review of a combination product may be presented to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



the Office for resolution, unless the dispute is clearly premature.

(ii) During the review process, any dispute regarding the substance of the premarket review may be presented to the Commissioner of Food and Drugs after first being considered by the agency center with primary jurisdiction of the premarket review, under the scientific dispute resolution procedures for such center. The Commissioner of Food and Drugs shall consult with the Director of the Office in resolving the substantive dispute.

(F) The Secretary, acting through the Office, shall review each agreement, guidance, or practice of the Secretary that is specific to the assignment of combination products to agency centers and shall determine whether the agreement, guidance, or practice is consistent with the requirements of this subsection. In carrying out such review, the Secretary shall consult with stakeholders and the directors of the agency centers. After such consultation, the Secretary shall determine whether to continue in effect, modify, revise, or eliminate such agreement, guidance, or practice, and shall publish in the Federal Register a notice of the availability of such modified or revised agreement, guidance or practice. Nothing in this paragraph shall be construed as preventing the Secretary from following each agreement, guidance, or practice until continued, modified, revised, or eliminated.

(G) Not later than one year after October 26, 2002 and annually thereafter, the Secretary shall report to the appropriate committees of Congress on the activities and impact of the Office. The report shall include provisions--

(i) describing the numbers and types of combination products under review and the timeliness in days of such assignments, reviews, and dispute resolutions;

(ii) identifying the number of premarket reviews of such products that involved a consulting agency center; and

(iii) describing improvements in the consistency of postmarket regulation of combination products.

(H) Nothing in this paragraph shall be construed to limit the regulatory authority of any agency center.

(5) As used in this subsection:

(A) The term "agency center" means a center or alternative organizational component of the Food and Drug Administration.

(B) The term "biological product" has the meaning given the term in section 262(i) of Title 42.

(C) The term "market clearance" includes--

(i) approval of an application under section 355, 357, 360e, or 360j(g) of this title,

(ii) a finding of substantial equivalence under this part, and

(iii) approval of a biologics license application under subsection (a) of section 262 of Title 42.

21 U.S.C.A. § 353, **21 USCA § 353**

Current through P.L. 109-12, approved 05/05/05

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

