**TAB 5**

21 U.S.C.A. § 355
▷

Effective: December 08, 2003

UNITED STATES CODE ANNOTATED
TITLE 21. FOOD AND DRUGS
CHAPTER 9--FEDERAL FOOD, DRUG, AND COSMETIC ACT
SUBCHAPTER V--DRUGS AND DEVICES
PART A--DRUGS AND DEVICES
> > § 355. New drugs

 (a) Necessity of effective approval of application

No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) or (j) of this section is effective with respect to such drug.

 (b) Filing application;  contents

(1) Any person may file with the Secretary an application with respect to any drug subject to the provisions of subsection (a) of this section.  Such person shall submit to the Secretary as a part of the application (A) full reports of investigations which have been made to show whether or not such drug is safe for use and whether such drug is effective in use;  (B) a full list of the articles used as components of such drug;  (C) a full statement of the composition of such drug;  (D) a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of such drug;  (E) such samples of such drug and of the articles used as components thereof as the Secretary may require;  (F) specimens of the labeling proposed to be used for such drug.  The applicant shall file with the application the patent number and the expiration date of any patent which claims the drug for which the applicant submitted the application or which claims a method of using such drug and with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug.  If an application is filed under this subsection for a drug and a patent which claims such drug or a method of using such drug is issued after the filing date but before approval of the application, the applicant shall amend the application to include the information required by the preceding sentence.  Upon approval of the application, the Secretary shall publish information submitted under the two preceding sentences.  The Secretary shall, in consultation with the Director of the National Institutes of Health and with representatives of the drug manufacturing industry, review and develop guidance, as appropriate, on the inclusion of women and minorities in clinical trials required by clause (A), and (G) any assessments required under section 355c of this title.

(2) An application submitted under paragraph (1) for a drug for which the investigations described in clause (A) of such paragraph and relied upon by the applicant for approval of the application were not conducted by or for the applicant and for which the applicant has not obtained a right of reference or use from the person by or for whom the investigations were conducted shall also include--

(A) a certification, in the opinion of the applicant and to the best of his knowledge, with respect to each patent which claims the drug for which such investigations were conducted or which claims a use for such drug for which the applicant is seeking approval under this subsection and for which information is required to be filed under paragraph (1) or subsection (c) of this section--

(i) that such patent information has not been filed,

(ii) that such patent has expired,

(iii) of the date on which such patent will expire, or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

(iv) that such patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted;  and

(B) if with respect to the drug for which investigations described in paragraph (1)(A) were conducted information was filed under paragraph (1) or subsection (c) of this section for a method of use patent which does not claim a use for which the applicant is seeking approval under this subsection, a statement that the method of use patent does not claim such a use.

(3) Notice of opinion that patent is invalid or will not be infringed

(A) Agreement to give notice

An applicant that makes a certification described in paragraph (2)(A)(iv) shall include in the application a statement that the applicant will give notice as required by this paragraph.

(B) Timing of notice

An applicant that makes a certification described in paragraph (2)(A)(iv) shall give notice as required under this paragraph--

(i) if the certification is in the application, not later than 20 days after the date of the postmark on the notice with which the Secretary informs the applicant that the application has been filed;  or

(ii) if the certification is in an amendment or supplement to the application, at the time at which the applicant submits the amendment or supplement, regardless of whether the applicant has already given notice with respect to another such certification contained in the application or in an amendment or supplement to the application.

(C) Recipients of notice

An applicant required under this paragraph to give notice shall give notice to--

(i) each owner of the patent that is the subject of the certification (or a representative of the owner designated to receive such a notice);  and

(ii) the holder of the approved application under this subsection for the drug that is claimed by the patent or a use of which is claimed by the patent (or a representative of the holder designated to receive such a notice).

(D) Contents of notice

A notice required under this paragraph shall--

(i) state that an application that contains data from bioavailability or bioequivalence studies has been submitted under this subsection for the drug with respect to which the certification is made to obtain approval to engage in the commercial manufacture, use, or sale of the drug before the expiration of the patent referred to in the certification;  and

(ii) include a detailed statement of the factual and legal basis of the opinion of the applicant that the patent is invalid or will not be infringed.

(4)(A) An applicant may not amend or supplement an application referred to in paragraph (2) to seek approval of a drug that is a different drug than the drug identified in the application as submitted to the Secretary.

(B) With respect to the drug for which such an application is submitted, nothing in this subsection or subsection

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



(c)(3) of this section prohibits an applicant from amending or supplementing the application to seek approval of a different strength.

(5)(A) The Secretary shall issue guidance for the individuals who review applications submitted under paragraph (1) or under section 262 of Title 42, which shall relate to promptness in conducting the review, technical excellence, lack of bias and conflict of interest, and knowledge of regulatory and scientific standards, and which shall apply equally to all individuals who review such applications.

(B) The Secretary shall meet with a sponsor of an investigation or an applicant for approval for a drug under this subsection or section 262 of Title 42 if the sponsor or applicant makes a reasonable written request for a meeting for the purpose of reaching agreement on the design and size of clinical trials intended to form the primary basis of an effectiveness claim. The sponsor or applicant shall provide information necessary for discussion and agreement on the design and size of the clinical trials. Minutes of any such meeting shall be prepared by the Secretary and made available to the sponsor or applicant upon request.

(C) Any agreement regarding the parameters of the design and size of clinical trials of a new drug under this paragraph that is reached between the Secretary and a sponsor or applicant shall be reduced to writing and made part of the administrative record by the Secretary. Such agreement shall not be changed after the testing begins, except--

(i) with the written agreement of the sponsor or applicant; or

(ii) pursuant to a decision, made in accordance with subparagraph (D) by the director of the reviewing division, that a substantial scientific issue essential to determining the safety or effectiveness of the drug has been identified after the testing has begun.

(D) A decision under subparagraph (C)(ii) by the director shall be in writing and the Secretary shall provide to the sponsor or applicant an opportunity for a meeting at which the director and the sponsor or applicant will be present and at which the director will document the scientific issue involved.

(E) The written decisions of the reviewing division shall be binding upon, and may not directly or indirectly be changed by, the field or compliance division personnel unless such field or compliance division personnel demonstrate to the reviewing division why such decision should be modified.

(F) No action by the reviewing division may be delayed because of the unavailability of information from or action by field personnel unless the reviewing division determines that a delay is necessary to assure the marketing of a safe and effective drug.

(G) For purposes of this paragraph, the reviewing division is the division responsible for the review of an application for approval of a drug under this subsection or section 262 of Title 42 (including all scientific and medical matters, chemistry, manufacturing, and controls).

(c) Period for approval of application; period for, notice, and expedition of hearing; period for issuance of order

(1) Within one hundred and eighty days after the filing of an application under subsection (b) of this section, or such additional period as may be agreed upon by the Secretary and the applicant, the Secretary shall either--

(A) Approve the application if he then finds that none of the grounds for denying approval specified in subsection (d) of this section applies, or

(B) Give the applicant notice of an opportunity for a hearing before the Secretary under subsection (d) of this section on the question whether such application is approvable. If the applicant elects to accept the opportunity for hearing by written request within thirty days after such notice, such hearing shall commence not more than

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



ninety days after the expiration of such thirty days unless the Secretary and the applicant otherwise agree. Any such hearing shall thereafter be conducted on an expedited basis and the Secretary's order thereon shall be issued within ninety days after the date fixed by the Secretary for filing final briefs.

(2) If the patent information described in subsection (b) of this section could not be filed with the submission of an application under subsection (b) of this section because the application was filed before the patent information was required under subsection (b) of this section or a patent was issued after the application was approved under such subsection, the holder of an approved application shall file with the Secretary the patent number and the expiration date of any patent which claims the drug for which the application was submitted or which claims a method of using such drug and with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug. If the holder of an approved application could not file patent information under subsection (b) of this section because it was not required at the time the application was approved, the holder shall file such information under this subsection not later than thirty days after September 24, 1984, and if the holder of an approved application could not file patent information under subsection (b) of this section because no patent had been issued when an application was filed or approved, the holder shall file such information under this subsection not later than thirty days after the date the patent involved is issued. Upon the submission of patent information under this subsection, the Secretary shall publish it.

(3) The approval of an application filed under subsection (b) of this section which contains a certification required by paragraph (2) of such subsection shall be made effective on the last applicable date determined by applying the following to each certification made under subsection (b)(2)(A) of this section:

(A) If the applicant only made a certification described in clause (i) or (ii) of subsection (b)(2)(A) of this section or in both such clauses, the approval may be made effective immediately.

(B) If the applicant made a certification described in clause (iii) of subsection (b)(2)(A) of this section, the approval may be made effective on the date certified under clause (iii).

(C) If the applicant made a certification described in clause (iv) of subsection (b)(2)(A) of this section, the approval shall be made effective immediately unless, before the expiration of 45 days after the date on which the notice described in subsection (b)(3) of this section is received, an action is brought for infringement of the patent that is the subject of the certification and for which information was submitted to the Secretary under paragraph (2) or subsection (b)(1) of this section before the date on which the application (excluding an amendment or supplement to the application) was submitted. If such an action is brought before the expiration of such days, the approval may be made effective upon the expiration of the thirty-month period beginning on the date of the receipt of the notice provided under subsection (b)(3) of this section or such shorter or longer period as the court may order because either party to the action failed to reasonably cooperate in expediting the action, except that--

(i) if before the expiration of such period the district court decides that the patent is invalid or not infringed (including any substantive determination that there is no cause of action for patent infringement or invalidity), the approval shall be made effective on--

(I) the date on which the court enters judgment reflecting the decision; or

(II) the date of a settlement order or consent decree signed and entered by the court stating that the patent that is the subject of the certification is invalid or not infringed;

(ii) if before the expiration of such period the district court decides that the patent has been infringed--

(I) if the judgment of the district court is appealed, the approval shall be made effective on--

(aa) the date on which the court of appeals decides that the patent is invalid or not infringed (including any

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



substantive determination that there is no cause of action for patent infringement or invalidity);  or

(bb) the date of a settlement order or consent decree signed and entered by the court of appeals stating that the patent that is the subject of the certification is invalid or not infringed;  or

(II) if the judgment of the district court is not appealed or is affirmed, the approval shall be made effective on the date specified by the district court in a court order under section 271(e)(4)(A) of Title 35;

(iii) if before the expiration of such period the court grants a preliminary injunction prohibiting the applicant from engaging in the commercial manufacture or sale of the drug until the court decides the issues of patent validity and infringement and if the court decides that such patent is invalid or not infringed, the approval shall be made effective as provided in clause (i);  or

(iv) if before the expiration of such period the court grants a preliminary injunction prohibiting the applicant from engaging in the commercial manufacture or sale of the drug until the court decides the issues of patent validity and infringement and if the court decides that such patent has been infringed, the approval shall be made effective as provided in clause (ii).

In such an action, each of the parties shall reasonably cooperate in expediting the action.

(D) Civil action to obtain patent certainty

(i) Declaratory judgment absent infringement action

(I) In general

No action may be brought under section 2201 of Title 28, by an applicant referred to in subsection (b)(2) of this section for a declaratory judgment with respect to a patent which is the subject of the certification referred to in subparagraph (C) unless--

(aa) the 45-day period referred to in such subparagraph has expired;

(bb) neither the owner of such patent nor the holder of the approved application under subsection (b) of this section for the drug that is claimed by the patent or a use of which is claimed by the patent brought a civil action against the applicant for infringement of the patent before the expiration of such period;  and

(cc) in any case in which the notice provided under paragraph (2)(B) relates to noninfringement, the notice was accompanied by a document described in subclause (III).

(II) Filing of civil action

If the conditions described in items (aa), (bb), and as applicable, (cc) of subclause (I) have been met, the applicant referred to in such subclause may, in accordance with section 2201 of Title 28, bring a civil action under such section against the owner or holder referred to in such subclause (but not against any owner or holder that has brought such a civil action against the applicant, unless that civil action was dismissed without prejudice) for a declaratory judgment that the patent is invalid or will not be infringed by the drug for which the applicant seeks approval, except that such civil action may be brought for a declaratory judgment that the patent will not be infringed only in a case in which the condition described in subclause (I)(cc) is applicable.  A civil action referred to in this subclause shall be brought in the judicial district where the defendant has its principal place of business or a regular and established place of business.

(III) Offer of confidential access to application

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

For purposes of subclause (I)(cc), the document described in this subclause is a document providing an offer of confidential access to the application that is in the custody of the applicant referred to in subsection (b)(2) of this section for the purpose of determining whether an action referred to in subparagraph (C) should be brought. The document providing the offer of confidential access shall contain such restrictions as to persons entitled to access, and on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information. A request for access to an application under an offer of confidential access shall be considered acceptance of the offer of confidential access with the restrictions as to persons entitled to access, and on the use and disposition of any information accessed, contained in the offer of confidential access, and those restrictions and other terms of the offer of confidential access shall be considered terms of an enforceable contract. Any person provided an offer of confidential access shall review the application for the sole and limited purpose of evaluating possible infringement of the patent that is the subject of the certification under subsection (b)(2)(A)(iv) of this section and for no other purpose, and may not disclose information of no relevance to any issue of patent infringement to any person other than a person provided an offer of confidential access. Further, the application may be redacted by the applicant to remove any information of no relevance to any issue of patent infringement.

(ii) Counterclaim to infringement action

(I) In general

If an owner of the patent or the holder of the approved application under subsection (b) of this section for the drug that is claimed by the patent or a use of which is claimed by the patent brings a patent infringement action against the applicant, the applicant may assert a counterclaim seeking an order requiring the holder to correct or delete the patent information submitted by the holder under subsection (b) of this section or this subsection on the ground that the patent does not claim either--

(aa) the drug for which the application was approved;  or

(bb) an approved method of using the drug.

(II) No independent cause of action

Subclause (I) does not authorize the assertion of a claim described in subclause (I) in any civil action or proceeding other than a counterclaim described in subclause (I).

(iii) No damages

An applicant shall not be entitled to damages in a civil action under clause (i) or a counterclaim under clause (ii).

(E)(i) If an application (other than an abbreviated new drug application) submitted under subsection (b) of this section for a drug, no active ingredient (including any ester or salt of the active ingredient) of which has been approved in any other application under subsection (b) of this section, was approved during the period beginning January 1, 1982, and ending on September 24, 1984, the Secretary may not make the approval of another application for a drug for which the investigations described in clause (A) of subsection (b)(1) of this section and relied upon by the applicant for approval of the application were not conducted by or for the applicant and for which the applicant has not obtained a right of reference or use from the person by or for whom the investigations were conducted effective before the expiration of ten years from the date of the approval of the application previously approved under subsection (b) of this section.

(ii) If an application submitted under subsection (b) of this section for a drug, no active ingredient (including any ester or salt of the active ingredient) of which has been approved in any other application under subsection (b) of this section, is approved after September 24, 1984, no application which refers to the drug for which the subsection (b) application was submitted and for which the investigations described in clause (A) of subsection

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



(b)(1) of this section and relied upon by the applicant for approval of the application were not conducted by or for the applicant and for which the applicant has not obtained a right of reference or use from the person by or for whom the investigations were conducted may be submitted under subsection (b) of this section before the expiration of five years from the date of the approval of the application under subsection (b) of this section, except that such an application may be submitted under subsection (b) of this section after the expiration of four years from the date of the approval of the subsection (b) application if it contains a certification of patent invalidity or noninfringement described in clause (iv) of subsection (b)(2)(A) of this section.  The approval of such an application shall be made effective in accordance with this paragraph except that, if an action for patent infringement is commenced during the one-year period beginning forty-eight months after the date of the approval of the subsection (b) application, the thirty-month period referred to in subparagraph (C) shall be extended by such amount of time (if any) which is required for seven and one-half years to have elapsed from the date of approval of the subsection (b) application.

(iii) If an application submitted under subsection (b) of this section for a drug, which includes an active ingredient (including any ester or salt of the active ingredient) that has been approved in another application approved under subsection (b) of this section, is approved after September 24, 1984, and if such application contains reports of new clinical investigations (other than bioavailability studies) essential to the approval of the application and conducted or sponsored by the applicant, the Secretary may not make the approval of an application submitted under subsection (b) of this section for the conditions of approval of such drug in the approved subsection (b) application effective before the expiration of three years from the date of the approval of the application under subsection (b) of this section if the investigations described in clause (A) of subsection (b)(1) of this section and relied upon by the applicant for approval of the application were not conducted by or for the applicant and if the applicant has not obtained a right of reference or use from the person by or for whom the investigations were conducted.

(iv) If a supplement to an application approved under subsection (b) of this section is approved after September 24, 1984, and the supplement contains reports of new clinical investigations (other than bioavailability [FN1] studies) essential to the approval of the supplement and conducted or sponsored by the person submitting the supplement, the Secretary may not make the approval of an application submitted under subsection (b) of this section for a change approved in the supplement effective before the expiration of three years from the date of the approval of the supplement under subsection (b) of this section if the investigations described in clause (A) of subsection (b)(1) of this section and relied upon by the applicant for approval of the application were not conducted by or for the applicant and if the applicant has not obtained a right of reference or use from the person by or for whom the investigations were conducted.

(v) If an application (or supplement to an application) submitted under subsection (b) of this section for a drug, which includes an active ingredient (including any ester or salt of the active ingredient) that has been approved in another application under subsection (b) of this section, was approved during the period beginning January 1, 1982, and ending on September 24, 1984, the Secretary may not make the approval of an application submitted under this subsection and for which the investigations described in clause (A) of subsection (b)(1) of this section and relied upon by the applicant for approval of the applicant were not conducted by or for the applicant and for which the applicant has not obtained a right of reference or use from the person by or for whom the investigations were conducted and which refers to the drug for which the subsection (b) application was submitted effective before the expiration of two years from September 24, 1984.

(4) A drug manufactured in a pilot or other small facility may be used to demonstrate the safety and effectiveness of the drug and to obtain approval for the drug prior to manufacture of the drug in a larger facility, unless the Secretary makes a determination that a full scale production facility is necessary to ensure the safety or effectiveness of the drug.

(d) Grounds for refusing application;  approval of application;  "substantial evidence" defined

If the Secretary finds, after due notice to the applicant in accordance with subsection (c) of this section and giving

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



him an opportunity for a hearing, in accordance with said subsection, that (1) the investigations, reports of which are required to be submitted to the Secretary pursuant to subsection (b) of this section, do not include adequate tests by all methods reasonably applicable to show whether or not such drug is safe for use under the conditions prescribed, recommended, or suggested in the proposed labeling thereof;  (2) the results of such tests show that such drug is unsafe for use under such conditions or do not show that such drug is safe for use under such conditions;  (3) the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of such drug are inadequate to preserve its identity, strength, quality, and purity;  (4) upon the basis of the information submitted to him as part of the application, or upon the basis of any other information before him with respect to such drug, he has insufficient information to determine whether such drug is safe for use under such conditions;  or (5) evaluated on the basis of the information submitted to him as part of the application and any other information before him with respect to such drug, there is a lack of substantial evidence that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the proposed labeling thereof;  or (6) the application failed to contain the patent information prescribed by subsection (b) of this section;  or (7) based on a fair evaluation of all material facts, such labeling is false or misleading in any particular;  he shall issue an order refusing to approve the application.  If, after such notice and opportunity for hearing, the Secretary finds that clauses (1) through (6) do not apply, he shall issue an order approving the application. As used in this subsection and subsection (e) of this section, the term "substantial evidence" means evidence consisting of adequate and well-controlled investigations, including clinical investigations, by experts qualified by scientific training and experience to evaluate the effectiveness of the drug involved, on the basis of which it could fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling or proposed labeling thereof. If the Secretary determines, based on relevant science, that data from one adequate and well-controlled clinical investigation and confirmatory evidence (obtained prior to or after such investigation) are sufficient to establish effectiveness, the Secretary may consider such data and evidence to constitute substantial evidence for purposes of the preceding sentence.

(e) Withdrawal of approval;  grounds;  immediate suspension upon finding imminent hazard to public health

The Secretary shall, after due notice and opportunity for hearing to the applicant, withdraw approval of an application with respect to any drug under this section if the Secretary finds (1) that clinical or other experience, tests, or other scientific data show that such drug is unsafe for use under the conditions of use upon the basis of which the application was approved;  (2) that new evidence of clinical experience, not contained in such application or not available to the Secretary until after such application was approved, or tests by new methods, or tests by methods not deemed reasonably applicable when such application was approved, evaluated together with the evidence available to the Secretary when the application was approved, shows that such drug is not shown to be safe for use under the conditions of use upon the basis of which the application was approved;  or (3) on the basis of new information before him with respect to such drug, evaluated together with the evidence available to him when the application was approved, that there is a lack of substantial evidence that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling thereof;  or (4) the patent information prescribed by subsection (c) of this section was not filed within thirty days after the receipt of written notice from the Secretary specifying the failure to file such information;  or (5) that the application contains any untrue statement of a material fact: *Provided*, That if the Secretary (or in his absence the officer acting as Secretary) finds that there is an imminent hazard to the public health, he may suspend the approval of such application immediately, and give the applicant prompt notice of his action and afford the applicant the opportunity for an expedited hearing under this subsection;  but the authority conferred by this proviso to suspend the approval of an application shall not be delegated.  The Secretary may also, after due notice and opportunity for hearing to the applicant, withdraw the approval of an application submitted under subsection (b) or (j) of this section with respect to any drug under this section if the Secretary finds (1) that the applicant has failed to establish a system for maintaining required records, or has repeatedly or deliberately failed to maintain such records or to make required reports, in accordance with a regulation or order under subsection (k) of this section or to comply with the notice requirements of section 360(k)(2) of this title, or the applicant has refused to permit access to, or copying or verification of, such records as required by paragraph (2) of such subsection;  or (2) that on the basis of new information before him, evaluated together with the evidence before him when the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



application was approved, the methods used in, or the facilities and controls used for, the manufacture, processing, and packing of such drug are inadequate to assure and preserve its identity, strength, quality, and purity and were not made adequate within a reasonable time after receipt of written notice from the Secretary specifying the matter complained of; or (3) that on the basis of new information before him, evaluated together with the evidence before him when the application was approved, the labeling of such drug, based on a fair evaluation of all material facts, is false or misleading in any particular and was not corrected within a reasonable time after receipt of written notice from the Secretary specifying the matter complained of. Any order under this subsection shall state the findings upon which it is based.

(f) Revocation of order refusing, withdrawing or suspending approval of application

Whenever the Secretary finds that the facts so require, he shall revoke any previous order under subsection (d) or (e) of this section refusing, withdrawing, or suspending approval of an application and shall approve such application or reinstate such approval, as may be appropriate.

(g) Service of orders

Orders of the Secretary issued under this section shall be served (1) in person by any officer or employee of the Department designated by the Secretary or (2) by mailing the order by registered mail or by certified mail addressed to the applicant or respondent at his last-known address in the records of the Secretary.

(h) Appeal from order

An appeal may be taken by the applicant from an order of the Secretary refusing or withdrawing approval of an application under this section. Such appeal shall be taken by filing in the United States court of appeals for the circuit wherein such applicant resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia Circuit, within sixty days after the entry of such order, a written petition praying that the order of the Secretary be set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Secretary, or any officer designated by him for that purpose, and thereupon the Secretary shall certify and file in the court the record upon which the order complained of was entered, as provided in section 2112 of Title 28. Upon the filing of such petition such court shall have exclusive jurisdiction to affirm or set aside such order, except that until the filing of the record the Secretary may modify or set aside his order. No objection to the order of the Secretary shall be considered by the court unless such objection shall have been urged before the Secretary or unless there were reasonable grounds for failure so to do. The finding of the Secretary as to the facts, if supported by substantial evidence, shall be conclusive. If any person shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceeding before the Secretary, the court may order such additional evidence to be taken before the Secretary and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Secretary may modify his findings as to the facts by reason of the additional evidence so taken, and he shall file with the court such modified findings which, if supported by substantial evidence, shall be conclusive, and his recommendation, if any, for the setting aside of the original order. The judgment of the court affirming or setting aside any such order of the Secretary shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of Title 28. The commencement of proceedings under this subsection shall not, unless specifically ordered by the court to the contrary, operate as a stay of the Secretary's order.

(i) Exemptions of drugs for research; discretionary and mandatory conditions; direct reports to Secretary

(1) The Secretary shall promulgate regulations for exempting from the operation of the foregoing subsections of this section drugs intended solely for investigational use by experts qualified by scientific training and experience to investigate the safety and effectiveness of drugs. Such regulations may, within the discretion of the Secretary, among other conditions relating to the protection of the public health, provide for conditioning such exemption

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

upon--

(A) the submission to the Secretary, before any clinical testing of a new drug is undertaken, of reports, by the manufacturer or the sponsor of the investigation of such drug, of preclinical tests (including tests on animals) of such drug adequate to justify the proposed clinical testing;

(B) the manufacturer or the sponsor of the investigation of a new drug proposed to be distributed to investigators for clinical testing obtaining a signed agreement from each of such investigators that patients to whom the drug is administered will be under his personal supervision, or under the supervision of investigators responsible to him, and that he will not supply such drug to any other investigator, or to clinics, for administration to human beings;

(C) the establishment and maintenance of such records, and the making of such reports to the Secretary, by the manufacturer or the sponsor of the investigation of such drug, of data (including but not limited to analytical reports by investigators) obtained as the result of such investigational use of such drug, as the Secretary finds will enable him to evaluate the safety and effectiveness of such drug in the event of the filing of an application pursuant to subsection (b) of this section; and

(D) the submission to the Secretary by the manufacturer or the sponsor of the investigation of a new drug of a statement of intent regarding whether the manufacturer or sponsor has plans for assessing pediatric safety and efficacy.

(2) Subject to paragraph (3), a clinical investigation of a new drug may begin 30 days after the Secretary has received from the manufacturer or sponsor of the investigation a submission containing such information about the drug and the clinical investigation, including--

(A) information on design of the investigation and adequate reports of basic information, certified by the applicant to be accurate reports, necessary to assess the safety of the drug for use in clinical investigation; and

(B) adequate information on the chemistry and manufacturing of the drug, controls available for the drug, and primary data tabulations from animal or human studies.

(3)(A) At any time, the Secretary may prohibit the sponsor of an investigation from conducting the investigation (referred to in this paragraph as a "clinical hold") if the Secretary makes a determination described in subparagraph (B). The Secretary shall specify the basis for the clinical hold, including the specific information available to the Secretary which served as the basis for such clinical hold, and confirm such determination in writing.

(B) For purposes of subparagraph (A), a determination described in this subparagraph with respect to a clinical hold is that--

(i) the drug involved represents an unreasonable risk to the safety of the persons who are the subjects of the clinical investigation, taking into account the qualifications of the clinical investigators, information about the drug, the design of the clinical investigation, the condition for which the drug is to be investigated, and the health status of the subjects involved; or

(ii) the clinical hold should be issued for such other reasons as the Secretary may by regulation establish (including reasons established by regulation before November 21, 1997).

(C) Any written request to the Secretary from the sponsor of an investigation that a clinical hold be removed shall receive a decision, in writing and specifying the reasons therefor, within 30 days after receipt of such request. Any such request shall include sufficient information to support the removal of such clinical hold.

(4) Regulations under paragraph (1) shall provide that such exemption shall be conditioned upon the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



manufacturer, or the sponsor of the investigation, requiring that experts using such drugs for investigational purposes certify to such manufacturer or sponsor that they will inform any human beings to whom such drugs, or any controls used in connection therewith, are being administered, or their representatives, that such drugs are being used for investigational purposes and will obtain the consent of such human beings or their representatives, except where it is not feasible or it is contrary to the best interests of such human beings. Nothing in this subsection shall be construed to require any clinical investigator to submit directly to the Secretary reports on the investigational use of drugs.

(j) Abbreviated new drug applications

(1) Any person may file with the Secretary an abbreviated application for the approval of a new drug.

(2)(A) An abbreviated application for a new drug shall contain--

(i) information to show that the conditions of use prescribed, recommended, or suggested in the labeling proposed for the new drug have been previously approved for a drug listed under paragraph (7) (hereinafter in this subsection referred to as a "listed drug");

(ii)(I) if the listed drug referred to in clause (i) has only one active ingredient, information to show that the active ingredient of the new drug is the same as that of the listed drug;

(II) if the listed drug referred to in clause (i) has more than one active ingredient, information to show that the active ingredients of the new drug are the same as those of the listed drug, or

(III) if the listed drug referred to in clause (i) has more than one active ingredient and if one of the active ingredients of the new drug is different and the application is filed pursuant to the approval of a petition filed under subparagraph (C), information to show that the other active ingredients of the new drug are the same as the active ingredients of the listed drug, information to show that the different active ingredient is an active ingredient of a listed drug or of a drug which does not meet the requirements of section 321(p) of this title, and such other information respecting the different active ingredient with respect to which the petition was filed as the Secretary may require;

(iii) information to show that the route of administration, the dosage form, and the strength of the new drug are the same as those of the listed drug referred to in clause (i) or, if the route of administration, the dosage form, or the strength of the new drug is different and the application is filed pursuant to the approval of a petition filed under subparagraph (C), such information respecting the route of administration, dosage form, or strength with respect to which the petition was filed as the Secretary may require;

(iv) information to show that the new drug is bioequivalent to the listed drug referred to in clause (i), except that if the application is filed pursuant to the approval of a petition filed under subparagraph (C), information to show that the active ingredients of the new drug are of the same pharmacological or therapeutic class as those of the listed drug referred to in clause (i) and the new drug can be expected to have the same therapeutic effect as the listed drug when administered to patients for a condition of use referred to in clause (i);

(v) information to show that the labeling proposed for the new drug is the same as the labeling approved for the listed drug referred to in clause (i) except for changes required because of differences approved under a petition filed under subparagraph (C) or because the new drug and the listed drug are produced or distributed by different manufacturers;

(vi) the items specified in clauses (B) through (F) of subsection (b)(1) of this section;

(vii) a certification, in the opinion of the applicant and to the best of his knowledge, with respect to each patent which claims the listed drug referred to in clause (i) or which claims a use for such listed drug for which the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



applicant is seeking approval under this subsection and for which information is required to be filed under subsection (b) or (c) of this section--

(I) that such patent information has not been filed,

(II) that such patent has expired,

(III) of the date on which such patent will expire, or

(IV) that such patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted;  and

(viii) if with respect to the listed drug referred to in clause (i) information was filed under subsection (b) or (c) of this section for a method of use patent which does not claim a use for which the applicant is seeking approval under this subsection, a statement that the method of use patent does not claim such a use.

The Secretary may not require that an abbreviated application contain information in addition to that required by clauses (i) through (viii).

(B) Notice of opinion that patent is invalid or will not be infringed

(i) Agreement to give notice

An applicant that makes a certification described in subparagraph (A)(vii)(IV) shall include in the application a statement that the applicant will give notice as required by this subparagraph.

(ii) Timing of notice

An applicant that makes a certification described in subparagraph (A)(vii)(IV) shall give notice as required under this subparagraph--

(I) if the certification is in the application, not later than 20 days after the date of the postmark on the notice with which the Secretary informs the applicant that the application has been filed;  or

(II) if the certification is in an amendment or supplement to the application, at the time at which the applicant submits the amendment or supplement, regardless of whether the applicant has already given notice with respect to another such certification contained in the application or in an amendment or supplement to the application.

(iii) Recipients of notice

An applicant required under this subparagraph to give notice shall give notice to--

(I) each owner of the patent that is the subject of the certification (or a representative of the owner designated to receive such a notice);  and

(II) the holder of the approved application under subsection (b) of this section for the drug that is claimed by the patent or a use of which is claimed by the patent (or a representative of the holder designated to receive such a notice).

(iv) Contents of notice

A notice required under this subparagraph shall--

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



(I) state that an application that contains data from bioavailability or bioequivalence studies has been submitted under this subsection for the drug with respect to which the certification is made to obtain approval to engage in the commercial manufacture, use, or sale of the drug before the expiration of the patent referred to in the certification; and

(II) include a detailed statement of the factual and legal basis of the opinion of the applicant that the patent is invalid or will not be infringed.

(C) If a person wants to submit an abbreviated application for a new drug which has a different active ingredient or whose route of administration, dosage form, or strength differ from that of a listed drug, such person shall submit a petition to the Secretary seeking permission to file such an application.  The Secretary shall approve or disapprove a petition submitted under this subparagraph within ninety days of the date the petition is submitted. The Secretary shall approve such a petition unless the Secretary finds--

(i) that investigations must be conducted to show the safety and effectiveness of the drug or of any of its active ingredients, the route of administration, the dosage form, or strength which differ from the listed drug;  or

(ii) that any drug with a different active ingredient may not be adequately evaluated for approval as safe and effective on the basis of the information required to be submitted in an abbreviated application.

(D)(i) An applicant may not amend or supplement an application to seek approval of a drug referring to a different listed drug from the listed drug identified in the application as submitted to the Secretary.

(ii) With respect to the drug for which an application is submitted, nothing in this subsection prohibits an applicant from amending or supplementing the application to seek approval of a different strength.

(iii) Within 60 days after December 8, 2003, the Secretary shall issue guidance defining the term "listed drug" for purposes of this subparagraph.

(3)(A) The Secretary shall issue guidance for the individuals who review applications submitted under paragraph (1), which shall relate to promptness in conducting the review, technical excellence, lack of bias and conflict of interest, and knowledge of regulatory and scientific standards, and which shall apply equally to all individuals who review such applications.

(B) The Secretary shall meet with a sponsor of an investigation or an applicant for approval for a drug under this subsection if the sponsor or applicant makes a reasonable written request for a meeting for the purpose of reaching agreement on the design and size of bioavailability and bioequivalence studies needed for approval of such application.  The sponsor or applicant shall provide information necessary for discussion and agreement on the design and size of such studies.  Minutes of any such meeting shall be prepared by the Secretary and made available to the sponsor or applicant.

(C) Any agreement regarding the parameters of design and size of bioavailability and bioequivalence studies of a drug under this paragraph that is reached between the Secretary and a sponsor or applicant shall be reduced to writing and made part of the administrative record by the Secretary.  Such agreement shall not be changed after the testing begins, except--

(i) with the written agreement of the sponsor or applicant;  or

(ii) pursuant to a decision, made in accordance with subparagraph (D) by the director of the reviewing division, that a substantial scientific issue essential to determining the safety or effectiveness of the drug has been identified after the testing has begun.

(D) A decision under subparagraph (C)(ii) by the director shall be in writing and the Secretary shall provide to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



sponsor or applicant an opportunity for a meeting at which the director and the sponsor or applicant will be present and at which the director will document the scientific issue involved.

(E) The written decisions of the reviewing division shall be binding upon, and may not directly or indirectly be changed by, the field or compliance office personnel unless such field or compliance office personnel demonstrate to the reviewing division why such decision should be modified.

(F) No action by the reviewing division may be delayed because of the unavailability of information from or action by field personnel unless the reviewing division determines that a delay is necessary to assure the marketing of a safe and effective drug.

(G) For purposes of this paragraph, the reviewing division is the division responsible for the review of an application for approval of a drug under this subsection (including scientific matters, chemistry, manufacturing, and controls).

(4) Subject to paragraph (5), the Secretary shall approve an application for a drug unless the Secretary finds--

(A) the methods used in, or the facilities and controls used for, the manufacture, processing, and packing of the drug are inadequate to assure and preserve its identity, strength, quality, and purity;

(B) information submitted with the application is insufficient to show that each of the proposed conditions of use have been previously approved for the listed drug referred to in the application;

(C)(i) if the listed drug has only one active ingredient, information submitted with the application is insufficient to show that the active ingredient is the same as that of the listed drug;

(ii) if the listed drug has more than one active ingredient, information submitted with the application is insufficient to show that the active ingredients are the same as the active ingredients of the listed drug, or

(iii) if the listed drug has more than one active ingredient and if the application is for a drug which has an active ingredient different from the listed drug, information submitted with the application is insufficient to show--

(I) that the other active ingredients are the same as the active ingredients of the listed drug, or

(II) that the different active ingredient is an active ingredient of a listed drug or a drug which does not meet the requirements of section 321(p) of this title,

or no petition to file an application for the drug with the different ingredient was approved under paragraph (2)(C);

(D)(i) if the application is for a drug whose route of administration, dosage form, or strength of the drug is the same as the route of administration, dosage form, or strength of the listed drug referred to in the application, information submitted in the application is insufficient to show that the route of administration, dosage form, or strength is the same as that of the listed drug, or

(ii) if the application is for a drug whose route of administration, dosage form, or strength of the drug is different from that of the listed drug referred to in the application, no petition to file an application for the drug with the different route of administration, dosage form, or strength was approved under paragraph (2)(C);

(E) if the application was filed pursuant to the approval of a petition under paragraph (2)(C), the application did not contain the information required by the Secretary respecting the active ingredient, route of administration, dosage form, or strength which is not the same;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

(F) information submitted in the application is insufficient to show that the drug is bioequivalent to the listed drug referred to in the application or, if the application was filed pursuant to a petition approved under paragraph (2)(C), information submitted in the application is insufficient to show that the active ingredients of the new drug are of the same pharmacological or therapeutic class as those of the listed drug referred to in paragraph (2)(A)(i) and that the new drug can be expected to have the same therapeutic effect as the listed drug when administered to patients for a condition of use referred to in such paragraph;

(G) information submitted in the application is insufficient to show that the labeling proposed for the drug is the same as the labeling approved for the listed drug referred to in the application except for changes required because of differences approved under a petition filed under paragraph (2)(C) or because the drug and the listed drug are produced or distributed by different manufacturers;

(H) information submitted in the application or any other information available to the Secretary shows that (i) the inactive ingredients of the drug are unsafe for use under the conditions prescribed, recommended, or suggested in the labeling proposed for the drug, or (ii) the composition of the drug is unsafe under such conditions because of the type or quantity of inactive ingredients included or the manner in which the inactive ingredients are included;

(I) the approval under subsection (c) of this section of the listed drug referred to in the application under this subsection has been withdrawn or suspended for grounds described in the first sentence of subsection (e) of this section, the Secretary has published a notice of opportunity for hearing to withdraw approval of the listed drug under subsection (c) of this section for grounds described in the first sentence of subsection (e) of this section, the approval under this subsection of the listed drug referred to in the application under this subsection has been withdrawn or suspended under paragraph (6), or the Secretary has determined that the listed drug has been withdrawn from sale for safety or effectiveness reasons;

(J) the application does not meet any other requirement of paragraph (2)(A);  or

(K) the application contains an untrue statement of material fact.

(5)(A) Within one hundred and eighty days of the initial receipt of an application under paragraph (2) or within such additional period as may be agreed upon by the Secretary and the applicant, the Secretary shall approve or disapprove the application.

(B) The approval of an application submitted under paragraph (2) shall be made effective on the last applicable date determined by applying the following to each certification made under paragraph (2)(A)(vii):

(i) If the applicant only made a certification described in subclause (I) or  (II) of paragraph (2)(A)(vii) or in both such subclauses, the approval may be made effective immediately.

(ii) If the applicant made a certification described in subclause (III) of paragraph (2)(A)(vii), the approval may be made effective on the date certified under subclause (III).

(iii) If the applicant made a certification described in subclause (IV) of paragraph (2)(A)(vii), the approval shall be made effective immediately unless, before the expiration of 45 days after the date on which the notice described in paragraph (2)(B) is received, an action is brought for infringement of the patent that is the subject of the certification and for which information was submitted to the Secretary under subsection (b)(1) or (c)(2) of this section before the date on which the application (excluding an amendment or supplement to the application), which the Secretary later determines to be substantially complete, was submitted.  If such an action is brought before the expiration of such days, the approval shall be made effective upon the expiration of the thirty-month period beginning on the date of the receipt of the notice provided under paragraph (2)(B)(i) or such shorter or longer period as the court may order because either party to the action failed to reasonably cooperate in expediting the action, except that--

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



(I) if before the expiration of such period the district court decides that the patent is invalid or not infringed (including any substantive determination that there is no cause of action for patent infringement or invalidity), the approval shall be made effective on--

(aa) the date on which the court enters judgment reflecting the decision; or

(bb) the date of a settlement order or consent decree signed and entered by the court stating that the patent that is the subject of the certification is invalid or not infringed;

(II) if before the expiration of such period the district court decides that the patent has been infringed--

(aa) if the judgment of the district court is appealed, the approval shall be made effective on--

(AA) the date on which the court of appeals decides that the patent is invalid or not infringed (including any substantive determination that there is no cause of action for patent infringement or invalidity); or

(BB) the date of a settlement order or consent decree signed and entered by the court of appeals stating that the patent that is the subject of the certification is invalid or not infringed; or

(bb) if the judgment of the district court is not appealed or is affirmed, the approval shall be made effective on the date specified by the district court in a court order under section 271(e)(4)(A) of Title 35;

(III) if before the expiration of such period the court grants a preliminary injunction prohibiting the applicant from engaging in the commercial manufacture or sale of the drug until the court decides the issues of patent validity and infringement and if the court decides that such patent is invalid or not infringed, the approval shall be made effective as provided in subclause (I); or

(IV) if before the expiration of such period the court grants a preliminary injunction prohibiting the applicant from engaging in the commercial manufacture or sale of the drug until the court decides the issues of patent validity and infringement and if the court decides that such patent has been infringed, the approval shall be made effective as provided in subclause (II).

In such an action, each of the parties shall reasonably cooperate in expediting the action.

(iv) 180-day exclusivity period

(I) Effectiveness of application

Subject to subparagraph (D), if the application contains a certification described in paragraph (2)(A)(vii)(IV) and is for a drug for which a first applicant has submitted an application containing such a certification, the application shall be made effective on the date that is 180 days after the date of the first commercial marketing of the drug (including the commercial marketing of the listed drug) by any first applicant.

(II) Definitions

In this paragraph:

(aa) 180-day exclusivity period

The term "180-day exclusivity period" means the 180-day period ending on the day before the date on which an application submitted by an applicant other than a first applicant could become effective under this clause.

(bb) First applicant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



As used in this subsection, the term "first applicant" means an applicant that, on the first day on which a substantially complete application containing a certification described in paragraph (2)(A)(vii)(IV) is submitted for approval of a drug, submits a substantially complete application that contains and lawfully maintains a certification described in paragraph (2)(A)(vii)(IV) for the drug.

(cc) Substantially complete application

As used in this subsection, the term "substantially complete application" means an application under this subsection that on its face is sufficiently complete to permit a substantive review and contains all the information required by paragraph (2)(A).

(dd) Tentative approval

(AA) In general

The term "tentative approval" means notification to an applicant by the Secretary that an application under this subsection meets the requirements of paragraph (2)(A), but cannot receive effective approval because the application does not meet the requirements of this subparagraph, there is a period of exclusivity for the listed drug under subparagraph (F) or section 355a of this title, or there is a 7-year period of exclusivity for the listed drug under section 360cc of this title.

(BB) Limitation

A drug that is granted tentative approval by the Secretary is not an approved drug and shall not have an effective approval until the Secretary issues an approval after any necessary additional review of the application.

(C) Civil action to obtain patent certainty

(i) Declaratory judgment absent infringement action

(I) In general

No action may be brought under section 2201 of Title 28, by an applicant under paragraph (2) for a declaratory judgment with respect to a patent which is the subject of the certification referred to in subparagraph (B)(iii) unless--

(aa) the 45-day period referred to in such subparagraph has expired;

(bb) neither the owner of such patent nor the holder of the approved application under subsection (b) of this section for the drug that is claimed by the patent or a use of which is claimed by the patent brought a civil action against the applicant for infringement of the patent before the expiration of such period;  and

(cc) in any case in which the notice provided under paragraph (2)(B) relates to noninfringement, the notice was accompanied by a document described in subclause (III).

(II) Filing of civil action

If the conditions described in items (aa), (bb), and as applicable, (cc) of subclause (I) have been met, the applicant referred to in such subclause may, in accordance with section 2201 of Title 28, bring a civil action under such section against the owner or holder referred to in such subclause (but not against any owner or holder that has brought such a civil action against the applicant, unless that civil action was dismissed without prejudice) for a declaratory judgment that the patent is invalid or will not be infringed by the drug for which the applicant seeks approval, except that such civil action may be brought for a declaratory judgment that the patent will not be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



infringed only in a case in which the condition described in subclause (I)(cc) is applicable. A civil action referred to in this subclause shall be brought in the judicial district where the defendant has its principal place of business or a regular and established place of business.

(III) Offer of confidential access to application

For purposes of subclause (I)(cc), the document described in this subclause is a document providing an offer of confidential access to the application that is in the custody of the applicant under paragraph (2) for the purpose of determining whether an action referred to in subparagraph (B)(iii) should be brought. The document providing the offer of confidential access shall contain such restrictions as to persons entitled to access, and on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information. A request for access to an application under an offer of confidential access shall be considered acceptance of the offer of confidential access with the restrictions as to persons entitled to access, and on the use and disposition of any information accessed, contained in the offer of confidential access, and those restrictions and other terms of the offer of confidential access shall be considered terms of an enforceable contract. Any person provided an offer of confidential access shall review the application for the sole and limited purpose of evaluating possible infringement of the patent that is the subject of the certification under paragraph (2)(A)(vii)(IV) and for no other purpose, and may not disclose information of no relevance to any issue of patent infringement to any person other than a person provided an offer of confidential access. Further, the application may be redacted by the applicant to remove any information of no relevance to any issue of patent infringement.

(ii) Counterclaim to infringement action

(I) In general

If an owner of the patent or the holder of the approved application under subsection (b) of this section for the drug that is claimed by the patent or a use of which is claimed by the patent brings a patent infringement action against the applicant, the applicant may assert a counterclaim seeking an order requiring the holder to correct or delete the patent information submitted by the holder under subsection (b) or (c) of this section on the ground that the patent does not claim either--

(aa) the drug for which the application was approved; or

(bb) an approved method of using the drug.

(II) No independent cause of action

Subclause (I) does not authorize the assertion of a claim described in subclause (I) in any civil action or proceeding other than a counterclaim described in subclause (I).

(iii) No damages

An applicant shall not be entitled to damages in a civil action under clause (i) or a counterclaim under clause (ii).

(D) Forfeiture of 180-day exclusivity period

(i) Definition of forfeiture event

In this subparagraph, the term "forfeiture event", with respect to an application under this subsection, means the occurrence of any of the following:

(I) Failure to market

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



The first applicant fails to market the drug by the later of--

(aa) the earlier of the date that is--

(AA) 75 days after the date on which the approval of the application of the first applicant is made effective under subparagraph (B)(iii);  or

(BB) 30 months after the date of submission of the application of the first applicant;  or

(bb) with respect to the first applicant or any other applicant (which other applicant has received tentative approval), the date that is 75 days after the date as of which, as to each of the patents with respect to which the first applicant submitted and lawfully maintained a certification qualifying the first applicant for the 180-day exclusivity period under subparagraph (B)(iv), at least 1 of the following has occurred:

(AA) In an infringement action brought against that applicant with respect to the patent or in a declaratory judgment action brought by that applicant with respect to the patent, a court enters a final decision from which no appeal (other than a petition to the Supreme Court for a writ of certiorari) has been or can be taken that the patent is invalid or not infringed.

(BB) In an infringement action or a declaratory judgment action described in subitem (AA), a court signs a settlement order or consent decree that enters a final judgment that includes a finding that the patent is invalid or not infringed.

(CC) The patent information submitted under subsection (b) or (c) of this section is withdrawn by the holder of the application approved under subsection (b) of this section.

(II) Withdrawal of application

The first applicant withdraws the application or the Secretary considers the application to have been withdrawn as a result of a determination by the Secretary that the application does not meet the requirements for approval under paragraph (4).

(III) Amendment of certification

The first applicant amends or withdraws the certification for all of the patents with respect to which that applicant submitted a certification qualifying the applicant for the 180-day exclusivity period.

(IV) Failure to obtain tentative approval

The first applicant fails to obtain tentative approval of the application within 30 months after the date on which the application is filed, unless the failure is caused by a change in or a review of the requirements for approval of the application imposed after the date on which the application is filed.

(V) Agreement with another applicant, the listed drug application holder, or a patent owner

The first applicant enters into an agreement with another applicant under this subsection for the drug, the holder of the application for the listed drug, or an owner of the patent that is the subject of the certification under paragraph (2)(A)(vii)(IV), the Federal Trade Commission or the Attorney General files a complaint, and there is a final decision of the Federal Trade Commission or the court with regard to the complaint from which no appeal (other than a petition to the Supreme Court for a writ of certiorari) has been or can be taken that the agreement has violated the antitrust laws (as defined in section 12 of Title 15, except that the term includes section 45 of Title 15 to the extent that that section applies to unfair methods of competition).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

(VI) Expiration of all patents

All of the patents as to which the applicant submitted a certification qualifying it for the 180-day exclusivity period have expired.

(ii) Forfeiture

The 180-day exclusivity period described in subparagraph (B)(iv) shall be forfeited by a first applicant if a forfeiture event occurs with respect to that first applicant.

(iii) Subsequent applicant

If all first applicants forfeit the 180-day exclusivity period under clause (ii)--

(I) approval of any application containing a certification described in paragraph (2)(A)(vii)(IV) shall be made effective in accordance with subparagraph (B)(iii);  and

(II) no applicant shall be eligible for a 180-day exclusivity period.

(E) If the Secretary decides to disapprove an application, the Secretary shall give the applicant notice of an opportunity for a hearing before the Secretary on the question of whether such application is approvable.  If the applicant elects to accept the opportunity for hearing by written request within thirty days after such notice, such hearing shall commence not more than ninety days after the expiration of such thirty days unless the Secretary and the applicant otherwise agree.  Any such hearing shall thereafter be conducted on an expedited basis and the Secretary's order thereon shall be issued within ninety days after the date fixed by the Secretary for filing final briefs.

(F)(i) If an application (other than an abbreviated new drug application) submitted under subsection (b) of this section for a drug, no active ingredient (including any ester or salt of the active ingredient) of which has been approved in any other application under subsection (b) of this section, was approved during the period beginning January 1, 1982, and ending on September 24, 1984, the Secretary may not make the approval of an application submitted under this subsection which refers to the drug for which the subsection (b) application was submitted effective before the expiration of ten years from the date of the approval of the application under subsection (b) of this section.

(ii) If an application submitted under subsection (b) of this section for a drug, no active ingredient (including any ester or salt of the active ingredient) of which has been approved in any other application under subsection (b) of this section, is approved after September 24, 1984, no application may be submitted under this subsection which refers to the drug for which the subsection (b) application was submitted before the expiration of five years from the date of the approval of the application under subsection (b) of this section, except that such an application may be submitted under this subsection after the expiration of four years from the date of the approval of the subsection (b) application if it contains a certification of patent invalidity or noninfringement described in subclause (IV) of paragraph (2)(A)(vii).  The approval of such an application shall be made effective in accordance with subparagraph (B) except that, if an action for patent infringement is commenced during the one-year period beginning forty-eight months after the date of the approval of the subsection (b) application, the thirty-month period referred to in subparagraph (B)(iii) shall be extended by such amount of time (if any) which is required for seven and one-half years to have elapsed from the date of approval of the subsection (b) application.

(iii) If an application submitted under subsection (b) of this section for a drug, which includes an active ingredient (including any ester or salt of the active ingredient) that has been approved in another application approved under subsection (b) of this section, is approved after September 24, 1984, and if such application contains reports of new clinical investigations (other than bioavailability studies) essential to the approval of the application and conducted or sponsored by the applicant, the Secretary may not make the approval of an application submitted

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

under this subsection for the conditions of approval of such drug in the subsection (b) application effective before the expiration of three years from the date of the approval of the application under subsection (b) of this section for such drug.

(iv) If a supplement to an application approved under subsection (b) of this section is approved after September 24, 1984, and the supplement contains reports of new clinical investigations (other than bioavailability studies) essential to the approval of the supplement and conducted or sponsored by the person submitting the supplement, the Secretary may not make the approval of an application submitted under this subsection for a change approved in the supplement effective before the expiration of three years from the date of the approval of the supplement under subsection (b) of this section.

(v) If an application (or supplement to an application) submitted under subsection (b) of this section for a drug, which includes an active ingredient (including any ester or salt of the active ingredient) that has been approved in another application under subsection (b) of this section, was approved during the period beginning January 1, 1982, and ending on September 24, 1984, the Secretary may not make the approval of an application submitted under this subsection which refers to the drug for which the subsection (b) application was submitted or which refers to a change approved in a supplement to the subsection (b) application effective before the expiration of two years from September 24, 1984.

(6) If a drug approved under this subsection refers in its approved application to a drug the approval of which was withdrawn or suspended for grounds described in the first sentence of subsection (e) of this section or was withdrawn or suspended under this paragraph or which, as determined by the Secretary, has been withdrawn from sale for safety or effectiveness reasons, the approval of the drug under this subsection shall be withdrawn or suspended--

(A) for the same period as the withdrawal or suspension under subsection (e) of this section or this paragraph, or

(B) if the listed drug has been withdrawn from sale, for the period of withdrawal from sale or, if earlier, the period ending on the date the Secretary determines that the withdrawal from sale is not for safety or effectiveness reasons.

(7)(A)(i) Within sixty days of September 24, 1984, the Secretary shall publish and make available to the public--

(I) a list in alphabetical order of the official and proprietary name of each drug which has been approved for safety and effectiveness under subsection (c) of this section before September 24, 1984;

(II) the date of approval if the drug is approved after 1981 and the number of the application which was approved; and

(III) whether in vitro or in vivo bioequivalence studies, or both such studies, are required for applications filed under this subsection which will refer to the drug published.

(ii) Every thirty days after the publication of the first list under clause (i) the Secretary shall revise the list to include each drug which has been approved for safety and effectiveness under subsection (c) of this section or approved under this subsection during the thirty-day period.

(iii) When patent information submitted under subsection (b) or (c) of this section respecting a drug included on the list is to be published by the Secretary, the Secretary shall, in revisions made under clause (ii), include such information for such drug.

(B) A drug approved for safety and effectiveness under subsection (c) of this section or approved under this subsection shall, for purposes of this subsection, be considered to have been published under subparagraph (A) on the date of its approval or September 24, 1984, whichever is later.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



(C) If the approval of a drug was withdrawn or suspended for grounds described in the first sentence of subsection (e) of this section or was withdrawn or suspended under paragraph (6) or if the Secretary determines that a drug has been withdrawn from sale for safety or effectiveness reasons, it may not be published in the list under subparagraph (A) or, if the withdrawal or suspension occurred after its publication in such list, it shall be immediately removed from such list--

(i) for the same period as the withdrawal or suspension under subsection (e) of this section or paragraph (6), or

(ii) if the listed drug has been withdrawn from sale, for the period of withdrawal from sale or, if earlier, the period ending on the date the Secretary determines that the withdrawal from sale is not for safety or effectiveness reasons.

A notice of the removal shall be published in the Federal Register.

(8) For purposes of this subsection:

(A)(i) The term "bioavailability" means the rate and extent to which the active ingredient or therapeutic ingredient is absorbed from a drug and becomes available at the site of drug action.

(ii) For a drug that is not intended to be absorbed into the bloodstream, the Secretary may assess bioavailability by scientifically valid measurements intended to reflect the rate and extent to which the active ingredient or therapeutic ingredient becomes available at the site of drug action.

(B) A drug shall be considered to be bioequivalent to a listed drug if--

(i) the rate and extent of absorption of the drug do not show a significant difference from the rate and extent of absorption of the listed drug when administered at the same molar dose of the therapeutic ingredient under similar experimental conditions in either a single dose or multiple doses; or

(ii) the extent of absorption of the drug does not show a significant difference from the extent of absorption of the listed drug when administered at the same molar dose of the therapeutic ingredient under similar experimental conditions in either a single dose or multiple doses and the difference from the listed drug in the rate of absorption of the drug is intentional, is reflected in its proposed labeling, is not essential to the attainment of effective body drug concentrations on chronic use, and is considered medically insignificant for the drug.

(C) For a drug that is not intended to be absorbed into the bloodstream, the Secretary may establish alternative, scientifically valid methods to show bioequivalence if the alternative methods are expected to detect a significant difference between the drug and the listed drug in safety and therapeutic effect.

(9) The Secretary shall, with respect to each application submitted under this subsection, maintain a record of--

(A) the name of the applicant,

(B) the name of the drug covered by the application,

(C) the name of each person to whom the review of the chemistry of the application was assigned and the date of such assignment, and

(D) the name of each person to whom the bioequivalence review for such application was assigned and the date of such assignment.

The information the Secretary is required to maintain under this paragraph with respect to an application submitted under this subsection shall be made available to the public after the approval of such application.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



(k) Records and reports; required information; regulations and orders; access to records

(1) In the case of any drug for which an approval of an application filed under subsection (b) or (j) of this section is in effect, the applicant shall establish and maintain such records, and make such reports to the Secretary, of data relating to clinical experience and other data or information, received or otherwise obtained by such applicant with respect to such drug, as the Secretary may by general regulation, or by order with respect to such application, prescribe on the basis of a finding that such records and reports are necessary in order to enable the Secretary to determine, or facilitate a determination, whether there is or may be ground for invoking subsection (e) of this section. Regulations and orders issued under this subsection and under subsection (i) of this section shall have due regard for the professional ethics of the medical profession and the interests of patients and shall provide, where the Secretary deems it to be appropriate, for the examination, upon request, by the persons to whom such regulations or orders are applicable, of similar information received or otherwise obtained by the Secretary.

(2) Every person required under this section to maintain records, and every person in charge or custody thereof, shall, upon request of an officer or employee designated by the Secretary, permit such officer or employee at all reasonable times to have access to and copy and verify such records.

(l) Public disclosure of safety and effectiveness data

Safety and effectiveness data and information which has been submitted in an application under subsection (b) of this section for a drug and which has not previously been disclosed to the public shall be made available to the public, upon request, unless extraordinary circumstances are shown--

(1) if no work is being or will be undertaken to have the application approved,

(2) if the Secretary has determined that the application is not approvable and all legal appeals have been exhausted,

(3) if approval of the application under subsection (c) of this section is withdrawn and all legal appeals have been exhausted,

(4) if the Secretary has determined that such drug is not a new drug, or

(5) upon the effective date of the approval of the first application under subsection (j) of this section which refers to such drug or upon the date upon which the approval of an application under subsection (j) of this section which refers to such drug could be made effective if such an application had been submitted.

(m) "Patent" defined

For purposes of this section, the term "patent" means a patent issued by the United States Patent and Trademark Office.

(n) Scientific advisory panels

(1) For the purpose of providing expert scientific advice and recommendations to the Secretary regarding a clinical investigation of a drug or the approval for marketing of a drug under this section or section 262 of Title 42, the Secretary shall establish panels of experts or use panels of experts established before November 21, 1997, or both.

(2) The Secretary may delegate the appointment and oversight authority granted under section 394 of this title to a director of a center or successor entity within the Food and Drug Administration.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



(3) The Secretary shall make appointments to each panel established under paragraph (1) so that each panel shall consist of--

(A) members who are qualified by training and experience to evaluate the safety and effectiveness of the drugs to be referred to the panel and who, to the extent feasible, possess skill and experience in the development, manufacture, or utilization of such drugs;

(B) members with diverse expertise in such fields as clinical and administrative medicine, pharmacy, pharmacology, pharmacoeconomics, biological and physical sciences, and other related professions;

(C) a representative of consumer interests, and a representative of interests of the drug manufacturing industry not directly affected by the matter to be brought before the panel; and

(D) two or more members who are specialists or have other expertise in the particular disease or condition for which the drug under review is proposed to be indicated.

Scientific, trade, and consumer organizations shall be afforded an opportunity to nominate individuals for appointment to the panels. No individual who is in the regular full-time employ of the United States and engaged in the administration of this chapter may be a voting member of any panel. The Secretary shall designate one of the members of each panel to serve as chairman thereof.

(4) Each member of a panel shall publicly disclose all conflicts of interest that member may have with the work to be undertaken by the panel. No member of a panel may vote on any matter where the member or the immediate family of such member could gain financially from the advice given to the Secretary. The Secretary may grant a waiver of any conflict of interest requirement upon public disclosure of such conflict of interest if such waiver is necessary to afford the panel essential expertise, except that the Secretary may not grant a waiver for a member of a panel when the member's own scientific work is involved.

(5) The Secretary shall, as appropriate, provide education and training to each new panel member before such member participates in a panel's activities, including education regarding requirements under this chapter and related regulations of the Secretary, and the administrative processes and procedures related to panel meetings.

(6) Panel members (other than officers or employees of the United States), while attending meetings or conferences of a panel or otherwise engaged in its business, shall be entitled to receive compensation for each day so engaged, including traveltime, at rates to be fixed by the Secretary, but not to exceed the daily equivalent of the rate in effect for positions classified above grade GS-15 of the General Schedule. While serving away from their homes or regular places of business, panel members may be allowed travel expenses (including per diem in lieu of subsistence) as authorized by section 5703 of Title 5, for persons in the Government service employed intermittently.

(7) The Secretary shall ensure that scientific advisory panels meet regularly and at appropriate intervals so that any matter to be reviewed by such a panel can be presented to the panel not more than 60 days after the matter is ready for such review. Meetings of the panel may be held using electronic communication to convene the meetings.

(8) Within 90 days after a scientific advisory panel makes recommendations on any matter under its review, the Food and Drug Administration official responsible for the matter shall review the conclusions and recommendations of the panel, and notify the affected persons of the final decision on the matter, or of the reasons that no such decision has been reached. Each such final decision shall be documented including the rationale for the decision.

[FN1] So in original. Probably should be "bioavailability".

21 U.S.C.A. § 355, **21 USCA § 355**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Current through P.L. 109-12, approved 05/05/05

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.