**TAB 6**

21 CFR S 10.25
21 C.F.R. § 10.25

c

An administrative proceeding may be initiated in the following three ways:

(a) An interested person may petition the Commissioner to issue, amend, or revoke a regulation or order, or to take or refrain from taking any other form of administrative action. A petition must be either: (1) In the form specified in other applicable FDA regulations, e.g., the form for a color additive petition in § 71.1, for a food additive petition in § 171.1, for a new drug application in § 314.50, for a new animal drug application in § 514.1, or (2) in the form for a citizen petition in § 10.30.

(b) The Commissioner may initiate a proceeding to issue, amend, or revoke a regulation or order or take or refrain from taking any other form of administrative action. FDA has primary jurisdiction to make the initial determination on issues within its statutory mandate, and will request a court to dismiss, or to hold in abeyance its determination of or refer to the agency for administrative determination, any issue which has not previously been determined by the agency or which, if it has previously been determined, the agency concluded should be reconsidered and subject to a new administrative determination. The Commissioner may utilize any of the procedures established in this part in reviewing and making a determination on any matter initiated under this paragraph.

(c) The Commissioner will institute a proceeding to determine whether to issue, amend, or revoke a regulation or order, or take or refrain from taking any other form of administrative action whenever any court, on its own initiative, holds in abeyance or refers any matter to the agency for an administrative determination and the Commissioner concludes that an administrative determination is feasible within agency priorities and resources.

21 C. F. R. § 10.25

**21 CFR § 10.25**

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**TAB 7**

21 CFR S 201.56

· 21 C.F.R. § 201.56

c

Prescription drug labeling described in § 201.100(d) shall contain the information in the format required by § 201.57 and shall meet the following general requirements:

(a) The labeling shall contain a summary of the essential scientific information needed for the safe and effective use of the drug.

(b) The labeling shall be informative and accurate and neither promotional in tone nor false or misleading in any particular.

(c) The labeling shall be based whenever possible on data derived from human experience. No implied claims or suggestions of drug use may be made if there is inadequate evidence of safety or a lack of substantial evidence of effectiveness. Conclusions based on animal data but necessary for safe and effective use of the drug in humans shall be identified as such and included with human data in the appropriate section of the labeling, headings for which are listed in paragraph (d) of this section.

(d)(1) The labeling shall contain specific information required under § 201.57 under the following section headings and in the following order:

Description.

Clinical Pharmacology.

Indications and Usage.

Contraindications.

Warnings.

Precautions.

Adverse Reactions.

Drug Abuse and Dependence.

Overdosage.

Dosage and Administration.

How Supplied.

(2) The labeling may contain the following additional section headings if appropriate and if in compliance with § 201.57(l) and (m):

Animal Pharmacology and/or Animal Toxicology.

Clinical Studies.

References.

(3) The labeling may omit any section or subsection of the labeling format if clearly inapplicable.

(4) The labeling may contain a "Product Title" section preceding the "Description" section and containing only the information required by § 201.57(a)(1)(i), (ii), (iii), and (iv) and § 201.100(e). The information required by § 201.57(a)(1)(i), (ii), (iii), and (iv) shall appear in the "Description" section of the labeling, whether or not it also appears in a "Product Title."

(e) The labeling shall contain the date of the most recent revision of the labeling, identified as such, placed prominently immediately after the last section of the labeling.

21 C. F. R. § 201.56

**21 CFR § 201.56**

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**TAB 8**

21 CFR S 201.57                                                                              **Page 1**
21 C.F.R. § 201.57

c

Each section heading listed in § 201.56(d), if not omitted under § 201.56(d)(3), shall contain the following information in the following order:

(a) Description.

(1) Under this section heading, the labeling shall contain:

(i) The proprietary name and the established name, if any, as defined in section 502(e)(2) of the act, of the drug;

(ii) The type of dosage form and the route of administration to which the labeling applies;

(iii) The same qualitative and/or quantitative ingredient information as required under § 201.100(b) for labels;

(iv) If the product is sterile, a statement of that fact;

(v) The pharmacological or therapeutic class of the drug;

(vi) The chemical name and structural formula of the drug;

(vii) If the product is radioactive, a statement of the important nuclear physical characteristics, such as the principal radiation emission data, external radiation, and physical decay characteristics.

(2) If appropriate, other important chemical or physical information, such as physical constants, or pH, shall be stated.

(b) Clinical Pharmacology.

(1) Under this section heading, the labeling shall contain a concise factual summary of the clinical pharmacology and actions of the drug in humans. The summary may include information based on in vitro and/or animal data if the information is essential to a description of the biochemical and/or physiological mode of action of the drug or is otherwise pertinent to human therapeutics. Pharmacokinetic information that is important to safe and effective use of the drug is required, if known, e.g., degree and rate of absorption, pathways of biotransformation, percentage of dose as unchanged drug and metabolites, rate or half-time of elimination, concentration in body fluids associated with therapeutic and/or toxic effects, degree of binding to plasma proteins, degree of uptake by a particular organ or in the fetus, and passage across the blood brain barrier. Inclusion of pharmacokinetic information is restricted to that which relates to clinical use of the drug. If the pharmacological mode of action of the drug is unknown or if important metabolic or pharmacokinetic data in humans are unavailable, the labeling shall contain a statement about the lack of information.

(2) Data that demonstrate activity or effectiveness in in vitro or animal tests and that have not been shown by adequate and well-controlled clinical studies to be pertinent to clinical use may be included under this section of the labeling only under the following circumstances:

(i) In vitro data for anti-infective drugs may be included if the data are immediately preceded by the statement "The following in vitro data are available but their clinical significance is unknown."

(ii) For other classes of drugs, in vitro and animal data that have not been shown by adequate and well-controlled clinical studies, as defined in § 314.126(b) of this chapter, to be pertinent to clinical use may be used only if a waiver is granted under § 201.58 or § 314.126(b) of this chapter.

(c) Indications and Usage.

(1) Under this section heading, the labeling shall state that:

(i) The drug is indicated in the treatment, prevention, or diagnosis of a recognized disease or condition, e.g., penicillin is indicated for the treatment of pneumonia due to susceptible pneumococci; and/or

(ii) The drug is indicated for the treatment, prevention, or diagnosis of an important manifestation of a disease or condition, e.g., chlorothiazide is indicated for the treatment of edema in patients with congestive heart failure; and/or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



(iii) The drug is indicated for the relief of symptoms associated with a disease or syndrome, e.g., chlorpheniramine is indicated for the symptomatic relief of nasal congestion in patients with vasomotor rhinitis; and/or

(iv) The drug, if used for a particular indication only in conjunction with a primary mode of therapy, e.g., diet, surgery, or some other drug, is an adjunct to the mode of therapy.

(2) All indications shall be supported by substantial evidence of effectiveness based on adequate and well-controlled studies as defined in § 314.126(b) of this chapter unless the requirement is waived under § 201.58 or § 314.126(b) of this chapter.

(3) This section of the labeling shall also contain the following additional information:

(i) If evidence is available to support the safety and effectiveness of the drug only in selected subgroups of the larger population with a disease, syndrome, or symptom under consideration, e.g., patients with mild disease or patients in a special age group, the labeling shall describe the available evidence and state the limitations of usefulness of the drug. The labeling shall also identify specific tests needed for selection or monitoring of the patients who need the drug, e.g., microbe susceptibility tests. Information on the approximate kind, degree, and duration of improvement to be anticipated shall be stated if available and shall be based on substantial evidence derived from adequate and well-controlled studies as defined in § 314.126(b) of this chapter unless the requirement is waived under § 201.58 or § 314.126(b) of this chapter. If the information is relevant to the recommended intervals between doses, the usual duration of treatment, or any modification of dosage, it shall be stated in the "Dosage and Administration" section of the labeling and referenced in this section.

(ii) If safety considerations are such that the drug should be reserved for certain situations, e.g., cases refractory to other drugs, this information shall be stated in this section.

(iii) If there are specific conditions that should be met before the drug is used on a long-term basis, e.g., demonstration of responsiveness to the drug in a short-term trial, the labeling shall identify the conditions; or, if the indications for long-term use

are different from those for short-term use, the labeling shall identify the specific indications for each use.

(iv) If there is a common belief that the drug may be effective for a certain use or if there is a common use of the drug for a condition, but the preponderance of evidence related to the use or condition shows that the drug is ineffective, the Food and Drug Administration may require that the labeling state that there is a lack of evidence that the drug is effective for that use or condition.

(v) Any statements comparing the safety or effectiveness, either greater or less, of the drug with other agents for the same indication shall be supported by adequate and well-controlled studies as defined in § 314.126(b) of this chapter unless this requirement is waived under § 201.58 or § 314.126(b) of this chapter.

(d) Contraindications. Under this section heading, the labeling shall describe those situations in which the drug should not be used because the risk of use clearly outweighs any possible benefit. These situations include administration of the drug to patients known to have a hypersensitivity to it; use of the drug in patients who, because of their particular age, sex, concomitant therapy, disease state, or other condition, have a substantial risk of being harmed by it; or continued use of the drug in the face of an unacceptably hazardous adverse reaction. Known hazards and not theoretical possibilities shall be listed, e.g., if hypersensitivity to the drug has not been demonstrated, it should not be listed as a contraindication. If no contraindications are known, this section of the labeling shall state "None known."

(e) Warnings. Under this section heading, the labeling shall describe serious adverse reactions and potential safety hazards, limitations in use imposed by them, and steps that should be taken if they occur. The labeling shall be revised to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug; a causal relationship need not have been proved. A specific warning relating to a use not provided for under the "Indications and Usage" section of the labeling may be required by the Food and Drug Administration if the drug is commonly prescribed for a disease or condition, and there is lack of substantial evidence of effectiveness for that disease

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

or condition, and such usage is associated with serious risk or hazard. Special problems, particularly those that may lead to death or serious injury, may be required by the Food and Drug Administration to be placed in a prominently displayed box. The boxed warning ordinarily shall be based on clinical data, but serious animal toxicity may also be the basis of a boxed warning in the absence of clinical data. If a boxed warning is required, its location will be specified by the Food and Drug Administration. The frequency of these serious adverse reactions and, if known, the approximate mortality and morbidity rates for patients sustaining the reaction, which are important to safe and effective use of the drug, shall be expressed as provided under the "Adverse Reactions" section of the labeling.

(f) Precautions. Under this section heading, the labeling shall contain the following subsections as appropriate for the drug:

(1) General. This subsection of the labeling shall contain information regarding any special care to be exercised by the practitioner for safe and effective use of the drug, e.g., precautions not required under any other specific section or subsection of the labeling.

(2) Information for patients. This subsection of the labeling shall contain information to be given to patients for safe and effective use of the drug, e.g., precautions concerning driving or the concomitant use of other substances that may have harmful additive effects. Any printed patient information or Medication Guide required under this chapter to be distributed to the patient shall be referred to under the "Precautions" section of the labeling and the full text of such patient information or Medication Guide shall be reprinted at the end of the labeling. The print size requirements for the Medication Guide set forth in § 208.20 of this chapter, however, do not apply to the Medication Guide that is reprinted in the professional labeling.

(3) Laboratory tests. This subsection of the labeling shall identify any laboratory tests that may be helpful in following the patient's response or in identifying possible adverse reactions. If appropriate, information shall be provided on such factors as the range of normal and abnormal values expected in the particular situation and the recommended frequency with which tests should be

done before, during, and after therapy.

(4)(i) Drug interactions. This subsection of the labeling shall contain specific practical guidance for the physician on preventing clinically significant drug/drug and drug/food interactions that may occur in vivo in patients taking the drug. Specific drugs or classes of drugs with which the drug to which the labeling applies may interact in vivo shall be identified, and the mechanism(s) of the interaction shall be briefly described. Information in this subsection of the labeling shall be limited to that pertaining to clinical use of the drug in patients. Drug interactions supported only by animal or in vitro experiments may not ordinarily be included, but animal or in vitro data may be used if shown to be clinically relevant. Drug incompatibilities, i.e., drug interactions that may occur when drugs are mixed in vitro, as in a solution for intravenous administration, shall be discussed under the "Dosage and Administration" section of the labeling rather than under this subsection of the labeling.

(ii) Drug/laboratory test interactions. This subsection of the labeling shall contain practical guidance on known interference of the drug with laboratory tests.

(5) Carcinogenesis, mutagenesis, impairment of fertility. This subsection of the labeling shall state whether long-term studies in animals have been performed to evaluate carcinogenic potential and, if so, the species and results. If reproduction studies or other data in animals reveal a problem or potential problem concerning mutagenesis or impairment of fertility in either males or females, the information shall be described. Any precautionary statement on these topics shall include practical, relevant advice to the physician on the significance of these animal findings. If there is evidence from human data that the drug may be carcinogenic or mutagenic or that it impairs fertility, this information shall be included under the "Warnings" section of the labeling. Also, under "Precautions," the labeling shall state: "See 'Warnings' section for information on carcinogenesis, mutagenesis, and impairment of fertility."

(6) Pregnancy. This subsection of the labeling may be omitted only if the drug is not absorbed systemically and the drug is not known to have a potential for indirect harm to the fetus. For all

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

other drugs, this subsection of the labeling shall contain the following information:

(i) Teratogenic effects.  Under this heading the labeling shall identify one of the following categories that applies to the drug, and the labeling shall bear the statement required under the category:

(a) Pregnancy category A.  If adequate and well-controlled studies in pregnant women have failed to demonstrate a risk to the fetus in the first trimester of pregnancy (and there is no evidence of a risk in later trimesters), the labeling shall state: "Pregnancy Category A. Studies in pregnant women have not shown that (name of drug) increases the risk of fetal abnormalities if administered during the first (second, third, or all) trimester(s) of pregnancy. If this drug is used during pregnancy, the possibility of fetal harm appears remote.  Because studies cannot rule out the possibility of harm, however, (name of drug) should be used during pregnancy only if clearly needed."  The labeling shall also contain a description of the human studies. If animal reproduction studies are available and they fail to demonstrate a risk to the fetus, the labeling shall also state:  "Reproduction studies have been performed in (kinds of animal(s)) at doses up to (x) times the human dose and have revealed no evidence of impaired fertility or harm to the fetus due to (name of drug)."  The labeling shall also contain a description of available data on the effect of the drug on the later growth, development, and functional maturation of the child.

(b) Pregnancy category B.  If animal reproduction studies have failed to demonstrate a risk to the fetus and there are no adequate and well-controlled studies in pregnant women, the labeling shall state: "Pregnancy Category B. Reproduction studies have been performed in (kind(s) of animal(s)) at doses up to (x) times the human dose and have revealed no evidence of impaired fertility or harm to the fetus due to (name of drug).  There are, however, no adequate and well-controlled studies in pregnant women.  Because animal reproduction studies are not always predictive of human response, this drug should be used during pregnancy only if clearly needed."  If animal reproduction studies have shown an adverse effect (other than decrease in fertility), but adequate and well-controlled studies in pregnant women have failed to demonstrate a risk to the fetus during the first trimester of pregnancy (and there is no evidence of a risk in later trimesters), the

labeling shall state:  "Pregnancy Category B. Reproduction studies in (kind(s) of animal(s)) have shown (describe findings) at (x) times the human dose.  Studies in pregnant women, however, have not shown that (name of drug) increases the risk of abnormalities when administered during the first (second, third, or all) trimester(s) of pregnancy. Despite the animal findings, it would appear that the possibility of fetal harm is remote, if the drug is used during pregnancy.  Nevertheless, because the studies in humans cannot rule out the possibility of harm, (name of drug) should be used during pregnancy only if clearly needed."  The labeling shall also contain a description of the human studies and a description of available data on the effect of the drug on the later growth, development, and functional maturation of the child.

(c) Pregnancy category C.  If animal reproduction studies have shown an adverse effect on the fetus, if there are no adequate and well-controlled studies in humans, and if the benefits from the use of the drug in pregnant women may be acceptable despite its potential risks, the labeling shall state: "Pregnancy Category C. (Name of drug) has been shown to be teratogenic (or to have an embryocidal effect or other adverse effect) in (name(s) of species) when given in doses (x) times the human dose.  There are no adequate and well-controlled studies in pregnant women.  (Name of drug) should be used during pregnancy only if the potential benefit justifies the potential risk to the fetus."  The labeling shall contain a description of the animal studies. If there are no animal reproduction studies and no adequate and well-controlled studies in humans, the labeling shall state:  "Pregnancy Category C. Animal reproduction studies have not been conducted with (name of drug).  It is also not known whether (name of drug) can cause fetal harm when administered to a pregnant woman or can affect reproduction capacity. (Name of drug) should be given to a pregnant woman only if clearly needed."  The labeling shall contain a description of any available data on the effect of the drug on the later growth, development, and functional maturation of the child.

(d) Pregnancy category D.  If there is positive evidence of human fetal risk based on adverse reaction data from investigational or marketing experience or studies in humans, but the potential benefits from the use of the drug in pregnant women may be acceptable despite its potential risks (for example, if the drug is needed in a life-threatening

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

21 CFR S 201.57

situation or serious disease for which safer drugs cannot be used or are ineffective), the labeling shall state: "Pregnancy Category D. See 'Warnings' section." Under the "Warnings" section, the labeling states: "(Name of drug) can cause fetal harm when administered to a pregnant woman. (Describe the human data and any pertinent animal data.) If this drug is used during pregnancy, or if the patient becomes pregnant while taking this drug, the patient should be apprised of the potential hazard to the fetus."

(e) Pregnancy category X.  If studies in animals or humans have demonstrated fetal abnormalities or if there is positive evidence of fetal risk based on adverse reaction reports from investigational or marketing experience, or both, and the risk of the use of the drug in a pregnant woman clearly outweighs any possible benefit (for example, safer drugs or other forms of therapy are available), the labeling shall state: "Pregnancy Category X. See 'Contraindications' section." Under "Contraindications," the labeling shall state: "(Name of drug) may (can) cause fetal harm when administered to a pregnant woman.  (Describe the human data and any pertinent animal data.) (Name of drug) is contraindicated in women who are or may become pregnant.  If this drug is used during pregnancy, or if the patient becomes pregnant while taking this drug, the patient should be apprised of the potential hazard to the fetus."

(ii) Nonteratogenic effects.  Under this heading the labeling shall contain other information on the drug's effects on reproduction and the drug's use during pregnancy that is not required specifically by one of the pregnancy categories, if the information is relevant to the safe and effective use of the drug. Information required under this heading shall include nonteratogenic effects in the fetus or newborn infant (for example, withdrawal symptoms or hypoglycemia) that may occur because of a pregnant woman's chronic use of the drug for a preexisting condition or disease.

(7) Labor and delivery.  If the drug has a recognized use during labor or delivery (vaginal or abdominal delivery), whether or not the use is stated in the indications section of the labeling, this subsection of the labeling shall describe the available information about the effect of the drug on the mother and the fetus, on the duration of labor or delivery, on the possibility that forceps delivery or

other intervention or resuscitation of the newborn will be necessary, and the effect of the drug on the later growth, development, and functional maturation of the child.  If any information required under this subsection is unknown, this subsection of the labeling shall state that the information is unknown.

(8) Nursing mothers.

(i) If a drug is absorbed systemically, this subsection of the labeling shall contain, if known, information about excretion of the drug in human milk and effects on the nursing infant.  Pertinent adverse effects observed in animal offspring shall be described.

(ii) If a drug is absorbed systemically and is known to be excreted in human milk, this subsection of the labeling shall contain one of the following statements, as appropriate.  If the drug is associated with serious adverse reactions or if the drug has a known tumorigenic potential, the labeling shall state: "Because of the potential for serious adverse reactions in nursing infants from (name of drug)(or, "Because of the potential for tumorigenicity shown for (name of drug) in (animal or human) studies), a decision should be made whether to discontinue nursing or to discontinue the drug, taking into account the importance of the drug to the mother." If the drug is not associated with serious adverse reactions and does not have a known tumorigenic potential, the labeling shall state:  "Caution should be exercised when (name of drug) is administered to a nursing woman."

(iii) If a drug is absorbed systemically and information on excretion in human milk is unknown, this subsection of the labeling shall contain one of the following statements, as appropriate.  If the drug is associated with serious adverse reactions or has a known tumorigenic potential, the labeling shall state:  "It is not known whether this drug is excreted in human milk. Because many drugs are excreted in human milk and because of the potential for serious adverse reactions in nursing infants from (name of drug)(or, "Because of the potential for tumorigenicity shown for (name of drug) in (animal or human) studies), a decision should be made whether to discontinue nursing or to discontinue the drug, taking into account the importance of the drug to the mother." If the drug is not associated with serious adverse reactions and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

does not have a known tumorigenic potential, the labeling shall state: "It is not known whether this drug is excreted in human milk. Because many drugs are excreted in human milk, caution should be exercised when (name of drug) is administered to a nursing woman."

(9) Pediatric use.

(i) Pediatric population(s)/pediatric patient(s): For the purposes of paragraphs (f)(9)(ii) through (f)(9)(viii) of this section, the terms pediatric population(s) and pediatric patient(s) are defined as the pediatric age group, from birth to 16 years, including age groups often called neonates, infants, children, and adolescents.

(ii) If there is a specific pediatric indication (i.e., an indication different from those approved for adults) that is supported by adequate and well-controlled studies in the pediatric population, it shall be described under the "Indications and Usage" section of the labeling, and appropriate pediatric dosage information shall be given under the "Dosage and Administration" section of the labeling. The "Pediatric use" subsection shall cite any limitations on the pediatric indication, need for specific monitoring, specific hazards associated with use of the drug in any subsets of the pediatric population (e.g., neonates), differences between pediatric and adult responses to the drug, and other information related to the safe and effective pediatric use of the drug. Data summarized in this subsection of the labeling should be discussed in more detail, if appropriate, under the "Clinical Pharmacology" or "Clinical Studies" section. As appropriate, this information shall also be contained in the "Contraindications," "Warnings," and elsewhere in the "Precautions" sections.

(iii) If there are specific statements on pediatric use of the drug for an indication also approved for adults that are based on adequate and well-controlled studies in the pediatric population, they shall be summarized in the "Pediatric use" subsection of the labeling and discussed in more detail, if appropriate, under the "Clinical Pharmacology" and "Clinical Studies" sections. Appropriate pediatric dosage shall be given under the "Dosage and Administration" section of the labeling. The "Pediatric use" subsection of the labeling shall also cite any limitations on the pediatric use statement, need for specific monitoring, specific hazards

associated with use of the drug in any subsets of the pediatric population (e.g., neonates), differences between pediatric and adult responses to the drug, and other information related to the safe and effective pediatric use of the drug. As appropriate, this information shall also be contained in the "Contraindications," "Warnings," and elsewhere in the "Precautions" sections.

(iv) FDA may approve a drug for pediatric use based on adequate and well-controlled studies in adults, with other information supporting pediatric use. In such cases, the agency will have concluded that the course of the disease and the effects of the drug, both beneficial and adverse, are sufficiently similar in the pediatric and adult populations to permit extrapolation from the adult efficacy data to pediatric patients. The additional information supporting pediatric use must ordinarily include data on the pharmacokinetics of the drug in the pediatric population for determination of appropriate dosage. Other information, such as data from pharmacodynamic studies of the drug in the pediatric population, data from other studies supporting the safety or effectiveness of the drug in pediatric patients, pertinent premarketing or postmarketing studies or experience, may be necessary to show that the drug can be used safely and effectively in pediatric patients. When a drug is approved for pediatric use based on adequate and well-controlled studies in adults with other information supporting pediatric use, the "Pediatric use" subsection of the labeling shall contain either the following statement, or a reasonable alternative: "The safety and effectiveness of (drug name) have been established in the age groups ___ to ___ (note any limitations, e.g., no data for pediatric patients under 2, or only applicable to certain indications approved in adults). Use of (drug name) in these age groups is supported by evidence from adequate and well-controlled studies of (drug name) in adults with additional data (insert wording that accurately describes the data submitted to support a finding of substantial evidence of effectiveness in the pediatric population)." Data summarized in the preceding prescribed statement in this subsection of the labeling shall be discussed in more detail, if appropriate, under the "Clinical Pharmacology" or the "Clinical Studies" section. For example, pediatric pharmacokinetic or pharmacodynamic studies and dose-response information should be described in the "Clinical Pharmacology" section. Pediatric dosing instructions shall be included in the



"Dosage and Administration" section of the labeling. Any differences between pediatric and adult responses, need for specific monitoring, dosing adjustments, and any other information related to safe and effective use of the drug in pediatric patients shall be cited briefly in the "Pediatric use" subsection and, as appropriate, in the "Contraindications," "Warnings," "Precautions," and "Dosage and Administration" sections.

(v) If the requirements for a finding of substantial evidence to support a pediatric indication or a pediatric use statement have not been met for a particular pediatric population, the "Pediatric use" subsection of the labeling shall contain an appropriate statement such as "Safety and effectiveness in pediatric patients below the age of (___) have not been established." If use of the drug in this pediatric population is associated with a specific hazard, the hazard shall be described in this subsection of the labeling, or, if appropriate, the hazard shall be stated in the "Contraindications" or "Warnings" section of the labeling and this subsection shall refer to it.

(vi) If the requirements for a finding of substantial evidence to support a pediatric indication or a pediatric use statement have not been met for any pediatric population, this subsection of the labeling shall contain the following statement: "Safety and effectiveness in pediatric patients have not been established." If use of the drug in premature or neonatal infants, or other pediatric subgroups, is associated with a specific hazard, the hazard shall be described in this subsection of the labeling, or, if appropriate, the hazard shall be stated in the "Contraindications" or "Warnings" section of the labeling and this subsection shall refer to it.

(vii) If the sponsor believes that none of the statements described in paragraphs (f)(9)(ii) through (f)(9)(vi) of this section is appropriate or relevant to the labeling of a particular drug, the sponsor shall provide reasons for omission of the statements and may propose alternative statement(s). FDA may permit use of an alternative statement if FDA determines that no statement described in those paragraphs is appropriate or relevant to the drug's labeling and that the alternative statement is accurate and appropriate.

(viii) If the drug product contains one or more

inactive ingredients that present an increased risk of toxic effects to neonates or other pediatric subgroups, a special note of this risk shall be made, generally in the "Contraindications," "Warnings," or "Precautions" section.

(10) Geriatric use.

(i) A specific geriatric indication, if any, that is supported by adequate and well-controlled studies in the geriatric population shall be described under the "Indications and Usage" section of the labeling, and appropriate geriatric dosage shall be stated under the "Dosage and Administration" section of the labeling. The "Geriatric use" subsection shall cite any limitations on the geriatric indication, need for specific monitoring, specific hazards associated with the geriatric indication, and other information related to the safe and effective use of the drug in the geriatric population. Unless otherwise noted, information contained in the "Geriatric use" subsection of the labeling shall pertain to use of the drug in persons 65 years of age and older. Data summarized in this subsection of the labeling shall be discussed in more detail, if appropriate, under "Clinical Pharmacology" or the "Clinical Studies" section. As appropriate, this information shall also be contained in "Contraindications," "Warnings," and elsewhere in "Precautions."

(ii) Specific statements on geriatric use of the drug for an indication approved for adults generally, as distinguished from a specific geriatric indication, shall be contained in the "Geriatric use" subsection and shall reflect all information available to the sponsor that is relevant to the appropriate use of the drug in elderly patients. This information includes detailed results from controlled studies that are available to the sponsor and pertinent information from well-documented studies obtained from a literature search. Controlled studies include those that are part of the marketing application and other relevant studies available to the sponsor that have not been previously submitted in the investigational new drug application, new drug application, biological license application, or a supplement or amendment to one of these applications (e.g., postmarketing studies or adverse drug reaction reports). The "Geriatric use" subsection shall contain the following statement(s) or reasonable alternative, as applicable, taking into account available information:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



(A) If clinical studies did not include sufficient numbers of subjects aged 65 and over to determine whether elderly subjects respond differently from younger subjects, and other reported clinical experience has not identified such differences, the "Geriatric use" subsection shall include the following statement:

"Clinical studies of (name of drug) did not include sufficient numbers of subjects aged 65 and over to determine whether they respond differently from younger subjects. Other reported clinical experience has not identified differences in responses between the elderly and younger patients. In general, dose selection for an elderly patient should be cautious, usually starting at the low end of the dosing range, reflecting the greater frequency of decreased hepatic, renal, or cardiac function, and of concomitant disease or other drug therapy."

(B) If clinical studies (including studies that are part of marketing applications and other relevant studies available to the sponsor that have not been submitted in the sponsor's applications) included enough elderly subjects to make it likely that differences in safety or effectiveness between elderly and younger subjects would have been detected, but no such differences (in safety or effectiveness) were observed, and other reported clinical experience has not identified such differences, the "Geriatric use" subsection shall contain the following statement:

Of the total number of subjects in clinical studies of (name of drug), ___ percent were 65 and over, while ___ percent were 75 and over. (Alternatively, the labeling may state the total number of subjects included in the studies who were 65 and over and 75 and over.) No overall differences in safety or effectiveness were observed between these subjects and younger subjects, and other reported clinical experience has not identified differences in responses between the elderly and younger patients, but greater sensitivity of some older individuals cannot be ruled out.

(C) If evidence from clinical studies and other reported clinical experience available to the sponsor indicates that use of the drug in elderly patients is associated with differences in safety or effectiveness, or requires specific monitoring or dosage adjustment, the "Geriatric use" subsection of the labeling shall contain a brief description of observed differences or specific monitoring or dosage

requirements and, as appropriate, shall refer to more detailed discussions in the "Contraindications," "Warnings," "Dosage and Administration," or other sections of the labeling.

(iii)(A) If specific pharmacokinetic or pharmacodynamic studies have been carried out in the elderly, they shall be described briefly in the "Geriatric use" subsection of the labeling and in detail under the "Clinical Pharmacology" section. The "Clinical Pharmacology" section and "Drug interactions" subsection of the "Precautions" section ordinarily contain information on drug-disease and drug-drug interactions that is particularly relevant to the elderly, who are more likely to have concomitant illness and to utilize concomitant drugs.

(B) If a drug is known to be substantially excreted by the kidney, the "Geriatric use" subsection shall include the statement:

"This drug is known to be substantially excreted by the kidney, and the risk of toxic reactions to this drug may be greater in patients with impaired renal function. Because elderly patients are more likely to have decreased renal function, care should be taken in dose selection, and it may be useful to monitor renal function."

(iv) If use of the drug in the elderly appears to cause a specific hazard, the hazard shall be described in the "Geriatric use" subsection of the labeling, or, if appropriate, the hazard shall be stated in the "Contraindications," "Warnings," or "Precautions" section of the labeling, and the "Geriatric use" subsection shall refer to those sections.

(v) Labeling under paragraphs (f)(10)(i) through (f)(10)(iii) of this section may include statements, if they would be useful in enhancing safe use of the drug, that reflect good clinical practice or past experience in a particular situation, e.g., for a sedating drug, it could be stated that:

"Sedating drugs may cause confusion and over-sedation in the elderly; elderly patients generally should be started on low doses of (name of drug) and observed closely."

(vi) If the sponsor believes that none of the requirements described in paragraphs (f)(10)(i) through (f)(10)(v) of this section is appropriate or relevant to the labeling of a particular drug, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw®

sponsor shall provide reasons for omission of the statements and may propose an alternative statement. FDA may permit omission of the statements if FDA determines that no statement described in those paragraphs is appropriate or relevant to the drug's labeling. FDA may permit use of an alternative statement if the agency determines that such statement is accurate and appropriate.

(g) Adverse Reactions. An adverse reaction is an undesirable effect, reasonably associated with the use of the drug, that may occur as part of the pharmacological action of the drug or may be unpredictable in its occurrence.

(1) This section of the labeling shall list the adverse reactions that occur with the drug and with drugs in the same pharmacologically active and chemically related class, if applicable.

(2) In this listing, adverse reactions may be categorized by organ system, by severity of the reaction, by frequency, or by toxicological mechanism, or by a combination of these, as appropriate. If frequency information from adequate clinical studies is available, the categories and the adverse reactions within each category shall be listed in decreasing order of frequency. An adverse reaction that is significantly more severe than the other reactions listed in a category, however, shall be listed before those reactions, regardless of its frequency. If frequency information from adequate clinical studies is not available, the categories and adverse reactions within each category shall be listed in decreasing order of severity. The approximate frequency of each adverse reaction shall be expressed in rough estimates or orders of magnitude essentially as follows: "The most frequent adverse reaction(s) to (name of drug) is (are)(list reactions). This (these) occur(s) in about (e.g., one-third of patients; one in 30 patients; less than one-tenth of patients). Less frequent adverse reactions are (list reactions), which occur in approximately (e.g., one in 100 patients). Other adverse reactions, which occur rarely, in approximately (e.g., one in 1,000 patients), are (list reactions)." Percent figures may not ordinarily be used unless they are documented by adequate and well-controlled studies as defined in § 314.126(b) of this chapter, they are shown to reflect general experience, and they do not falsely imply a greater degree of accuracy than actually exists.

(3) The "Warnings" section of the labeling or, if appropriate, the "Contraindications" section of the labeling shall identify any potentially fatal adverse reaction.

(4) Any claim comparing the drug to which the labeling applies with other drugs in terms of frequency, severity, or character of adverse reactions shall be based on adequate and well-controlled studies as defined in § 314.126(b) of this chapter unless this requirement is waived under § 201.58 or § 314.126(b) of this chapter.

(h) Drug Abuse and Dependence. Under this section heading, the labeling shall contain the following subsections, as appropriate for the drug:

(1) Controlled Substance. If the drug is controlled by the Drug Enforcement Administration, the schedule in which it is controlled shall be stated.

(2) Abuse. This subsection of the labeling shall be based primarily on human data and human experience, but pertinent animal data may also be used. This subsection shall state the types of abuse that can occur with the drug and the adverse reactions pertinent to them. Particularly susceptible patient populations shall be identified.

(3) Dependence. This subsection of the labeling shall describe characteristic effects resulting from both psychological and physical dependence that occur with the drug and shall identify the quantity of the drug over a period of time that may lead to tolerance or dependence, or both. Details shall be provided on the adverse effects of chronic abuse and the effects of abrupt withdrawal. Procedures necessary to diagnose the dependent state shall be provided, and the principles of treating the effects of abrupt withdrawal shall be described.

(i) Overdosage. Under this section heading, the labeling shall describe the signs, symptoms, and laboratory findings of acute overdosage and the general principles of treatment. This section shall be based on human data, when available. If human data are unavailable, appropriate animal and in vitro data may be used. Specific information shall be provided about the following:

(1) Signs, symptoms, and laboratory findings associated with an overdosage of the drug.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

(2) Complications that can occur with the drug (for example, organ toxicity or delayed acidosis).

(3) Oral LD50 of the drug in animals; concentrations of the drug in biologic fluids associated with toxicity and/or death; physiologic variables influencing excretion of the drug, such as urine pH;  and factors that influence the dose response relationship of the drug, such as tolerance. The pharmacokinetic data given in the "Clinical Pharmacology" section also may be referenced here, if applicable to overdoses.

(4) The amount of the drug in a single dose that is ordinarily associated with symptoms of overdosage and the amount of the drug in a single dose that is likely to be life-threatening.

(5) Whether the drug is dialyzable.

(6) Recommended general treatment procedures and specific measures for support of vital functions, such as proven antidotes, induced emesis, gastric lavage, and forced diuresis.  Unqualified recommendations for which data are lacking with the specific drug or class of drugs, especially treatment using another drug (for example, central nervous system stimulants, respiratory stimulants) may not be stated unless specific data or scientific rationale exists to support safe and effective use.

(j) Dosage and Administration.  This section of the labeling shall state the recommended usual dose, the usual dosage range, and, if appropriate, an upper limit beyond which safety and effectiveness have not been established;  dosages shall be stated for each indication when appropriate. This section shall also state the intervals recommended between doses, the optimal method of titrating dosage, the usual duration of treatment, and any modification of dosage needed in special patient populations, e.g., in children, in geriatric age groups, or in patients with renal or hepatic disease.  Specific tables or monographs may be included to clarify dosage schedules. Radiation dosimetry information shall be stated for both the patient receiving a radioactive drug and the person administering it.  This section shall also contain specific direction on dilution, preparation (including the strength of the final dosage solution, when prepared according to instructions, in terms of milligrams active ingredient per milliliter of reconstituted solution, unless another measure of the strength is more

appropriate), and administration of the dosage form, if needed, e.g., the rate of administration of parenteral drug in milligrams per minute; storage conditions for stability of the drug or reconstituted drug, when important;  essential information on drug incompatibilities if the drug is mixed in vitro with other drugs;  and the following statement for parenterals:  "Parenteral drug products should be inspected visually for particulate matter and discoloration prior to administration, whenever solution and container permit."

(k) How Supplied.  This section of the labeling shall contain information on the available dosage forms to which the labeling applies and for which the manufacturer or distributor is responsible.  The information shall ordinarily include:

(1) The strength of the dosage form, e.g., 10-milligram tablets, in metric system and, if the apothecary system is used, a statement of the strength is placed in parentheses after the metric designation;

(2) The units in which the dosage form is ordinarily available for prescribing by practitioners, e.g., bottles of 100;

(3) Appropriate information to facilitate identification of the dosage forms, such as shape, color, coating, scoring, and National Drug Code; and

(4) Special handling and storage conditions.

(l) Animal Pharmacology and/or Animal Toxicology.  In most cases, the labeling need not include this section.  Significant animal data necessary for safe and effective use of the drug in humans shall ordinarily be included in one or more of the other sections of the labeling, as appropriate. Commonly for a drug that has been marketed for a long time, and in rare cases for a new drug, chronic animal toxicity studies have not been performed or completed for a drug that is administered over prolonged periods or is implanted in the body.  The unavailability of such data shall be stated in the appropriate section of the labeling for the drug.  If the pertinent animal data cannot be appropriately incorporated into other sections of the labeling, this section may be used.

(m) "Clinical Studies" and "References".  These

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



sections may appear in labeling in the place of a
detailed discussion of a subject that is of limited
interest but nonetheless important. A reference to a
specific important clinical study may be made in any
section of the format required under §§ 201.56 and
201.57 if the study is essential to an understandable
presentation of the available information.
References may appear in sections of the labeling
format, other than the "Clinical Studies" or
"References" section, in rare circumstances only. A
clinical study or reference may be cited in
prescription drug labeling only under the following
conditions:

(1) If the clinical study or reference is cited in the
labeling in the place of a detailed discussion of data
and information concerning an indication for use of
the drug, the reference shall be based upon, or the
clinical study shall constitute, an adequate and well-
controlled clinical investigation under § 314.126(b)
of this chapter.

(2) If the clinical study or reference is cited in the
labeling in the place of a detailed discussion of data
and information concerning a risk or risks from the
use of the drug, the risk or risks shall also be
identified or discussed in the appropriate section of
the labeling for the drug.

21 C. F. R. § 201.57

**21 CFR § 201.57**

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

**TAB 9**

21 CFR S 201.100                                                                Page    1
 21 C.F.R. § 201.100
c

A drug subject to the requirements of section 503(b)(1) of the act shall be exempt from section 502(f)(1) if all the following conditions are met:

(a) The drug is:

(1)(i) In the possession of a person (or his agents or employees) regularly and lawfully engaged in the manufacture, transportation, storage, or wholesale distribution of prescription drugs; or

(ii) In the possession of a retail, hospital, or clinic pharmacy, or a public health agency, regularly and lawfully engaged in dispensing prescription drugs; or

(iii) In the possession of a practitioner licensed by law to administer or prescribe such drugs; and

(2) It is to be dispensed in accordance with section 503(b).

(b) The label of the drug bears:

(1) The statement "Rx only": and

(2) The recommended or usual dosage and

(3) The route of administration, if it is not for oral use; and

(4) The quantity or proportion of each active ingredient, as well as the information required by section 502(d) and (e); and

(5) If it is for other than oral use, the names of all inactive ingredients, except that:

(i) Flavorings and perfumes may be designated as such without naming their components.

(ii) Color additives may be designated as coloring without naming specific color components unless the naming of such components is required by a color additive regulation prescribed in Subchapter A of this chapter.

(iii) Trace amounts of harmless substances added solely for individual product identification need not be named. If it is intended for administration by

parenteral injection, the quantity or proportion of all inactive ingredients, except that ingredients added to adjust the pH or to make the drug isotonic may be declared by name and a statement of their effect; and if the vehicle is water for injection it need not be named.

(6) An identifying lot or control number from which it is possible to determine the complete manufacturing history of the package of the drug.

(7) A statement directed to the pharmacist specifying the type of container to be used in dispensing the drug product to maintain its identity, strength, quality, and purity. Where there are standards and test procedures for determining that the container meets the requirements for specified types of containers as defined in an official compendium, such terms may be used. For example, "Dispense in tight, light-resistant container as defined in the National Formulary". Where standards and test procedures for determining the types of containers to be used in dispensing the drug product are not included in an official compendium, the specific container or types of containers known to be adequate to maintain the identity, strength, quality, and purity of the drug products shall be described. For example, "Dispense in containers which (statement of specifications which clearly enable the dispensing pharmacist to select an adequate container)": Provided, however, That in the case of containers too small or otherwise unable to accommodate a label with sufficient space to bear all such information, but which are packaged within an outer container from which they are removed for dispensing or use, the information required by paragraph (b)(2), (3), (5), and (7) of this section may be contained in other labeling on or within the package from which it is to be dispensed; the information referred to in paragraph (b)(1) of this section may be placed on such outer container only; and the information required by paragraph (b)(6) of this section may be on the crimp of the dispensing tube. The information required by this paragraph (b)(7) is not required for prescription drug products packaged in unit-dose, unit-of-use, on other packaging format in which the manufacturer's original package is designed and intended to be dispensed to patients without repackaging.

(c)(1) Labeling on or within the package from

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

which the drug is to be dispensed bears adequate information for its use, including indications, effects, dosages, routes, methods, and frequency and duration of administration, and any relevant hazards, contraindications, side effects, and precautions under which practitioners licensed by law to administer the drug can use the drug safely and for the purposes for which it is intended, including all purposes for which it is advertised or represented; and

(2) If the article is subject to section 505 of the act, the labeling bearing such information is the labeling authorized by the approved new drug application or required as a condition for the certification or the exemption from certification requirements applicable to preparations of insulin or antibiotic drugs.

(d) Any labeling, as defined in section 201(m) of the act, whether or not it is on or within a package from which the drug is to be dispensed, distributed by or on behalf of the manufacturer, packer, or distributor of the drug, that furnishes or purports to furnish information for use or which prescribes, recommends, or suggests a dosage for the use of the drug (other than dose information required by paragraph (b)(2) of this section and § 201.105(b)(2) contains:

(1) Adequate information for such use, including indications, effects, dosages, routes, methods, and frequency and duration of administration and any relevant warnings, hazards, contraindications, side effects, and precautions, under which practitioners licensed by law to administer the drug can use the drug safely and for the purposes for which it is intended, including all conditions for which it is advertised or represented; and if the article is subject to section 505 of the act, the parts of the labeling providing such information are the same in language and emphasis as labeling approved or permitted, under the provisions of section 505, and any other parts of the labeling are consistent with and not contrary to such approved or permitted labeling; and

(2) The same information concerning the ingredients of the drug as appears on the label and labeling on or within the package from which the drug is to be dispensed.

(3) The information required, and in the format specified, by §§ 201.56 and 201.57.

(e) All labeling described in paragraph (d) of this section bears conspicuously the name and place of business of the manufacturer, packer, or distributor, as required for the label of the drug under § 201.1.

(f) Reminder labeling which calls attention to the name of the drug product but does not include indications or dosage recommendations for use of the drug product is exempted from the provisions of paragraph (d) of this section. This reminder labeling shall contain only the proprietary name of the drug product, if any; the established name of the drug product, if any; the established name of each active ingredient in the drug product; and, optionally, information relating to quantitative ingredient statements, dosage form, quantity of package contents, price, the name and address of the manufacturer, packer, or distributor or other written, printed, or graphic matter containing no representation or suggestion relating to the drug product. If the Commissioner finds that there is evidence of significant incidence of fatalities or serious injury associated with the use of a particular prescription drug, he may withdraw this exemption by so notifying the manufacturer, packer, or distributor of the drug by letter. Reminder labeling, other than price lists and catalogs solely intended to convey price information including, but not limited to, those subject to the requirements of § 200.200 of this chapter, is not permitted for a prescription drug product whose labeling contains a boxed warning relating to a serious hazard associated with the use of the drug product. Reminder labeling which is intended to provide consumers with information concerning the price charged for a prescription for a particular drug product shall meet all of the conditions contained in § 200.200 of this chapter. Reminder labeling, other than that subject to the requirements of § 200.200 of this chapter, is not permitted for a drug for which an announcement has been published pursuant to a review of the labeling claims for the drug by the National Academy of Sciences/National Research Council (NAS/NRC), Drug Efficacy Study Group, and for which no claim has been evaluated as higher than "possibly effective." If the Commissioner finds the circumstances are such that reminder labeling may be misleading to prescribers of drugs subject to NAS/NRC evaluation, such reminder labeling will not be allowed and the manufacturer, packer, or distributor will be notified either in the publication of the conclusions on the effectiveness of the drug or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

21 CFR S 201.100

by letter.

21 C. F. R. § 201.100

**21 CFR § 201.100**

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

**TAB 10**

Page 1

(a)(1) The ingredient information required by section 502(n) of the Federal Food, Drug, and Cosmetic Act shall appear together, without any intervening written, printed, or graphic matter, except the proprietary names of ingredients, which may be included with the listing of established names.

(2) The order of listing of ingredients in the advertisement shall be the same as the order of listing of ingredients on the label of the product, and the information presented in the advertisement concerning the quantity of each such ingredient shall be the same as the corresponding information on the label of the product.

(3) The advertisement shall not employ a fanciful proprietary name for the drug or any ingredient in such a manner as to imply that the drug or ingredient has some unique effectiveness or composition, when, in fact, the drug or ingredient is a common substance, the limitations of which are readily recognized when the drug or ingredient is listed by its established name.

(4) The advertisement shall not feature inert or inactive ingredients in a manner that creates an impression of value greater than their true functional role in the formulation.

(5) The advertisement shall not designate a drug or ingredient by a proprietary name that, because of similarity in spelling or pronunciation, may be confused with the proprietary name or the established name of a different drug or ingredient.

(b)(1) If an advertisement for a prescription drug bears a proprietary name or designation for the drug or any ingredient thereof, the established name, if such there be, corresponding to such proprietary name or designation shall accompany such proprietary name or designation each time it is featured in the advertisement for the drug; but, except as provided below in this subparagraph, the established name need not be used with the proprietary name or designation in the running text of the advertisement.   On any page of an advertisement in which the proprietary name or designation is not featured but is used in the running text, the established name shall be used at least once

in the running text in association with such proprietary name or designation and in the same type size used in the running text:  Provided, however, That if the proprietary name or designation is used in the running text in larger size type, the established name shall be used at least once in association with, and in type at least half as large as the type used for, the most prominent presentation of the proprietary name or designation in such running text.   If any advertisement includes a column with running text containing detailed information as to composition, prescribing, side effects, or contraindications and the proprietary name or designation is used in such column but is not featured above or below the column, the established name shall be used at least once in such column of running text in association with such proprietary name or designation and in the same type size used in such column of running text: Provided, however, That if the proprietary name or designation is used in such column of running text in larger size type, the established name shall be used at least once in association with, and in type at least half as large as the type used for, the most prominent presentation of the proprietary name or designation in such column of running text.  Where the established name is required to accompany or to be used in association with the proprietary name or designation, the established name shall be placed in direct conjunction with the proprietary name or designation, and the relationship between the proprietary name or designation and the established name shall be made clear by use of a phrase such as "brand of" preceding the established name, by brackets surrounding the established name, or by other suitable means.

(2) The established name shall be printed in letters that are at least half as large as the letters comprising the proprietary name or designation with which it is joined, and the established name shall have a prominence commensurate with the prominence with which such proprietary name or designation appears, taking into account all pertinent factors, including typography, layout, contrast, and other printing features.

(c) In the case of a prescription drug containing two or more active ingredients, if the advertisement bears a proprietary name or designation for such mixture and there is no established name

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



corresponding to such proprietary name or designation, the quantitative ingredient information required in the advertisement by section 502(n) of the act shall be placed in direct conjunction with the most prominent display of the proprietary name or designation. The prominence of the quantitative ingredient information shall bear a reasonable relationship to the prominence of the proprietary name.

(d)(1) If the advertisement employs one proprietary name or designation to refer to a combination of active ingredients present in more than one preparation (the individual preparations differing from each other as to quantities of active ingredients and/or the form of the finished preparation) and there is no established name corresponding to such proprietary name or designation, a listing showing the established names of the active ingredients shall be placed in direct conjunction with the most prominent display of such proprietary name or designation. The prominence of this listing of active ingredients shall bear a reasonable relationship to the prominence of the proprietary name and the relationship between such proprietary name or designation, and the listing of active ingredients shall be made clear by use of such phrase as "brand of", preceding the listing of active ingredients.

(2) The advertisement shall prominently display the name of at least one specific dosage form and shall have the quantitative ingredient information required by section 502(n) of the act in direct conjunction with such display. If other dosage forms are listed in the advertisement, the quantitative ingredient information for such dosage forms shall appear in direct conjunction and in equal prominence with the most prominent listing of the names of such dosage forms.

(e) True statement of information in brief summary relating to side effects, contraindications, and effectiveness:

(1) When required. All advertisements for any prescription drug ("prescription drug" as used in this section means drugs defined in section 503(b)(1) of the act and § 201.105, applicable to drugs for use by man and veterinary drugs, respectively), except advertisements described in paragraph (e)(2) of this section, shall present a true statement of information in brief summary relating to side effects,

contraindications (when used in this section "side effects, contraindications" include side effects, warnings, precautions, and contraindications and include any such information under such headings as cautions, special considerations, important notes, etc.) and effectiveness. Advertisements broadcast through media such as radio, television, or telephone communications systems shall include information relating to the major side effects and contraindications of the advertised drugs in the audio or audio and visual parts of the presentation and unless adequate provision is made for dissemination of the approved or permitted package labeling in connection with the broadcast presentation shall contain a brief summary of all necessary information related to side effects and contraindications.

(2) Exempt advertisements. The following advertisements are exempt from the requirements of paragraph (e)(1) of this section under the conditions specified:

(i) Reminder advertisements. Reminder advertisements are those which call attention to the name of the drug product but do not include indications or dosage recommendations for use of the drug product. These reminder advertisements shall contain only the proprietary name of the drug product, if any; the established name of the drug product, if any; the established name of each active ingredient in the drug product; and, optionally, information relating to quantitative ingredient statements, dosage form, quantity of package contents, price, the name and address of the manufacturer, packer, or distributor or other written, printed, or graphic matter containing no representation or suggestion relating to the advertised drug product. If the Commissioner finds that there is evidence of significant incidence of fatalities or serious injury associated with the use of a particular prescription drug, he may withdraw this exemption by so notifying the manufacturer, packer, or distributor of the drug by letter. Reminder advertisements, other than those solely intended to convey price information including, but not limited to, those subject to the requirements of § 200.200 of this chapter, are not permitted for a prescription drug product whose labeling contains a boxed warning relating to a serious hazard associated with the use of the drug product. Reminder advertisements which are intended to provide consumers with information concerning the price

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

charged for a prescription for a drug product are exempt from the requirements of this section if they meet all of the conditions contained in § 200.200 of this chapter. Reminder advertisements, other than those subject to the requirements of § 200.200 of this chapter, are not permitted for a drug for which an announcement has been published pursuant to a review on the labeling claims for the drug by the National Academy of Sciences/National Research Council (NAS/NRC), Drug Efficacy Study Group, and for which no claim has been evaluated as higher than "possibly effective." If the Commissioner finds the circumstances are such that a reminder advertisement may be misleading to prescribers of drugs subject to NAS/NRC evaluation, such advertisements will not be allowed and the manufacturer, packer, or distributor will be notified either in the publication of the conclusions on the effectiveness of the drug or by letter.

(ii) Advertisements of bulk-sale drugs. Advertisements of bulk-sale drugs that promote sale of the drug in bulk packages in accordance with the practice of the trade solely to be processed, manufactured, labeled, or repackaged in substantial quantities and that contain no claims for the therapeutic safety or effectiveness of the drug.

(iii) Advertisements of prescription-compounding drugs. Advertisements of prescription-compounding drugs that promote sale of a drug for use as a prescription chemical or other compound for use by registered pharmacists in compounding prescriptions if the drug otherwise complies with the conditions for the labeling exemption contained in § 201.120 and the advertisement contains no claims for the therapeutic safety or effectiveness of the drug.

(3) Scope of information to be included; applicability to the entire advertisement.

(i) The requirement of a true statement of information relating to side effects, contraindications, and effectiveness applies to the entire advertisement. Untrue or misleading information in any part of the advertisement will not be corrected by the inclusion in another distinct part of the advertisement of a brief statement containing true information relating to side effects, contraindications, and effectiveness of the drug. If any part or theme of the advertisement would make the advertisement false or misleading by reason of the omission of appropriate qualification or pertinent

information, that part or theme shall include the appropriate qualification or pertinent information, which may be concise if it is supplemented by a prominent reference on each page to the presence and location elsewhere in the advertisement of a more complete discussion of such qualification or information.

(ii) The information relating to effectiveness is not required to include information relating to all purposes for which the drug is intended but may optionally be limited to a true statement of the effectiveness of the drug for the selected purpose(s) for which the drug is recommended or suggested in the advertisement. The information relating to effectiveness shall include specific indications for use of the drug for purposes claimed in the advertisement; for example, when an advertisement contains a broad claim that a drug is an antibacterial agent, the advertisement shall name a type or types of infections and microorganisms for which the drug is effective clinically as specifically as required, approved, or permitted in the drug package labeling.

(iii) The information relating to side effects and contraindications shall disclose each specific side effect and contraindication (which include side effects, warnings, precautions, and contraindications and include any such information under such headings as cautions, special considerations, important notes, etc.; see paragraph (e)(1) of this section) contained in required, approved, or permitted labeling for the advertised drug dosage form(s): Provided, however,

(a) The side effects and contraindications disclosed may be limited to those pertinent to the indications for which the drug is recommended or suggested in the advertisement to the extent that such limited disclosure has previously been approved or permitted in drug labeling conforming to the provisions of §§ 201.100 or 201.105; and

(b) The use of a single term for a group of side effects and contraindications (for example, "blood dyscrasias" for disclosure of "leukopenia," "agranulocytosis," and "neutropenia") is permitted only to the extent that the use of such a single term in place of disclosure of each specific side effect and contraindication has been previously approved or permitted in drug labeling conforming to the provisions of §§ 201.100 or 201.105.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

(4) Substance of information to be included in brief summary.

(i)(a) An advertisement for a prescription drug covered by a new-drug application approved pursuant to section 505 of the act after October 10, 1962 or section 512 of the act after August 1, 1969, or any approved supplement thereto, shall not recommend or suggest any use that is not in the labeling accepted in such approved new-drug application or supplement. The advertisement shall present information from labeling required, approved, or permitted in a new-drug application relating to each specific side effect and contraindication in such labeling that relates to the uses of the advertised drug dosage form(s) or shall otherwise conform to the provisions of paragraph (e)(3)(iii) of this section.

(b) If a prescription drug was covered by a new-drug application or a supplement thereto that became effective prior to October 10, 1962, an advertisement may recommend or suggest:

(1) Uses contained in the labeling accepted in such new-drug application and any effective, approved, or permitted supplement thereto.

(2) Additional uses contained in labeling in commercial use on October 9, 1962, to the extent that such uses did not cause the drug to be an unapproved "new drug" as "new drug" was defined in section 201(p) of the act as then in force, and to the extent that such uses would be permitted were the drug subject to paragraph (e)(4)(iii) of this section.

(3) Additional uses contained in labeling in current commercial use to the extent that such uses do not cause the drug to be an unapproved "new drug" as defined in section 201(p) of the act as amended or a "new animal drug" as defined in section 201(v) of the act as amended.

The advertisement shall present information from labeling required, approved, or permitted in a new-drug application relating to each specific side effect and contraindication in such labeling that relates to the uses of the advertised drug dosage form(s) or shall otherwise conform to the provisions of paragraph (e)(3)(iii) of this section.

(ii) In the case of an advertisement for a

prescription drug other than a drug the labeling of which causes it to be an unapproved "new drug" and other than drugs covered by paragraph (e)(4)(i) of this section, an advertisement may recommend and suggest the drug only for those uses contained in the labeling thereof:

(a) For which the drug is generally recognized as safe and effective among experts qualified by scientific training and experience to evaluate the safety and effectiveness of such drugs; or

(b) For which there exists substantial evidence of safety and effectiveness, consisting of adequate and well-controlled investigations, including clinical investigations (as used in this section "clinical investigations," "clinical experience," and "clinical significance" mean in the case of drugs intended for administration to man, investigations, experience, or significance in humans, and in the case of drugs intended for administration to other animals, investigations, experience, or significance in the specie or species for which the drug is advertised), by experts qualified by scientific training and experience to evaluate the safety and effectiveness of the drug involved, on the basis of which it can fairly and responsibly be concluded by such experts that the drug is safe and effective for such uses; or

(c) For which there exists substantial clinical experience (as used in this section this means substantial clinical experience adequately documented in medical literature or by other data (to be supplied to the Food and Drug Administration, if requested)), on the basis of which it can fairly and responsibly be concluded by qualified experts that the drug is safe and effective for such uses; or

(d) For which safety is supported under any of the preceding clauses in paragraphs (e)(4)(iii)(a), (b), and (c) of this section and effectiveness is supported under any other of such clauses.

The advertisement shall present information relating to each specific side effect and contraindication that is required, approved, or permitted in the package labeling by §§ 201.100 or 201.105 of this chapter of the drug dosage form(s) or shall otherwise conform to the provisions of paragraph (e)(3)(iii) of this section.

(5) "True statement" of information. An advertisement does not satisfy the requirement that it

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



present a "true statement" of information in brief summary relating to side effects, contraindications, and effectiveness if:

(i) It is false or misleading with respect to side effects, contraindications, or effectiveness; or

(ii) It fails to present a fair balance between information relating to side effects and contraindications and information relating to effectiveness of the drug in that the information relating to effectiveness is presented in greater scope, depth, or detail than is required by section 502(n) of the act and this information is not fairly balanced by a presentation of a summary of true information relating to side effects and contraindications of the drug; Provided, however, That no advertisement shall be considered to be in violation of this section if the presentation of true information relating to side effects and contraindications is comparable in depth and detail with the claims for effectiveness or safety.

(iii) It fails to reveal facts material in the light of its representations or material with respect to consequences that may result from the use of the drug as recommended or suggested in the advertisement.

(6) Advertisements that are false, lacking in fair balance, or otherwise misleading. An advertisement for a prescription drug is false, lacking in fair balance, or otherwise misleading, or otherwise violative of section 502(n) of the act, among other reasons, if it:

(i) Contains a representation or suggestion, not approved or permitted for use in the labeling, that a drug is better, more effective, useful in a broader range of conditions or patients (as used in this section patients means humans and in the case of veterinary drugs, other animals), safer, has fewer, or less incidence of, or less serious side effects or contraindications than has been demonstrated by substantial evidence or substantial clinical experience (as described in paragraphs (e)(4)(ii)(b) and (c) of this section) whether or not such representations are made by comparison with other drugs or treatments, and whether or not such a representation or suggestion is made directly or through use of published or unpublished literature, quotations, or other references.

(ii) Contains a drug comparison that represents or suggests that a drug is safer or more effective than another drug in some particular when it has not been demonstrated to be safer or more effective in such particular by substantial evidence or substantial clinical experience.

(iii) Contains favorable information or opinions about a drug previously regarded as valid but which have been rendered invalid by contrary and more credible recent information, or contains literature references or quotations that are significantly more favorable to the drug than has been demonstrated by substantial evidence or substantial clinical experience.

(iv) Contains a representation or suggestion that a drug is safer than it has been demonstrated to be by substantial evidence or substantial clinical experience, by selective presentation of information from published articles or other references that report no side effects or minimal side effects with the drug or otherwise selects information from any source in a way that makes a drug appear to be safer than has been demonstrated.

(v) Presents information from a study in a way that implies that the study represents larger or more general experience with the drug than it actually does.

(vi) Contains references to literature or studies that misrepresent the effectiveness of a drug by failure to disclose that claimed results may be due to concomitant therapy, or by failure to disclose the credible information available concerning the extent to which claimed results may be due to placebo effect (information concerning placebo effect is not required unless the advertisement promotes the drug for use by man).

(vii) Contains favorable data or conclusions from nonclinical studies of a drug, such as in laboratory animals or in vitro, in a way that suggests they have clinical significance when in fact no such clinical significance has been demonstrated.

(viii) Uses a statement by a recognized authority that is apparently favorable about a drug but fails to refer to concurrent or more recent unfavorable data or statements from the same authority on the same subject or subjects.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

(ix) Uses a quote or paraphrase out of context to convey a false or misleading idea.

(x) Uses literature, quotations, or references that purport to support an advertising claim but in fact do not support the claim or have relevance to the claim.

(xi) Uses literature, quotations, or references for the purpose of recommending or suggesting conditions of drug use that are not approved or permitted in the drug package labeling.

(xii) Offers a combination of drugs for the treatment of patients suffering from a condition amenable to treatment by any of the components rather than limiting the indications for use to patients for whom concomitant therapy as provided by the fixed combination drug is indicated, unless such condition is included in the uses permitted under paragraph (e)(4) of this section.

(xiii) Uses a study on normal individuals without disclosing that the subjects were normal, unless the drug is intended for use on normal individuals.

(xiv) Uses "statistics" on numbers of patients, or counts of favorable results or side effects, derived from pooling data from various insignificant or dissimilar studies in a way that suggests either that such "statistics" are valid if they are not or that they are derived from large or significant studies supporting favorable conclusions when such is not the case.

(xv) Uses erroneously a statistical finding of "no significant difference" to claim clinical equivalence or to deny or conceal the potential existence of a real clinical difference.

(xvi) Uses statements or representations that a drug differs from or does not contain a named drug or category of drugs, or that it has a greater potency per unit of weight, in a way that suggests falsely or misleadingly or without substantial evidence or substantial clinical experience that the advertised drug is safer or more effective than such other drug or drugs.

(xvii) Uses data favorable to a drug derived from patients treated with dosages different from those recommended in approved or permitted labeling if the drug advertised is subject to section 505 of the

act, or, in the case of other drugs, if the dosages employed were different from those recommended in the labeling and generally recognized as safe and effective. This provision is not intended to prevent citation of reports of studies that include some patients treated with dosages different from those authorized, if the results in such patients are not used.

(xviii) Uses headline, subheadline, or pictorial or other graphic matter in a way that is misleading.

(xix) Represents or suggests that drug dosages properly recommended for use in the treatment of certain classes of patients or disease conditions are safe and effective for the treatment of other classes of patients or disease conditions when such is not the case.

(xx) Presents required information relating to side effects or contraindications by means of a general term for a group in place of disclosing each specific side effect and contraindication (for example employs the term blood dyscrasias instead of "leukopenia," "agranulocytosis," "neutropenia," etc.) unless the use of such general term conforms to the provisions of paragraph (e)(3)(iii) of this section.

Provided, however, That any provision of this paragraph shall be waived with respect to a specified advertisement as set forth in a written communication from the Food and Drug Administration on a petition for such a waiver from a person who would be adversely affected by the enforcement of such provision on the basis of a showing that the advertisement is not false, lacking in fair balance, or otherwise misleading, or otherwise violative of section 502(n) of the act. A petition for such a waiver shall set forth clearly and concisely the petitioner's interest in the advertisement, the specific provision of this paragraph from which a waiver is sought, a complete copy of the advertisement, and a showing that the advertisement is not false, lacking in fair balance, or otherwise misleading, or otherwise violative of section 502(n) of the act.

(7) Advertisements that may be false, lacking in fair balance, or otherwise misleading. An advertisement may be false, lacking in fair balance, or otherwise misleading or otherwise violative of section 502(n) of the act if it:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



(i) Contains favorable information or conclusions from a study that is inadequate in design, scope, or conduct to furnish significant support for such information or conclusions.

(ii) Uses the concept of "statistical significance" to support a claim that has not been demonstrated to have clinical significance or validity, or fails to reveal the range of variations around the quoted average results.

(iii) Uses statistical analyses and techniques on a retrospective basis to discover and cite findings not soundly supported by the study, or to suggest scientific validity and rigor for data from studies the design or protocol of which are not amenable to formal statistical evaluations.

(iv) Uses tables or graphs to distort or misrepresent the relationships, trends, differences, or changes among the variables or products studied;   for example, by failing to label abscissa and ordinate so that the graph creates a misleading impression.

(v) Uses reports or statements represented to be statistical analyses, interpretations, or evaluations that are inconsistent with or violate the established principles of statistical theory, methodology, applied practice, and inference, or that are derived from clinical studies the design, data, or conduct of which substantially invalidate the application of statistical analyses, interpretations, or evaluations.

(vi) Contains claims concerning the mechanism or site of drug action that are not generally regarded as established by scientific evidence by experts qualified by scientific training and experience without disclosing that the claims are not established and the limitations of the supporting evidence.

(vii) Fails to provide sufficient emphasis for the information relating to side effects and contraindications, when such information is contained in a distinct part of an advertisement, because of repetition or other emphasis in that part of the advertisement of claims for effectiveness or safety of the drug.

(viii) Fails to present information relating to side effects and contraindications with a prominence and readability reasonably comparable with the presentation of information relating to effectiveness of the drug, taking into account all implementing

factors such as typography, layout, contrast, headlines, paragraphing, white space, and any other techniques apt to achieve emphasis.

(ix) Fails to provide adequate emphasis (for example, by the use of color scheme, borders, headlines, or copy that extends across the gutter) for the fact that two facing pages are part of the same advertisement when one page contains information relating to side effects and contraindications.

(x) In an advertisement promoting use of the drug in a selected class of patients (for example, geriatric patients or depressed patients), fails to present with adequate emphasis the significant side effects and contraindications   or   the   significant   dosage considerations, when dosage recommendations are included in an advertisement, especially applicable to that selected class of patients.

(xi) Fails to present on a page facing another page (or on another full page) of an advertisement on more than one page, information relating to side effects and contraindications when such information is in a distinct part of the advertisement.

(xii) Fails to include on each page or spread of an advertisement the information relating to side effects and contraindications or a prominent reference to its presence and location when it is presented as a distinct part of an advertisement.

(xiii) Contains information from published or unpublished   reports   or   opinions   falsely   or misleadingly   represented   or   suggested   to   be authentic or authoritative.

(f) to (i) [Reserved]

(j)(1) No advertisement concerning a particular prescription drug may be disseminated without prior approval by the Food and Drug Administration if:

(i) The sponsor or the Food and Drug Administration has received information that has not been widely publicized in medical literature that the use of the drug may cause fatalities or serious damage;

(ii) The Commissioner (or in his absence the officer acting as Commissioner), after evaluating the reliability of such information, has notified the sponsor that the information must be a part of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

21 CFR S 202.1

advertisements for the drug; and

(iii) The sponsor has failed within a reasonable time as specified in such notification to present to the Food and Drug Administration a program, adequate in light of the nature of the information, for assuring that such information will be publicized promptly and adequately to the medical profession in subsequent advertisements.

If the Commissioner finds that the program presented is not being followed, he will notify the sponsor that prior approval of all advertisements for the particular drug will be required. Nothing in this paragraph is to be construed as limiting the Commissioner's or the Secretary's rights, as authorized by law, to issue publicity, to suspend any new-drug application, to decertify any antibiotic, or to recommend any regulatory action.

(2) Within a reasonable time after information concerning the possibility that a drug may cause fatalities or serious damage has been widely publicized in medical literature, the Food and Drug Administration shall notify the sponsor of the drug by mail that prior approval of advertisements for the drug is no longer necessary.

(3) Dissemination of an advertisement not in compliance with this paragraph shall be deemed to be an act that causes the drug to be misbranded under section 502(n) of the act.

(4) Any advertisement may be submitted to the Food and Drug Administration prior to publication for comment. If the advertiser is notified that the submitted advertisement is not in violation and, at some subsequent time, the Food and Drug Administration changes its opinion, the advertiser will be so notified and will be given a reasonable time for correction before any regulatory action is taken under this section. Notification to the advertiser that a proposed advertisement is or is not considered to be in violation shall be in written form.

(5) The sponsor shall have an opportunity for a regulatory hearing before the Food and Drug Administration pursuant to Part 16 of this chapter with respect to any determination that prior approval is required for advertisements concerning a particular prescription drug, or that a particular advertisement is not approvable.

(k) An advertisement issued or caused to be issued by the manufacturer, packer, or distributor of the drug promoted by the advertisement and which is not in compliance with section 502(n) of the act and the applicable regulations thereunder shall cause stocks of such drug in possession of the person responsible for issuing or causing the issuance of the advertisement, and stocks of the drug distributed by such person and still in the channels of commerce, to be misbranded under section 502(n) of the act.

(l)(1) Advertisements subject to section 502(n) of the act include advertisements in published journals, magazines, other periodicals, and newspapers, and advertisements broadcast through media such as radio, television, and telephone communication systems.

(2) Brochures, booklets, mailing pieces, detailing pieces, file cards, bulletins, calendars, price lists, catalogs, house organs, letters, motion picture films, film strips, lantern slides, sound recordings, exhibits, literature, and reprints and similar pieces of printed, audio, or visual matter descriptive of a drug and references published (for example, the "Physicians Desk Reference") for use by medical practitioners, pharmacists, or nurses, containing drug information supplied by the manufacturer, packer, or distributor of the drug and which are disseminated by or on behalf of its manufacturer, packer, or distributor are hereby determined to be labeling as defined in section 201(m) of the act.

21 C. F. R. § 202.1

**21 CFR § 202.1**

**END OF DOCUMENT**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

