**TAB 11**

21 CFR S 310.3
21 C.F.R. § 310.3
c

As used in this part:

(a) The term act means the Federal Food, Drug, and Cosmetic Act, as amended (secs. 201-902, 52 Stat. 1040 et seq., as amended; 21 U.S.C. 321-392 ).

(b) Department means the Department of Health and Human Services.

(c) Secretary means the Secretary of Health and Human Services.

(d) Commissioner means the Commissioner of Food and Drugs.

(e) The term person includes individuals, partnerships, corporations, and associations.

(f) The definitions and interpretations of terms contained in section 201 of the act shall be applicable to such terms when used in the regulations in this part.

(g) New drug substance means any substance that when used in the manufacture, processing, or packing of a drug, causes that drug to be a new drug, but does not include intermediates used in the synthesis of such substance.

(h) The newness of a drug may arise by reason (among other reasons) of:

(1) The newness for drug use of any substance which composes such drug, in whole or in part, whether it be an active substance or a menstruum, excipient, carrier, coating, or other component.

(2) The newness for a drug use of a combination of two or more substances, none of which is a new drug.

(3) The newness for drug use of the proportion of a substance in a combination, even though such combination containing such substance in other proportion is not a new drug.

(4) The newness of use of such drug in diagnosing, curing, mitigating, treating, or preventing a disease, or to affect a structure or function of the body, even though such drug is not a new drug when used in another disease or to affect another structure or function of the body.

(5) The newness of a dosage, or method or duration of administration or application, or other condition of use prescribed, recommended, or suggested in the labeling of such drug, even though such drug when used in other dosage, or other method or duration of administration or application, or different condition, is not a new drug.

(i) [Reserved]

(j) The term sponsor means the person or agency who assumes responsibility for an investigation of a new drug, including responsibility for compliance with applicable provisions of the act and regulations. The "sponsor" may be an individual, partnership, corporation, or Government agency and may be a manufacturer, scientific institution, or an investigator regularly and lawfully engaged in the investigation of new drugs.

(k) The phrase related drug(s) includes other brands, potencies, dosage forms, salts, and esters of the same drug moiety, including articles prepared or manufactured by other manufacturers: and any other drug containing a component so related by chemical structure or known pharmacological properties that, in the opinion of experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, it is prudent to assume or ascertain the liability of similar side effects and contraindications.

(l) Special packaging as defined in section 2(4) of the Poison Prevention Packaging Act of 1970 means packaging that is designed or constructed to be significantly difficult for children under 5 years of age to open or obtain a toxic or harmful amount of the substance contained therein within a reasonable time and not difficult for normal adults to use properly, but does not mean packaging which all such children cannot open or obtain a toxic or harmful amount within a reasonable time.

(m) [Reserved]

(n) The term radioactive drug means any substance defined as a drug in section 201(g)(1) of the Federal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



21 CFR S 310.3

Food, Drug, and Cosmetic Act which exhibits spontaneous disintegration of unstable nuclei with the emission of nuclear particles or photons and includes any nonradioactive reagent kit or nuclide generator which is intended to be used in the preparation of any such substance but does not include drugs such as carbon-containing compounds or potassium-containing salts which contain trace quantities of naturally occurring radionuclides. The term "radioactive drug" includes a "radioactive biological product" as defined in § 600.3(ee) of this chapter.

21 C. F. R. § 310.3

**21 CFR § 310.3**

**END OF DOCUMENT**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

**TAB 12**

21 C.F.R. § 312.21

c

An IND may be submitted for one or more phases of an investigation. The clinical investigation of a previously untested drug is generally divided into three phases. Although in general the phases are conducted sequentially, they may overlap. These three phases of an investigation are as follows:

(a) Phase 1.

(1) Phase 1 includes the initial introduction of an investigational new drug into humans. Phase 1 studies are typically closely monitored and may be conducted in patients or normal volunteer subjects. These studies are designed to determine the metabolism and pharmacologic actions of the drug in humans, the side effects associated with increasing doses, and, if possible, to gain early evidence on effectiveness. During Phase 1, sufficient information about the drug's pharmacokinetics and pharmacological effects should be obtained to permit the design of well-controlled, scientifically valid, Phase 2 studies. The total number of subjects and patients included in Phase 1 studies varies with the drug, but is generally in the range of 20 to 80.

(2) Phase 1 studies also include studies of drug metabolism, structure-activity relationships, and mechanism of action in humans, as well as studies in which investigational drugs are used as research tools to explore biological phenomena or disease processes.

(b) Phase 2. Phase 2 includes the controlled clinical studies conducted to evaluate the effectiveness of the drug for a particular indication or indications in patients with the disease or condition under study and to determine the common short-term side effects and risks associated with the drug. Phase 2 studies are typically well controlled, closely monitored, and conducted in a relatively small number of patients, usually involving no more than several hundred subjects.

(c) Phase 3. Phase 3 studies are expanded controlled and uncontrolled trials. They are performed after preliminary evidence suggesting effectiveness of the drug has been obtained, and are intended to gather the additional information about effectiveness and safety that is needed to evaluate the overall benefit-risk relationship of the drug and to provide an adequate basis for physician labeling. Phase 3 studies usually include from several hundred to several thousand subjects.

21 C. F. R. § 312.21

**21 CFR § 312.21**

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

**TAB 13**

21 CFR S 314.50

21 C.F.R. § 314.50

c

Applications and supplements to approved applications are required to be submitted in the form and contain the information, as appropriate for the particular application, required under this section. Three copies of the application are required: An archival copy, a review copy, and a field copy. An application for a new chemical entity will generally contain an application form, an index, a summary, five or six technical sections, case report tabulations of patient data, case report forms, drug samples, and labeling, including, if applicable, any Medication Guide required under part 208 of this chapter. Other applications will generally contain only some of those items, and information will be limited to that needed to support the particular submission. These include an application of the type described in section 505(b)(2) of the act, an amendment, and a supplement. The application is required to contain reports of all investigations of the drug product sponsored by the applicant, and all other information about the drug pertinent to an evaluation of the application that is received or otherwise obtained by the applicant from any source. FDA will maintain guidance documents on the format and content of applications to assist applicants in their preparation.

(a) Application form. The applicant shall submit a completed and signed application form that contains the following:

(1) The name and address of the applicant; the date of the application; the application number if previously issued (for example, if the application is a resubmission, an amendment, or a supplement); the name of the drug product, including its established, proprietary, code, and chemical names; the dosage form and strength; the route of administration; the identification numbers of all investigational new drug applications that are referenced in the application; the identification numbers of all drug master files and other applications under this part that are referenced in the application; and the drug product's proposed indications for use.

(2) A statement whether the submission is an original submission, a 505(b)(2) application, a resubmission, or a supplement to an application under § 314.70.

(3) A statement whether the applicant proposes to market the drug product as a prescription or an over-the-counter product.

(4) A check-list identifying what enclosures required under this section the applicant is submitting.

(5) The applicant, or the applicant's attorney, agent, or other authorized official shall sign the application. If the person signing the application does not reside or have a place of business within the United States, the application is required to contain the name and address of, and be countersigned by, an attorney, agent, or other authorized official who resides or maintains a place of business within the United States.

(b) Index. The archival copy of the application is required to contain a comprehensive index by volume number and page number to the summary under paragraph (c) of this section, the technical sections under paragraph (d) of this section, and the supporting information under paragraph (f) of this section.

(c) Summary.

(1) An application is required to contain a summary of the application in enough detail that the reader may gain a good general understanding of the data and information in the application, including an understanding of the quantitative aspects of the data. The summary is not required for supplements under § 314.70. Resubmissions of an application should contain an updated summary, as appropriate. The summary should discuss all aspects of the application, and synthesize the information into a well-structured and unified document. The summary should be written at approximately the level of detail required for publication in, and meet the editorial standards generally applied by, referred scientific and medical journals. In addition to the agency personnel reviewing the summary in the context of their review of the application, FDA may furnish the summary to FDA advisory committee members and agency officials whose duties require an understanding of the application. To the extent possible, data in the summary should be presented in tabular and graphic forms. FDA has prepared a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



guideline under § 10.90(b) that provides information about how to prepare a summary. The summary required under this paragraph may be used by FDA or the applicant to prepare the Summary Basis of Approval document for public disclosure (under § 314.430(e)(2)(ii)) when the application is approved.

(2) The summary is required to contain the following information:

(i) The proposed text of the labeling, including, if applicable, any Medication Guide required under part 208 of this chapter, for the drug, with annotations to the information in the summary and technical sections of the application that support the inclusion of each statement in the labeling, and, if the application is for a prescription drug, statements describing the reasons for omitting a section or subsection of the labeling format in § 201.57 of this chapter.

(ii) A statement identifying the pharmacologic class of the drug and a discussion of the scientific rationale for the drug, its intended use, and the potential clinical benefits of the drug product.

(iii) A brief description of the marketing history, if any, of the drug outside the United States, including a list of the countries in which the drug has been marketed, a list of any countries in which the drug has been withdrawn from marketing for any reason related to safety or effectiveness, and a list of countries in which applications for marketing are pending. The description is required to describe both marketing by the applicant and, if known, the marketing history of other persons.

(iv) A summary of the chemistry, manufacturing, and controls section of the application.

(v) A summary of the nonclinical pharmacology and toxicology section of the application.

(vi) A summary of the human pharmacokinetics and bioavailability section of the application.

(vii) A summary of the microbiology section of the application (for anti-infective drugs only).

(viii) A summary of the clinical data section of the application, including the results of statistical analyses of the clinical trials.

(ix) A concluding discussion that presents the benefit and risk considerations related to the drug, including a discussion of any proposed additional studies or surveillance the applicant intends to conduct postmarketing.

(d) Technical sections. The application is required to contain the technical sections described below. Each technical section is required to contain data and information in sufficient detail to permit the agency to make a knowledgeable judgment about whether to approve the Medication or whether grounds exist under section 505(d) of the act to refuse to approve the application. The required technical sections are as follows:

(1) Chemistry, manufacturing, and controls section. A section describing the composition, manufacture, and specification of the drug substance and the drug product, including the following:

(i) Drug substance. A full description of the drug substance including its physical and chemical characteristics and stability; the name and address of its manufacturer; the method of synthesis (or isolation) and purification of the drug substance; the process controls used during manufacture and packaging; and the specifications necessary to ensure the identity, strength, quality, and purity of the drug substance and the bioavailability of the drug products made from the substance, including, for example, tests, analytical procedures, and acceptance criteria relating to stability, sterility, particle size, and crystalline form. The application may provide additionally for the use of alternatives to meet any of these requirements, including alternative sources, process controls, and analytical procedures. Reference to the current edition of the U.S. Pharmacopeia and the National Formulary may satisfy relevant requirements in this paragraph.

(ii)(a) Drug product. A list of all components used in the manufacture of the drug product (regardless of whether they appear in the drug product) and a statement of the composition of the drug product; the specifications for each component; the name and address of each manufacturer of the drug product; a description of the manufacturing and packaging procedures and in-process controls for the drug product; the specifications necessary to ensure the identity, strength, quality, purity, potency, and bioavailability of the drug product, including, for example, tests, analytical procedures, and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

acceptance criteria relating to sterility, dissolution rate, container closure systems; and stability data with proposed expiration dating. The application may provide additionally for the use of alternatives to meet any of these requirements, including alternative components, manufacturing and packaging procedures, in-process controls, and analytical procedures. Reference to the current edition of the U.S. Pharmacopeia and the National Formulary may satisfy relevant requirements in this paragraph.

(b) Unless provided by paragraph (d)(1)(ii)(a) of this section, for each batch of the drug product used to conduct a bioavailability or bioequivalence study described in § 320.38 or § 320.63 of this chapter or used to conduct a primary stability study: The batch production record: the specification for each component and for the drug product; the names and addresses of the sources of the active and noncompendial inactive components and of the container and closure system for the drug product; the name and address of each contract facility involved in the manufacture, processing, packaging, or testing of the drug product and identification of the operation performed by each contract facility; and the results of any test performed on the components used in the manufacture of the drug product as required by § 211.84(d) of this chapter and on the drug product as required by § 211.165 of this chapter.

(c) The proposed or actual master production record, including a description of the equipment, to be used for the manufacture of a commercial lot of the drug product or a comparably detailed description of the production process for a representative batch of the drug product.

(iii) Environmental impact. The application is required to contain either a claim for categorical exclusion under § 25.30 or 25.31 of this chapter or an environmental assessment under § 25.40 of this chapter.

(iv) The applicant may, at its option, submit a complete chemistry, manufacturing, and controls section 90 to 120 days before the anticipated submission of the remainder of the application. FDA will review such early submissions as resources permit.

(v) The applicant shall include a statement

certifying that the field copy of the application has been provided to the applicant's home FDA district office.

(2) Nonclinical pharmacology and toxicology section. A section describing, with the aid of graphs and tables, animal and in vitro studies with drug, including the following:

(i) Studies of the pharmacological actions of the drug in relation to its proposed therapeutic indication and studies that otherwise define the pharmacologic properties of the drug or are pertinent to possible adverse effects.

(ii) Studies of the toxicological effects of the drug as they relate to the drug's intended clinical uses, including, as appropriate, studies assessing the drug's acute, subacute, and chronic toxicity; carcinogenicity; and studies of toxicities related to the drug's particular mode of administration or conditions of use.

(iii) Studies, as appropriate, of the effects of the drug on reproduction and on the developing fetus.

(iv) Any studies of the absorption, distribution, metabolism, and excretion of the drug in animals.

(v) For each nonclinical laboratory study subject to the good laboratory practice regulations under Part 58 a statement that it was conducted in compliance with the good laboratory practice regulations in Part 58, or, if the study was not conducted in compliance with those regulations, a brief statement of the reason for the noncompliance.

(3) Human pharmacokinetics and bioavailability section. A section describing the human pharmacokinetic data and human bioavailability data, or information supporting a waiver of the submission of in vivo bioavailability data under Subpart B of Part 320, including the following:

(i) A description of each of the bioavailability and pharmacokinetic studies of the drug in humans performed by or on behalf of the applicant that includes a description of the analytical procedures and statistical methods used in each study and a statement with respect to each study that it either was conducted in compliance with the institutional review board regulations in Part 56, or was not subject to the regulations under § 56.104 or §

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

56.105, and that it was conducted in compliance with the informed consent regulations in Part 50.

(ii) If the application describes in the chemistry, manufacturing, and controls section tests, analytical procedures, and acceptance criteria needed to assure the bioavailability of the drug product or drug substance, or both, a statement in this section of the rationale for establishing the tests, analytical procedures, and acceptance criteria, including data and information supporting the rationale.

(iii) A summarizing discussion and analysis of the pharmacokinetics and metabolism of the active ingredients and the bioavailability or bioequivalence, or both, of the drug product.

(4) Microbiology section.  If the drug is an anti-infective drug, a section describing the microbiology data, including the following:

(i) A description of the biochemical basis of the drug's action on microbial physiology.

(ii) A description of the antimicrobial spectra of the drug, including results of in vitro preclinical studies to demonstrate concentrations of the drug required for effective use.

(iii) A description of any known mechanisms of resistance to the drug, including results of any known epidemiologic studies to demonstrate prevalence of resistance factors.

(iv) A description of clinical microbiology laboratory procedures (for example, in vitro sensitivity discs) needed for effective use of the drug.

(5) Clinical data section.  A section describing the clinical investigations of the drug, including the following:

(i) A description and analysis of each clinical pharmacology study of the drug, including a brief comparison of the results of the human studies with the animal pharmacology and toxicology data.

(ii) A description and analysis of each controlled clinical study pertinent to a proposed use of the drug, including the protocol and a description of the statistical analyses used to evaluate the study.  If the study report is an interim analysis, this is to be

noted and a projected completion date provided. Controlled clinical studies that have not been analyzed in detail for any reason (e.g., because they have been discontinued or are incomplete) are to be included in this section, including a copy of the protocol and a brief description of the results and status of the study.

(iii) A description of each uncontrolled clinical study, a summary of the results, and a brief statement explaining why the study is classified as uncontrolled.

(iv) A description and analysis of any other data or information relevant to an evaluation of the safety and effectiveness of the drug product obtained or otherwise received by the applicant from any source, foreign or domestic, including information derived from clinical investigations, including controlled and uncontrolled studies of uses of the drug other than those proposed in the application, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers.

(v) An integrated summary of the data demonstrating substantial evidence of effectiveness for the claimed indications.  Evidence is also required to support the dosage and administration section of the labeling, including support for the dosage and dose interval recommended.  The effectiveness data shall be presented by gender, age, and racial subgroups and shall identify any modifications of dose or dose interval needed for specific subgroups. Effectiveness data from other subgroups of the population of patients treated, when appropriate, such as patients with renal failure or patients with different levels of severity of the disease, also shall be presented.

(vi) A summary and updates of safety information, as follows:

(a) The applicant shall submit an integrated summary of all available information about the safety of the drug product, including pertinent animal data, demonstrated or potential adverse effects of the drug, clinically significant drug/drug interactions, and other safety considerations, such as data from epidemiological studies of related drugs. The safety data shall be presented by gender, age, and racial subgroups.  When appropriate, safety data from other subgroups of the population of patients treated also shall be presented, such as for patients

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



with renal failure or patients with different levels of severity of the disease. A description of any statistical analyses performed in analyzing safety data should also be included, unless already included under paragraph (d)(5)(ii) of this section.

(b) The applicant shall, under section 505(i) of the act, update periodically its pending application with new safety information learned about the drug that may reasonably affect the statement of contraindications, warnings, precautions, and adverse reactions in the draft labeling and, if applicable, any Medication Guide required under part 208 of this chapter. These "safety update reports" are required to include the same kinds of information (from clinical studies, animal studies, and other sources) and are required to be submitted in the same format as the integrated summary in paragraph (d)(5)(vi)(a) of this section. In addition, the reports are required to include the case report forms for each patient who died during a clinical study or who did not complete the study because of an adverse event (unless this requirement is waived). The applicant shall submit these reports (1) 4 months after the initial submission; (2) following receipt of an approvable letter; and (3) at other times as requested by FDA. Prior to the submission of the first such report, applicants are encouraged to consult with FDA regarding further details on its form and content.

(vii) If the drug has a potential for abuse, a description and analysis of studies or information related to abuse of the drug, including a proposal for scheduling under the Controlled Substances Act. A description of any studies related to overdosage is also required, including information on dialysis, antidotes, or other treatments, if known.

(viii) An integrated summary of the benefits and risks of the drug, including a discussion of why the benefits exceed the risks under the conditions stated in the labeling.

(ix) A statement with respect to each clinical study involving human subjects that it either was conducted in compliance with the institutional review board regulations in Part 56, or was not subject to the regulations under § 56.104 or § 56.105, and that it was conducted in compliance with the informed consent regulations in Part 50.

(x) If a sponsor has transferred any obligations for

the conduct of any clinical study to a contract research organization, a statement containing the name and address of the contract research organization, identification of the clinical study, and a listing of the obligations transferred. If all obligations governing the conduct of the study have been transferred, a general statement of this transfer- -in lieu of a listing of the specific obligations transferred--may be submitted.

(xi) If original subject records were audited or reviewed by the sponsor in the course of monitoring any clinical study to verify the accuracy of the case reports submitted to the sponsor, a list identifying each clinical study so audited or reviewed.

(6) Statistical section. A section describing the statistical evaluation of clinical data, including the following:

(i) A copy of the information submitted under paragraph (d)(5)(ii) of this section concerning the description and analysis of each controlled clinical study, and the documentation and supporting statistical analyses used in evaluating the controlled clinical studies.

(ii) A copy of the information submitted under paragraph (d)(5)(vi)(a) of this section concerning a summary of information about the safety of the drug product, and the documentation and supporting statistical analyses used in evaluating the safety information.

(7) Pediatric use section. A section describing the investigation of the drug for use in pediatric populations, including an integrated summary of the information (the clinical pharmacology studies, controlled clinical studies, or uncontrolled clinical studies, or other data or information) that is relevant to the safety and effectiveness and benefits and risks of the drug in pediatric populations for the claimed indications, a reference to the full descriptions of such studies provided under paragraphs (d)(3) and (d)(5) of this section, and information required to be submitted under § 314.55.

(e) Samples and labeling.

(1) Upon request from FDA, the applicant shall submit the samples described below to the places identified in the agency's request. FDA will generally ask applicants to submit samples directly

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

to two or more agency laboratories that will perform all necessary tests on the samples and validate the applicant's analytical procedures.

(i) Four representative samples of the following, each sample in sufficient quantity to permit FDA to perform three times each test described in the application to determine whether the drug substance and the drug product meet the specifications given in the application:

(a) The drug product proposed for marketing;

(b) The drug substance used in the drug product from which the samples of the drug product were taken; and

(c) Reference standards and blanks (except that reference standards recognized in an official compendium need not be submitted).

(ii) Samples of the finished market package, if requested by FDA.

(2) The applicant shall submit the following in the archival copy of the application:

(i) Three copies of the analytical procedures and related descriptive information contained in the chemistry, manufacturing, and controls section under paragraph (d)(1) of this section for the drug substance and the drug product that are necessary for FDA's laboratories to perform all necessary tests on the samples and to validate the applicant's analytical procedures. The related descriptive information includes a description of each sample; the proposed regulatory specifications for the drug; a detailed description of the procedures of analysis; supporting data for accuracy, specificity, precision and ruggedness; and complete results of the applicant's tests on each sample.

(ii) Copies of the label and all labeling for the drug product (including, if applicable, any Medication Guide required under part 208 of this chapter) for the drug product (4 copies of draft labeling or 12 copies of final printed labeling).

(f) Case report forms and tabulations. The archival copy of the application is required to contain the following case report tabulations and case report forms:

(1) Case report tabulations. The application is required to contain tabulations of the data from each adequate and well-controlled study under § 314.126 (Phase 2 and Phase 3 studies as described in § 312.21(b) and (c) of this chapter), tabulations of the data from the earliest clinical pharmacology studies (Phase 1 studies as described in § 312.21(a) of this chapter), and tabulations of the safety data from other clinical studies. Routine submission of other patient data from uncontrolled studies is not required. The tabulations are required to include the data on each patient in each study, except that the applicant may delete those tabulations which the agency agrees, in advance, are not pertinent to a review of the drug's safety or effectiveness. Upon request, FDA will discuss with the applicant in a "pre-NDA" conference those tabulations that may be appropriate for such deletion. Barring unforeseen circumstances, tabulations agreed to be deleted at such a conference will not be requested during the conduct of FDA's review of the application. If such unforeseen circumstances do occur, any request for deleted tabulations will be made by the director of the FDA division responsible for reviewing the application, in accordance with paragraph (f)(3) of this section.

(2) Case report forms. The application is required to contain copies of individual case report forms for each patient who died during a clinical study or who did not complete the study because of an adverse event, whether believed to be drug related or not, including patients receiving reference drugs or placebo. This requirement may be waived by FDA for specific studies if the case report forms are unnecessary for a proper review of the study.

(3) Additional data. The applicant shall submit to FDA additional case report forms and tabulations needed to conduct a proper review of the application, as requested by the director of the FDA division responsible for reviewing the application. The applicant's failure to submit information requested by FDA within 30 days after receipt of the request may result in the agency viewing any eventual submission as a major amendment under § 314.60 and extending the review period as necessary. If desired by the applicant, the FDA division director will verify in writing any request for additional data that was made orally.

(4) Applicants are invited to meet with FDA before submitting an application to discuss the presentation

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



and format of supporting information. If the applicant and FDA agree, the applicant may submit tabulations of patient data and case report forms in a form other than hard copy, for example, on microfiche or computer tapes.

(g) Other. The following general requirements apply to the submission of information within the summary under paragraph (c) of this section and within the technical sections under paragraph (d) of this section.

(1) The applicant ordinarily is not required to resubmit information previously submitted, but may incorporate the information by reference. A reference to information submitted previously is required to identify the file by name, reference number, volume, and page number in the agency's records where the information can be found. A reference to information submitted to the agency by a person other than the applicant is required to contain a written statement that authorizes the reference and that is signed by the person who submitted the information.

(2) The applicant shall submit an accurate and complete English translation of each part of the application that is not in English. The applicant shall submit a copy of each original literature publication for which an English translation is submitted.

(3) If an applicant who submits a new drug application under section 505(b) of the act obtains a "right of reference or use," as defined under § 314.3(b), to an investigation described in clause (A) of section 505(b)(1) of the act, the applicant shall include in its application a written statement signed by the owner of the data from each such investigation that the applicant may rely on in support of the approval of its application, and provide FDA access to, the underlying raw data that provide the basis for the report of the investigation submitted in its application.

(h) Patent information. The application is required to contain the patent information described under § 314.53.

(i) Patent certification--

(1) Contents. A 505(b)(2) application is required to contain the following:

(i) Patents claiming drug, drug product, or method of use.

(A) Except as provided in paragraph (i)(2) of this section, a certification with respect to each patent issued by the United States Patent and Trademark Office that, in the opinion of the applicant and to the best of its knowledge, claims a drug (the drug product or drug substance that is a component of the drug product) on which investigations that are relied upon by the applicant for approval of its application were conducted or that claims an approved use for such drug and for which information is required to be filed under section 505(b) and (c) of the act and § 314.53. For each such patent, the applicant shall provide the patent number and certify, in its opinion and to the best of its knowledge, one of the following circumstances:

(1) That the patent information has not been submitted to FDA. The applicant shall entitle such a certification "Paragraph I Certification";

(2) That the patent has expired. The applicant shall entitle such a certification "Paragraph II Certification";

(3) The date on which the patent will expire. The applicant shall entitle such a certification "Paragraph III Certification"; or

(4) That the patent is invalid, unenforceable, or will not be infringed by the manufacture, use, or sale of the drug product for which the application is submitted. The applicant shall entitle such a certification "Paragraph IV Certification". This certification shall be submitted in the following form:

I, (name of applicant), certify that Patent No. _____ (is invalid, unenforceable, or will not be infringed by the manufacture, use, or sale of) (name of proposed drug product) for which this application is submitted.

The certification shall be accompanied by a statement that the applicant will comply with the requirements under § 314.52(a) with respect to providing a notice to each owner of the patent or their representatives and to the holder of the approved application for the drug product which is claimed by the patent or a use of which is claimed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



by the patent and with the requirements under §
314.52(c) with respect to the content of the notice.

(B) If the drug on which investigations that are
relied upon by the applicant were conducted is itself
a licensed generic drug of a patented drug first
approved under section 505(b) of the act, the
appropriate patent certification under this section
with respect to each patent that claims the first-
approved patented drug or that claims an approved
use for such a drug.

(ii) No relevant patents. If, in the opinion of the
applicant and to the best of its knowledge, there are
no patents described in paragraph (i)(1)(i) of this
section, a certification in the following form:

In the opinion and to the best knowledge of (name
of applicant), there are no patents that claim the
drug or drugs on which investigations that are relied
upon in this application were conducted or that
claim a use of such drug or drugs.

(iii) Method of use patent.

(A) If information that is submitted under section
505(b) or (c) of the act and § 314.53 is for a method
of use patent, and the labeling for the drug product
for which the applicant is seeking approval does not
include any indications that are covered by the use
patent, a statement explaining that the method of use
patent does not claim any of the proposed
indications.

(B) If the labeling of the drug product for which the
applicant is seeking approval includes an indication
that, according to the patent information submitted
under section 505(b) or (c) of the act and § 314.53
or in the opinion of the applicant, is claimed by a
use patent, the applicant shall submit an applicable
certification under paragraph (i)(1)(i) of this section.

(2) Method of manufacturing patent. An applicant
is not required to make a certification with respect to
any patent that claims only a method of
manufacturing the drug product for which the
applicant is seeking approval.

(3) Licensing agreements. If a 505(b)(2)
application is for a drug or method of using a drug
claimed by a patent and the applicant has a licensing
agreement with the patent owner, the applicant shall
submit a certification under paragraph (i)(1)(i)(A)(4)

of this section ("Paragraph IV Certification") as to
that patent and a statement that it has been granted a
patent license. If the patent owner consents to an
immediate effective date upon approval of the
505(b)(2) application, the application shall contain a
written statement from the patent owner that it has a
licensing agreement with the applicant and that it
consents to an immediate effective date.

(4) Late submission of patent information. If a
patent described in paragraph (i)(1)(i)(A) of this
section is issued and the holder of the approved
application for the patented drug does not submit the
required information on the patent within 30 days of
issuance of the patent, an applicant who submitted a
505(b)(2) application that, before the submission of
the patent information, contained an appropriate
patent certification is not required to submit an
amended certification. An applicant whose
505(b)(2) application is filed after a late submission
of patent information or whose 505(b)(2) application
was previously filed but did not contain an
appropriate patent certification at the time of the
patent submission shall submit a certification under
paragraph (i)(1)(i) or (i)(1)(ii) of this section or a
statement under paragraph (i)(1)(iii) of this section
as to that patent.

(5) Disputed patent information. If an applicant
disputes the accuracy or relevance of patent
information submitted to FDA, the applicant may
seek a confirmation of the correctness of the patent
information in accordance with the procedures under
§ 314.53(f). Unless the patent information is
withdrawn or changed, the applicant must submit an
appropriate certification for each relevant patent.

(6) Amended certifications. A certification
submitted under paragraphs (i)(1)(i) through
(i)(1)(iii) of this section may be amended at any time
before the effective date of the approval of the
application. An applicant shall submit an amended
certification as an amendment to a pending
application or by letter to an approved application.
If an applicant with a pending application
voluntarily makes a patent certification for an
untimely filed patent, the applicant may withdraw
the patent certification for the untimely filed patent.
Once an amendment or letter for the change in
certification has been submitted, the application will
no longer be considered to be one containing the
prior certification.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



(i) After finding of infringement. An applicant who has submitted a certification under paragraph (i)(1)(i)(A)(4) of this section and is sued for patent infringement within 45 days of the receipt of notice sent under § 314.52 shall amend the certification if a final judgment in the action is entered finding the patent to be infringed unless the final judgment also finds the patent to be invalid. In the amended certification, the applicant shall certify under paragraph (i)(1)(i)(A)(3) of this section that the patent will expire on a specific date.

(ii) After removal of a patent from the list. If a patent is removed from the list, any applicant with a pending application (including a tentatively approved application with a delayed effective date) who has made a certification with respect to such patent shall amend its certification. The applicant shall certify under paragraph (i)(1)(ii) of this section that no patents described in paragraph (i)(1)(i) of this section claim the drug or, if other relevant patents claim the drug, shall amend the certification to refer only to those relevant patents. In the amendment, the applicant shall state the reason for the change in certification (that the patent is has been removed from the list). A patent that is the subject of a lawsuit under § 314.107(c) shall not be removed from the list until FDA determines either that no delay in effective dates of approval is required under that section as a result of the lawsuit, that the patent has expired, or that any such period of delay in effective dates of approval is ended. An applicant shall submit an amended certification as an amendment to a pending application. Once an amendment for the change has been submitted, the application will no longer be considered to be one containing a certification under paragraph (i)(1)(i)(A)(4) of this section.

(iii) Other amendments.

(A) Except as provided in paragraphs (i)(4) and (i)(6)(iii)(B) of this section, an applicant shall amend a submitted certification if, at any time before the effective date of the approval of the application, the applicant learns that the submitted certification is no longer accurate.

(B) An applicant is not required to amend a submitted certification when information on an otherwise applicable patent is submitted after the effective date of approval for the 505(b)(2) application.

(j) Claimed exclusivity. A new drug product, upon approval, may be entitled to a period of marketing exclusivity under the provisions of § 314.108. If an applicant believes its drug product is entitled to a period of exclusivity, it shall submit with the new drug application prior to approval the following information:

(1) A statement that the applicant is claiming exclusivity.

(2) A reference to the appropriate paragraph under § 314.108 that supports its claim.

(3) If the applicant claims exclusivity under § 314.108(b)(2), information to show that, to the best of its knowledge or belief, a drug has not previously been approved under section 505(b) of the act containing any active moiety in the drug for which the applicant is seeking approval.

(4) If the applicant claims exclusivity under § 314.108(b)(4) or (b)(5), the following information to show that the application contains "new clinical investigations" that are "essential to approval of the application or supplement" and were "conducted or sponsored by the applicant:"

(i) "New clinical investigations." A certification that to the best of the applicant's knowledge each of the clinical investigations included in the application meets the definition of "new clinical investigation" set forth in § 314.108(a).

(ii) "Essential to approval." A list of all published studies or publicly available reports of clinical investigations known to the applicant through a literature search that are relevant to the conditions for which the applicant is seeking approval, a certification that the applicant has thoroughly searched the scientific literature and, to the best of the applicant's knowledge, the list is complete and accurate and, in the applicant's opinion, such published studies or publicly available reports do not provide a sufficient basis for the approval of the conditions for which the applicant is seeking approval without reference to the new clinical investigation(s) in the application, and an explanation as to why the studies or reports are insufficient.

(iii) "Conducted or sponsored by." If the applicant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



was the sponsor named in the Form FDA-1571 for an investigational new drug application (IND) under which the new clinical investigation(s) that is essential to the approval of its application was conducted, identification of the IND by number. If the applicant was not the sponsor of the IND under which the clinical investigation(s) was conducted, a certification that the applicant or its predecessor in interest provided substantial support for the clinical investigation(s) that is essential to the approval of its application, and information supporting the certification. To demonstrate "substantial support," an applicant must either provide a certified statement from a certified public accountant that the applicant provided 50 percent or more of the cost of conducting the study or provide an explanation of why FDA should consider the applicant to have conducted or sponsored the study if the applicant's financial contribution to the study is less than 50 percent or the applicant did not sponsor the investigational new drug. A predecessor in interest is an entity, e.g., a corporation, that the applicant has taken over, merged with, or purchased, or from which the applicant has purchased all rights to the drug. Purchase of nonexclusive rights to a clinical investigation after it is completed is not sufficient to satisfy this definition.

(k) Financial certification or disclosure statement. The application shall contain a financial certification or disclosure statement or both as required by part 54 of this chapter.

(l) Format of an original application.

(1) Archival copy. The applicant must submit a complete archival copy of the application that contains the information required under paragraphs (a) through (f) of this section. FDA will maintain the archival copy during the review of the application to permit individual reviewers to refer to information that is not contained in their particular technical sections of the application, to give other agency personnel access to the application for official business, and to maintain in one place a complete copy of the application. Except as required by paragraph (l)(1)(i) of this section, applicants may submit the archival copy on paper or in electronic format provided that electronic submissions are made in accordance with part 11 of this chapter.

(i) Labeling. The content of labeling required

under § 201.100(d)(3) of this chapter (commonly referred to as the package insert or professional labeling), including all text, tables, and figures, must be submitted to the agency in electronic format as described in paragraph (l)(5) of this section. This requirement is in addition to the requirements of paragraph (e)(2)(ii) of this section that copies of the formatted label and all labeling be submitted. Submissions under this paragraph must be made in accordance with part 11 of this chapter, except for the requirements of § 11.10(a), (c) through (h), and (k), and the corresponding requirements of § 11.30.

(ii) [Reserved]

(2) Review copy. The applicant must submit a review copy of the application. Each of the technical sections, described in paragraphs (d)(1) through (d)(6) of this section, in the review copy is required to be separately bound with a copy of the application form required under paragraph (a) of this section and a copy of the summary required under paragraph (c) of this section.

(3) Field copy. The applicant must submit a field copy of the application that contains the technical section described in paragraph (d)(1) of this section, a copy of the application form required under paragraph (a) of this section, a copy of the summary required under paragraph (c) of this section, and a certification that the field copy is a true copy of the technical section described in paragraph (d)(1) of this section contained in the archival and review copies of the application.

(4) Binding folders. The applicant may obtain from FDA sufficient folders to bind the archival, the review, and the field copies of the application.

(5) Electronic format submissions. Electronic format submissions must be in a form that FDA can process, review, and archive. FDA will periodically issue guidance on how to provide the electronic submission (e.g., method of transmission, media, file formats, preparation and organization of files).

21 C. F. R. § 314.50

**21 CFR § 314.50**

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**TAB 14**

(a) Applicability. Each applicant shall make the reports for each of its approved applications and abbreviated applications required under this section and section 505(k) of the act.

(b) Reporting requirements. The applicant shall submit to the Food and Drug Administration at the specified times two copies of the following reports:

(1) NDA--Field alert report. The applicant shall submit information of the following kinds about distributed drug products and articles to the FDA district office that is responsible for the facility involved within 3 working days of receipt by the applicant. The information may be provided by telephone or other rapid communication means, with prompt written followup. The report and its mailing cover should be plainly marked: "NDA--Field Alert Report."

(i) Information concerning any incident that causes the drug product or its labeling to be mistaken for, or applied to, another article.

(ii) Information concerning any bacteriological contamination, or any significant chemical, physical, or other change or deterioration in the distributed drug product, or any failure of one or more distributed batches of the drug product to meet the specification established for it in the application.

(2) Annual report. The applicant shall submit each year within 60 days of the anniversary date of U.S. approval of the application, two copies of the report to the FDA division responsible for reviewing the application. Each annual report is required to be accompanied by a completed transmittal Form FDA 2252 (Transmittal of Periodic Reports for Drugs for Human Use), and must include all the information required under this section that the applicant received or otherwise obtained during the annual reporting interval that ends on the U.S. anniversary date. The report is required to contain in the order listed:

(i) Summary. A brief summary of significant new information from the previous year that might affect the safety, effectiveness, or labeling of the drug product. The report is also required to contain a brief description of actions the applicant has taken or intends to take as a result of this new information, for example, submit a labeling supplement, add a warning to the labeling, or initiate a new study. The summary shall briefly state whether labeling supplements for pediatric use have been submitted and whether new studies in the pediatric population to support appropriate labeling for the pediatric population have been initiated. Where possible, an estimate of patient exposure to the drug product, with special reference to the pediatric population (neonates, infants, children, and adolescents) shall be provided, including dosage form.

(ii) Distribution data. Information about the quantity of the drug product distributed under the approved application, including that distributed to distributors. The information is required to include the National Drug Code (NDC) number, the total number of dosage units of each strength or potency distributed (e.g., 100,000/5 milligram tablets, 50,000/10 milliliter vials), and the quantities distributed for domestic use and the quantities distributed for foreign use. Disclosure of financial or pricing data is not required.

(iii) Labeling.

(a) Currently used professional labeling, patient brochures or package inserts (if any), and a representative sample of the package labels.

(b) The content of labeling required under § 201.100(d)(3) of this chapter (i.e., the package insert or professional labeling), including all text, tables, and figures, must be submitted in electronic format. Electronic format submissions must be in a form that FDA can process, review, and archive. FDA will periodically issue guidance on how to provide the electronic submission (e.g., method of transmission, media, file formats, preparation and organization of files). Submissions under this paragraph must be made in accordance with part 11 of this chapter, except for the requirements of § 11.10(a), (c) through (h), and (k), and the corresponding requirements of § 11.30.

(c) A summary of any changes in labeling that have been made since the last report listed by date in the order in which they were implemented, or if no changes, a statement of that fact.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



(iv)  Chemistry,  manufacturing,  and  controls changes.

(a) Reports of experiences, investigations, studies, or tests involving chemical or physical properties, or any other properties of the drug (such as the drug's behavior  or  properties  in  relation  to microorganisms, including both the effects of the drug on microorganisms and the effects of microorganisms on the drug).  These reports are only required for new information that may affect FDA's previous conclusions about the safety or effectiveness of the drug product.

(b) A full description of the manufacturing and controls changes not requiring a supplemental application under § 314.70 (b) and (c), listed by date in the order in which they were implemented.

(v) Nonclinical laboratory studies.   Copies of unpublished reports and summaries of published reports of new toxicological findings in animal studies and in vitro studies (e.g., mutagenicity) conducted by, or otherwise obtained by, the applicant concerning the ingredients in the drug product.  The applicant shall submit a copy of a published report if requested by FDA.

(vi) Clinical data.

(a) Published clinical trials of the drug (or abstracts of them), including clinical trials on safety and effectiveness;    clinical  trials  on  new  uses; biopharmaceutic,  pharmacokinetic,  and  clinical pharmacology studies;   and reports of clinical experience pertinent to safety (for example, epidemiologic studies or analyses of experience in a monitored series of patients) conducted by or otherwise obtained by the applicant.   Review articles, papers describing the use of the drug product in medical practice, papers and abstracts in which the drug is used as a research tool, promotional articles, press clippings, and papers that do not contain tabulations or summaries of original data should not be reported.

(b) Summaries of completed unpublished clinical trials, or prepublication manuscripts if available, conducted by, or otherwise obtained by, the applicant.  Supporting information should not be reported.  (A study is considered completed 1 year after it is concluded.)

(c) Analysis of available safety and efficacy data in the pediatric population and changes proposed in the labeling based on this information.  An assessment of data needed to ensure appropriate labeling for the pediatric population shall be included.

(vii)  Status  reports  of  postmarketing  study commitments.     A  status  report  of  each postmarketing study of the drug product concerning clinical    safety,    clinical    efficacy,    clinical pharmacology, and nonclinical toxicology that is required by FDA (e.g., accelerated approval clinical benefit studies, pediatric studies) or that the applicant has committed, in writing, to conduct either at the time of approval of an application for the drug product or a supplement to an application, or after approval of the application or a supplement. For pediatric studies, the status report shall include a  statement  indicating  whether  postmarketing clinical  studies  in  pediatric  populations  were required by FDA under § 201.23 of this chapter. The status of these postmarketing studies shall be reported annually until FDA notifies the applicant, in  writing,  that  the  agency  concurs  with  the applicant's determination that the study commitment has been fulfilled or that the study is either no longer feasible or would no longer provide useful information.

(a)  Content  of  status  report.   The  following information  must  be  provided  for  each postmarketing study reported under this paragraph:

(1) Applicant's name.

(2) Product name.   Include the approved drug product's established name and proprietary name, if any.

(3) NDA, ANDA, and supplement number.

(4) Date of U.S. approval of NDA or ANDA.

(5) Date of postmarketing study commitment.

(6)   Description   of   postmarketing   study commitment.    The  description  must  include sufficient information to uniquely describe the study.  This information may include the purpose of the study, the type of study, the patient population addressed by the study and the indication(s) and dosage(s) that are to be studied.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

(7) Schedule for completion and reporting of the postmarketing study commitment. The schedule should include the actual or projected dates for submission of the study protocol to FDA, completion of patient accrual or initiation of an animal study, completion of the study, submission of the final study report to FDA, and any additional milestones or submissions for which projected dates were specified as part of the commitment. In addition, it should include a revised schedule, as appropriate. If the schedule has been previously revised, provide both the original schedule and the most recent, previously submitted revision.

(8) Current status of the postmarketing study commitment. The status of each postmarketing study should be categorized using one of the following terms that describes the study's status on the anniversary date of U.S. approval of the application or other agreed upon date:

(i) Pending. The study has not been initiated, but does not meet the criterion for delayed.

(ii) Ongoing. The study is proceeding according to or ahead of the original schedule described under paragraph (b)(2)(vii)(a)(7) of this section.

(iii) Delayed. The study is behind the original schedule described under paragraph (b)(2)(vii)(a)(7) of this section.

(iv) Terminated. The study was ended before completion but a final study report has not been submitted to FDA.

(v) Submitted. The study has been completed or terminated and a final study report has been submitted to FDA.

(9) Explanation of the study's status. Provide a brief description of the status of the study, including the patient accrual rate (expressed by providing the number of patients or subjects enrolled to date, and the total planned enrollment), and an explanation of the study's status identified under paragraph (b)(2)(vii)(a)(8) of this section. If the study has been completed, include the date the study was completed and the date the final study report was submitted to FDA, as applicable. Provide a revised schedule, as well as the reason(s) for the revision, if the schedule under paragraph (b)(2)(vii)(a)(7) of this section has changed since the last report.

(b) Public disclosure of information. Except for the information described in this paragraph, FDA may publicly disclose any information described in paragraph (b)(2)(vii) of this section, concerning a postmarketing study, if the agency determines that the information is necessary to identify the applicant or to establish the status of the study, including the reasons, if any, for failure to conduct, complete, and report the study. Under this section, FDA will not publicly disclose trade secrets, as defined in § 20.61 of this chapter, or information, described in § 20.63 of this chapter, the disclosure of which would constitute an unwarranted invasion of personal privacy.

(viii) Status of other postmarketing studies. A status report of any postmarketing study not included under paragraph (b)(2)(vii) of this section that is being performed by, or on behalf of, the applicant. A status report is to be included for any chemistry, manufacturing, and controls studies that the applicant has agreed to perform and for all product stability studies.

(ix) Log of outstanding regulatory business. To facilitate communications between FDA and the applicant, the report may, at the applicant's discretion, also contain a list of any open regulatory business with FDA concerning the drug product subject to the application (e.g., a list of the applicant's unanswered correspondence with the agency, a list of the agency's unanswered correspondence with the applicant).

(3) Other reporting--

(i) Advertisements and promotional labeling. The applicant shall submit specimens of mailing pieces and any other labeling or advertising devised for promotion of the drug product at the time of initial dissemination of the labeling and at the time of initial publication of the advertisement for a prescription drug product. Mailing pieces and labeling that are designed to contain samples of a drug product are required to be complete, except the sample of the drug product may be omitted. Each submission is required to be accompanied by a completed transmittal Form FDA-2253 (Transmittal of Advertisements and Promotional Labeling for Drugs for Human Use) and is required to include a copy of the product's current professional labeling. Form FDA-2253 may be obtained from the PHS

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Forms and Publications Distribution Center, 12100 Parklawn Dr., Rockville, MD 20857.

(ii) Special reports.   Upon written request the agency may require that the applicant submit the reports under this section at different times than those stated.

(iii) Withdrawal of approved drug product from sale.

(a) The applicant shall submit on Form FDA 2657 (Drug Product Listing), within 15 working days of the withdrawal from sale of a drug product, the following information:

(1) The National Drug Code (NDC) number.

(2) The identity of the drug product by established name and by proprietary name.

(3) The new drug application or abbreviated application number.

(4) The date of withdrawal from sale.   It is requested but not required that the reason for withdrawal of the drug product from sale be included with the information.

(b) The applicant shall submit each Form FDA-2657 to the Records Repository Team (HFD-143), Center for Drug Evaluation and Research, Food and Drug Administration, 5600 Fishers Lane, Rockville, MD 20857.

(c) Reporting under paragraph (b)(3)(iii) of this section constitutes compliance with the requirements under § 207.30(a) of this chapter to report "at the discretion of the registrant when the change occurs."

(c) General requirements--

(1) Multiple applications.  For all reports required by this section, the applicant shall submit the information common to more than one application only to the application first approved, and shall not report separately on each application.   The submission is required to identify all the applications to which the report applies.

(2) Patient identification.  Applicants should not include in reports under this section the names and addresses of individual patients;    instead, the

applicant should code the patient names whenever possible and retain the code in the applicant's files. The applicant shall maintain sufficient patient identification information to permit FDA, by using that information alone or along with records maintained by the investigator of a study, to identify the name and address of individual patients;  this will ordinarily occur only when the agency needs to investigate the reports further or when there is reason to believe that the reports do not represent actual results obtained.

(d) Withdrawal of approval.  If an applicant fails to make reports required under this section, FDA may withdraw approval of the application and, thus, prohibit continued marketing of the drug product that is the subject of the application.

21 C. F. R. § 314.81

**21 CFR § 314.81**

**END OF DOCUMENT**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

**TAB 15**

21 CFR S 314.105                                                        Page    1
21 C.F.R. § 314.105

c

(a) The Food and Drug Administration will approve an application and send the applicant an approval letter if none of the reasons in § 314.125 for refusing to approve the application applies. An approval becomes effective on the date of the issuance of the approval letter, except with regard to an approval under section 505(b)(2) of the act with a delayed effective date. An approval with a delayed effective date is tentative and does not become final until the effective date. A new drug product or antibiotic approved under this paragraph may not be marketed until an approval is effective.

(b) FDA will approve an application and issue the applicant an approval letter - (rather than an approvable letter under § 314.110) on the basis of draft labeling if the only deficiencies in the application concern editorial or similar minor deficiencies in the draft labeling. Such approval will be conditioned upon the applicant incorporating the specified labeling changes exactly as directed, and upon the applicant submitting to FDA a copy of the final printed labeling prior to marketing.

(c) FDA will approve an application after it determines that the drug meets the statutory standards for safety and effectiveness, manufacturing and controls, and labeling, and an abbreviated application after it determines that the drug meets the statutory standards for manufacturing and controls, labeling, and, where applicable, bioequivalence. While the statutory standards apply to all drugs, the many kinds of drugs that are subject to the statutory standards and the wide range of uses for those drugs demand flexibility in applying the standards. Thus FDA is required to exercise its scientific judgment to determine the kind and quantity of data and information an applicant is required to provide for a particular drug to meet the statutory standards. FDA makes its views on drug products and classes of drugs available through guidance documents, recommendations, and other statements of policy.

(d) FDA will approve an abbreviated new drug application and send the applicant an approval letter if none of the reasons in § 314.127 for refusing to approve the abbreviated new drug application applies. The approval becomes effective on the date of the issuance of the agency's approval letter unless

the approval letter provides for a delayed effective date. An approval with a delayed effective date is tentative and does not become final until the effective date. A new drug product approved under this paragraph may not be introduced or delivered for introduction into interstate commerce until approval of the abbreviated new drug application is effective. Ordinarily, the effective date of approval will be stated in the approval letter.

21 C. F. R. § 314.105

**21 CFR § 314.105**

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




**TAB 16**

21 CFR S 314.125                                                Page   1
21 C.F.R. § 314.125
c

(a) The Food and Drug Administration will refuse to approve the application and for a new drug give the applicant written notice of an opportunity for a hearing under § 314.200 on the question of whether there are grounds for denying approval of the application under section 505(d) of the act, if:

(1) FDA sends the applicant an approvable or a not approvable letter under § 314.110 or § 314.120;

(2) The applicant requests an opportunity for hearing for a new drug on the question of whether the application is approvable; and

(3) FDA finds that any of the reasons given in paragraph (b) of this section apply.

(b) FDA may refuse to approve an application for any of the following reasons:

(1) The methods to be used in, and the facilities and controls used for, the manufacture, processing, packing, or holding of the drug substance or the drug product are inadequate to preserve its identity, strength, quality, purity, stability, and bioavailability.

(2) The investigations required under section 505(b) of the act do not include adequate tests by all methods reasonably applicable to show whether or not the drug is safe for use under the conditions prescribed, recommended, or suggested in its proposed labeling.

(3) The results of the tests show that the drug is unsafe for use under the conditions prescribed, recommended, or suggested in its proposed labeling or the results do not show that the drug product is safe for use under those conditions.

(4) There is insufficient information about the drug to determine whether the product is safe for use under the conditions prescribed, recommended, or suggested in its proposed labeling.

(5) There is a lack of substantial evidence consisting of adequate and well-controlled investigations, as defined in § 314.126, that the drug product will have the effect it purports or is represented to have under the conditions of use

prescribed, recommended, or suggested in its proposed labeling.

(6) The proposed labeling is false or misleading in any particular.

(7) The application contains an untrue statement of a material fact.

(8) The drug product's proposed labeling does not comply with the requirements for labels and labeling in Part 201.

(9) The application does not contain bioavailability or bioequivalence data required under part 320 of this chapter.

(10) A reason given in a letter refusing to file the application under § 314.101(d), if the deficiency is not corrected.

(11) The drug will be manufactured or processed in whole or in part in an establishment that is not registered and not exempt from registration under section 510 of the act and Part 207.

(12) The applicant does not permit a properly authorized officer or employee of the Department of Health and Human Services an adequate opportunity to inspect the facilities, controls, and any records relevant to the application.

(13) The methods to be used in, and the facilities and controls used for, the manufacture, processing, packing, or holding of the drug substance or the drug product do not comply with the current good manufacturing practice regulations in Parts 210 and 211.

(14) The application does not contain an explanation of the omission of a report of any investigation of the drug product sponsored by the applicant, or an explanation of the omission of other information about the drug pertinent to an evaluation of the application that is received or otherwise obtained by the applicant from any source.

(15) A nonclinical laboratory study that is described in the application and that is essential to show that the drug is safe for use under the conditions

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

prescribed, recommended, or suggested in its proposed labeling was not conducted in compliance with the good laboratory practice regulations in part 58 of this chapter and no reason for the noncompliance is provided or, if it is, the differences between the practices used in conducting the study and the good laboratory practice regulations do not support the validity of the study.

(16) Any clinical investigation involving human subjects described in the application, subject to the institutional review board regulations in part 58 of this chapter or informed consent regulations in part 50 of this chapter, was not conducted in compliance with those regulations such that the rights or safety of human subjects were not adequately protected.

(17) The applicant or contract research organization that conducted a bioavailability or bioequivalence study described in § 320.38 or § 320.63 of this chapter that is contained in the application refuses to permit an inspection of facilities or records relevant to the study by a properly authorized officer or employee of the Department of Health and Human Services or refuses to submit reserve samples of the drug products used in the study when requested by FDA.

(18) For a new drug, the application failed to contain the patent information required by section 505(b)(1) of the act.

(c) For drugs intended to treat life-threatening or severely-debilitating illnesses that are developed in accordance with §§ 312.80 through 312.88 of this chapter, the criteria contained in paragraphs (b) (3), (4), and (5) of this section shall be applied according to the considerations contained in § 312.84 of this chapter.

21 C. F. R. § 314.125

**21 CFR § 314.125**

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.