**TAB 9**

Slip Copy
(Cite as: 2005 WL 1249374 (Del.Super.))

Page 145

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.

Melissa MURPHY, et al., Plaintiffs,
v.
UNITED SERVICES AUTO ASSN., et al., Defendants

No. Civ.A. 04C-07-003RFS.

Argued April 28, 2005.
Decided May 10, 2005.

ORDER

STOKES, J.

*1 Upon careful review of the filings in the above captioned matter, Defendants' Motion to Dismiss for Lacking of Standing is granted, and Certain Defendants' motion to Dismiss is granted as to the Class Claims. It appears to the Court that:

Plaintiffs Melissa Murphy ("Murphy") and Peter Galley ("Galley") have brought suit for themselves and as representatives of a class of persons who have purchased no-fault auto insurance pursuant to 21 Del. C. § 2118. They are suing Progressive Northern Insurance Company ("PNIC") and GEICO Indemnity Insurance Company ("GEICO"), their providers, respectively, and fifteen other insurance companies who provide no-fault insurance in Delaware, as a defendant class [FN1] Plaintiffs allege that the Defendants are engaged in an industry-wide practice that unfairly denies full payment for medical expenses. [FN2]

> FN1. The other insurance companies are United Services Auto Association, State Farm Mutual Automobile Insurance Company, The Peninsula Insurance Company, Allstate Ins. Co., Hartford Underwriters Ins. Co., Nationwide Mut. Ins. Co., Nationwide Assurance, Keystone Ins. Co., Encompass Ins., Pawtucket Mut. Ins. Co ., Liberty Mut. Ins. Co., Westfield Ins. Co., Montgomery Mut. Ins. Co ., Harleysville Mut. Ins. Co., The Travelers Indemnity Co.

> FN2. [P]laintiffs .... allege that Defendants have unlawfully denied payment of some or all of their benefits., relying on medical opinions Defendants have procured or because of self-serving reviews based on criteria orchestrated by the Defendants, or on evaluations by an untrained insurance adjuster's unsubstantiated opinion of coverage, necessity and/ or reasonableness of costs. They also allege that many such determinations are made before there is sufficient treatment to make a fair assessment. They allege an industry wide practice of unfair denials or partial payments. Pl.'s Compl. at 1.

They are seeking monetary damages in the amount of $1,606.00 for Murphy and $1,633.60 for Galley. In addition, they seek monetary damages for the amounts each class plaintiff has had to pay for medical expenses as a result of this practice, and they seek punitive damages. [FN3] The Plaintiffs also have requested a declaratory judgment that the practice violates the public policy of Delaware and undermines the intent of the No Fault Law. Specifically, they ask for "an order declaring denials based on the insurers' medical reports, unauthorized and illegal, an order declaring the practice of unilateral reductions in medical expense payments unauthorized and illegal ..." Pl.'s Compl. at 6. A motion for Class Certification has not yet been made.

> FN3. This is an action seeking recovery of amounts the Plaintiff and the Class have paid for health care expenses or have lost earnings because they were injured in auto accidents and their contractual and statutory benefits were denied based on [the practice in n.2] ... 1. The amounts to be recovered are the sums paid by all who were forced to meet the expenses or losses which should have been met or paid by the Defendants. Pl.'s Compl. at 1.

The Defendants (other than GEICO and PNIC) have filed a motion to dismiss under Rule 12(b)(6), claiming the representative Plaintiffs lack standing to bring suit against them. PNIC has adopted the reasoning of and joined in a limited capacity the Defendants Motion to Dismiss for Lack of Standing. It claims that Galley and other non-PNIC policy holders have no standing to sue it, for the same reasons they have no standing to sue the other insurance companies.

GEICO and PNIC have also filed a Rule 12(b)(6)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Slip Copy
(Cite as: 2005 WL 1249374, *1 (Del.Super.))

Page 146

motion to dismiss, alleging that the Plaintiffs have failed to sufficiently plead the Superior Court Civil Rule 23 class action criteria, and for failure to state a claim upon which relief can be granted. They have been joined in this motion by the other fifteen defendants. More specifically, GEICO and PNIC claim that Plaintiffs 1) have failed to adequately define their class; 2) have not shown how common questions of law or fact predominate over individual questions; 3) have failed to allege how the representative Plaintiffs, Murphy's and Galley's, claims are typical of those of the class members; 4) have not proved that the representative Plaintiffs are adequate to represent the interests of the class members; and, 5) did not allege in their complaint that handling the case as a class action is superior to other means of resolving these disputes. Moreover, these two Defendants argue that even if Plaintiffs had pleaded those Rule 23 requirements, they would not, as a matter of law, be able to meet them. In addition, GEICO and PNIC allege that the Plaintiffs cannot maintain a class action because the relief they seek is primarily monetary. They also claim that the Complaint is not clear enough under Superior Court Rule 8 to give Defendants notice of the nature of the claim (and, in a footnote, that it is prolix, in violation of Rule 8's mandate that a Complaint be "simple, concise and direct")

DISCUSSION

*2 The Plaintiffs, Murphy and Galley do not have standing to sue the Insurance Company Defendants from which they have not purchased no-fault insurance. The Delaware Supreme Court has stated that the law in Delaware is based upon the Supreme Court's interpretation in Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), as it was summarized by the Third Circuit:

(1) the plaintiff must have suffered an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of--the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision

Dover Historical Soc'y, 838 A.2d at 1110, citing, Soc'y Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168, 175-76 (2000).

A plaintiff must establish injury to himself by the parties he wishes to sue. See Weiner v. Bank of King of Prussia, 358 F.Supp. 684, 690 (E.D.Pa.1973) ( "It is a fundamental principle of law that a plaintiff must demonstrate injury to himself by the parties whom he sues before that plaintiff can successfully state a cause of action."). Here, the Plaintiffs have failed to demonstrate they were injured by any of the fifteen insurance companies they are attempting to sue as a class "A plaintiff may not use the procedural device of a class action to boot strap himself into standing he lacks under the express terms of the substantive law." Id. at 694. [FN4] Because Plaintiffs Murphy and Galley suffered no injury at the hands of the fifteen Defendants other than PNIC and GEICO, those Defendants are dismissed from this case for lack of standing.

> FN4. There are no Delaware class action cases which specifically address the issue of a plaintiff's standing to sue a defendant class or a group of defendants. Sections (a) and (b) of Superior Court Civil Rule 23 are identical to the Federal Rule. The Court has reviewed extensively the Federal law regarding standing and discovered that there is a difference of opinion as to how the issue should be addressed. See, e.g., State ex rel. Erie Fire Ins. Co. v. Madden, 204 W.Va. 606, 515 S.E.2d 351, 355 n. 6 (W.Va.Supr.1998) for a discussion of the Federal Courts' views. The question is whether a Court should address the class certification requirements under Federal Rule of Civil Procedure 23 before considering standing or vice versa. If a class is certifiable, then the question becomes whether standing should be addressed to the plaintiff or defendant class as a whole, or examined from each plaintiff to each defendant. See Ortiz v. Fibreboard Corp., 527 U.S. 815, 830-31, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999), Amchem Prods., Inc., 521 U.S. 591, 612-13, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 319 (5th Cir.2002), Payton v. County of Kane, 308 F.3d 673, 678-82 (7th Cir.2002) cert. denied sub nom. Carroll County, III v. Payton, 540 U.S. 812, 124 S.Ct. 61, 157 L.Ed.2d 26 (2003), Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 423 (6th Cir.1998), La Mar v.

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Slip Copy                                                                                                          Page 147
(Cite as: 2005 WL 1249374, *2 (Del.Super.))

H & B Novelty & Loan Co., 489 F.2d 461 (9th Cir.1973); In re Eaton Vance Corp. Sec. Litig., 220 F.R.D. 162 (D.Mass.2004); Weiner v. Bank of King of Prussia, 358 F.Supp. 684 (E.D.Pa.1973). Standing is an issue of state subject matter jurisdiction, however, and under Delaware law, it is not subject to the same Constitutional limitations inherent in a Federal Court's Article III standing analysis. See Dover Historical Soc'y v. City of Dover Planning Comm'n, 838 A.2d 1103, 1111 (Del.2003) ("Unlike the federal courts, where standing may be subject to stated constitutional limits, state courts apply the concept of standing as a matter of self-restraint to avoid the rendering of advisory opinions at the behest of parties who are 'mere intermeddlers."'); Cedar Crest Funeral Home, Inc., v. Lashley, 889 S.W.2d 325 (Tx.Ct.App.1993) (declining to follow the reasoning applied to class standing in Weiner, 358 F.Supp. 684, because it conflicted with the procedural requirements for subject matter jurisdiction under Texas law). Other Delaware Courts have interpreted Chancery Rule 23, which is essentially the same as Superior Court Civil Rule 23, as being procedural in nature, and not jurisdictional. See Wilmington Trust Co. v. Schneider, 320 A.2d 709, 710-11 (Del.1974) (stating that Chancery Rule 23 is procedural and not jurisdictional such that it could not confer jurisdiction upon an equity court for a case which should have been brought in a law court); Delaware Bankers Ass'n v. Div. of Revenue of the Dep't of Finance, 298 A.2d 352, 357 (Del.Ch.1972) (finding Chancery Rule 23 could not be " 'construed to extend or limit the jurisdiction of the Court of Chancery." ' (citation omitted)). It follows that Superior Court Civil Rule 23 is also procedural in nature, and made not be used to expand the Court's jurisdiction through the creation of a class of defendants or plaintiffs, if standing does not otherwise exist. Furthermore, Superior Court Civil Rule 82 states: "These Rules shall not be construed to extend or limit the jurisdiction of the Superior Court or to affect the venue of actions therein." Cf. Delaware Bankers Ass'n, 298 A.2d at 357 (citing Chancery Court Rule 82 in support of the Court's decision that Chancery Rule 23 could not extend the Court's jurisdiction). In sum, despite the nuances at the federal level, this Court will address standing before issues of class certification.

Even if the Court were to find standing, it would still dismiss this class action. The Plaintiffs are seeking a hundred percent return on all of their applicable expenses, stating: "Once an insurer has accepted responsibility for injuries arising from an accident, prompt payment should be made until such time as there is an adjudication adverse to the insured...." Pl.'s Compl. ¶ 36. They claim:

> The medical bills and 'no work' directions of the health care providers for the Class, are prima facie evidence of reasonableness and necessity. The IMEs and cost reduction opinions merely dispute the reasonableness and necessity of the treatment and opinions of the health care providers and the burden of proof should be on the insurers under the stated public policy for No Fault, prompt payment without the necessity for suit.

Pl.'s Compl. ¶ 35.

The Plaintiffs have failed to state a cause of action upon which relief can be granted. As a matter of law, the burden lies on the Plaintiff, not on the insurer, to show the expenses were "reasonable and necessary." 21 Del C. § 2118(a) requires that every owner of a motor vehicle have personal injury insurance providing coverage "for reasonable and necessary expenses incurred within 2 years from the date of the accident." [FN5] The words "reasonable and necessary" qualify the scope of the delineated benefits that an insurance company must pay. In fact, section 2118 has been interpreted as "fix[ing] a statutory minimum rather than a maximum standard of protection." Casson v. Nationwide Ins. Co., 455 A.2d 361, 366 (Del.Super.Ct.1982) (finding that, regarding lost earnings, "reasonable" referred to the amount, while "necessary" meant "those lost earnings which were 'unavoidable' or inescapable" '). Delaware has consistently permitted insurers to investigate the reasonableness of expenses. [FN6]

> FN5. 21 Del. C. § 2118(a)(2)a specifically provides: (a) No owner of a motor vehicle required to be registered in this State, other than a self-insurer pursuant to § 2904 of this title, shall operate or authorize any other person to operate such vehicle unless the owner has insurance on such motor vehicle providing the following minimum insurance coverage: (2)a. Compensation to injured persons for reasonable and necessary expenses incurred within 2 years from the date of the accident for: 1. Medical, hospital, dental, surgical, medicine, x-ray, ambulance, prosthetic services, professional nursing and funeral services. Compensation for funeral services, including all

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Slip Copy
(Cite as: 2005 WL 1249374, *2 (Del.Super.))

Page 148

customary charges and the cost of a burial plot for 1 person, shall not exceed the sum of $5,000. Compensation may include expenses for any nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing. 2. Net amount of lost earnings. Lost earnings shall include net lost earnings of a self-employed person. 3. Where a qualified medical practitioner shall, within 2 years from the date of an accident, verify in writing that surgical or dental procedures will be necessary and are then medically ascertainable but impractical or impossible to perform during that 2-year period, the cost of such dental or surgical procedures, including expenses for related medical treatment, and the net amount of lost earnings lost in connection with such dental or surgical procedures shall be payable. Such lost earnings shall be limited to the period of time that is reasonably necessary to recover from such surgical or dental procedures but not to exceed 90 days. The payment of these costs shall be either at the time they are ascertained or at the time they are actually incurred, at the insurer's option. 4. Extra expenses for personal services which would have been performed by the injured person had they not been injured. 5. "Injured person" for the purposes of this section shall include the personal representative of an estate; provided, however, that if a death occurs, the "net amount of lost earnings" shall include only that sum attributable to the period prior to the death of the person so injured.

FN6. In fact, an insured who wants to challenge an insurer's denial of benefits because of the insurer's belief that they were not reasonable and necessary must bring a claim of bad faith denial of benefits against the insurer. See Albanese v. Allstate Ins. Co., 1998 WL 437370 (Del.Super.Ct.); Watson v. Metro. Prop. & Cas. Ins. Co., 2003 WL 22290906 (Del.Super.Ct.) (bringing claims of bad faith to challenge denials of benefits that the insurers found not to be reasonable and necessary). In order to establish bad faith, a plaintiff "must show that the insurer's refusal to honor [the claim] was clearly without any reasonable justification." Albanese, 1998 WL 437370, at *2.

*3 Furthermore, in Ramsey v. State Farm Mut. Ins. Co., 869 A.2d 327 (Table), 2005 WL 528846, at *1 (Del.) the Supreme Court, in adopting the reasoning of Casson, 455 A.2d 361, stated, "[t]he PIP statute provides recovery only for 'reasonable and necessary' expenses. In order to satisfy that requirement, Ramsey had to establish that her lost wages were unavoidable. Since she offered no evidence on that point, she failed to establish her entitlement to PIP benefits." This ruling directly contradicts the claims of the Plaintiffs that the burden of proof should be on the insurers, and that section 2118 and public policy require full payment of benefits until an adverse judgment is obtained. [FN7]

FN7. With appropriate candor, Plaintiffs' Counsel acknowledged the vulnerability of his position should an insured have the burden to show reasonable and necessary expenses. He brought the Ramsey case to the Court's attention at oral argument. Mr. Davis is a well-respected member of the Bar and has once again acted in a professionally exemplary manner.

In sum, the causes of action brought by Murphy and Galley on behalf of a class of plaintiffs and against the fifteen Defendants and against PNIC and GEICO must be dismissed. The individual claims of Murphy and Galley against PNIC and GEICO survive dismissal, however, because they may have a contract claim against their respective insurance companies. In this regard, their claims must be severed as each only has standing against the company which issued his or her no fault insurance policy. In addition, in response to the Defendants' Motion to Dismiss for the reason that the Complaint is not sufficiently clear under Superior Court Civil Rule 8, pursuant to Superior Court Civil Rule 12(e), the Plaintiffs are required to provide a more definite statement of their respective claims against PNIC and GEICO within thirty days.

Because the class action claims have been dismissed for lack of standing and for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the Court need not address the Defendants' other contentions regarding the Superior Court Civil Rule 23 class certification requirements.

CONCLUSION

Considering the foregoing, Defendants' Motion to Dismiss for Lack of Standing is granted Plaintiffs Murphy' and Galley's claims are dismissed against the Defendants United Services Auto Association, State Farm Mutual Automobile Insurance Company,



Slip Copy
(Cite as: 2005 WL 1249374, *3 (Del.Super.))

Page 149

The Peninsula Insurance Company, Allstate Ins. Co., Hartford Underwriters Ins Co., Nationwide Mut. Ins. Co., Nationwide Assurance, Keystone Ins. Co., Encompass Ins., Pawtucket Mut. Ins. Co., Liberty Mut. Ins. Co., Westfield Ins. Co., Montgomery Mut. Ins Co., Harleysville Mut. Ins. Co., and The Travelers Indemnity Co. The Class allegations of Plaintiffs Murphy and Galley are also dismissed against GEICO and PNIC. All that remains is each Plaintiff's claim against the individual's carrier. The Plaintiffs have thirty days to provide a more definite statement of those claims

IT IS SO ORDERED.

2005 WL 1249374 (Del.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



**TAB 10**

Not Reported in A.2d  
44 UCC Rep.Serv.2d 801  
(Cite as: 2001 WL 541472 (Del.Super.))  
&lt;KeyCite History&gt;

Page 987

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.

OUTDOOR TECHNOLOGIES, INC., Plaintiff,  
v.  
ALLFIRST FINANCIAL, INC., F/K/A First Maryland Bancorp, a Maryland corporation; Allfirst Bank, F/K/A First National Bank of Maryland, a United States Association; and Allfirst Financial Center, N.A., F/K/A First Omni Bank, N.A., a United States Association, Defendants.

No. 99C-09-151-JRS.

Date Submitted: Feb. 9, 2001.  
Date Decided: April 12, 2001.

Defendants' Motion for Summary Judgment. Granted.

Kathleen M. Miller, Esquire, Smith, Katzentstein & Furlow, LLP, Wilmington, Delaware, 19899; Andrew C. Kassner, Esquire, Drinker, Biddle & Reath, LLP, Philadelphia, Pennsylvania. Attorneys for Plaintiff.

Neal J. Levitsky, Esquire, Agostini, Levitsky, Isaacs & Kulesza, Wilmington, Delaware, 19899; James T. Heidelbach, Esquire, Gebhart & Smith, LLP, Baltimore, Maryland. Attorneys for Defendants.

SLIGHTS, J.

I. INTRODUCTION

*1 My predecessor on the Court has stated that "[t]he facts of this case look like a payment systems hypothetical written by a law school professor." [FN1] As usual, an apt observation from a wise jurist. Plaintiff, Outdoor Technologies, Inc. ("Outdoor"), presented a check for payment to defendants, Allfirst Financial Center, N.A. f/k/a First Omni Bank, N.A. ("Omni"), Allfirst Financial, Inc. f/k/a Maryland Bankcorp ("Bancorp") and Allfirst Bank f/k/a First National Bank of Maryland ("FNB"). The defendant banks refused to cash the check. Because the drawer of the check, Hechinger, Inc., filed for bankruptcy protection before the check could be paid, leaving Outdoor without a remedy against Hechinger, Outdoor has determined to pursue its remedies against the banks in this Court.

FN1. Outdoor Technologies, Inc. v. Allfirst Financial, Inc., Del.Super., C.A. No. 99C-09-151 WTQ, Quillen, J., (Jan. 24, 2000), Letter Op. at 2.

At first glance, this controversy would appear to be subsumed within Delaware's Uniform Commercial Code ("UCC"). Article 3 of the UCC governs negotiable instruments [FN2]; Article 4 governs bank deposits and collections. [FN3] The parties agree, however, that statutory remedies under the UCC are not available to Outdoor in this case. Article 3 does not provide a basis for relief when the drawee bank has not accepted the negotiable instrument. [FN4] And Article 4 limits the bank's statutory liability to its customer. [FN5] In this case, the banks' customer was Hechinger as the drawer of the check, not Outdoor. [FN6] Accordingly, left without a UCC remedy, Outdoor has raised common law claims against the banks for breach of a contract to which it was a third party beneficiary, fraud, negligent misrepresentation and civil conspiracy.

FN2. 6 Del. C. § 3-101 et. seq.

FN3. 6 Del. C. § 4-101 et. seq.

FN4. 6 Del. C. § 3-408

FN5. 6 Del. C. § 4-402.

FN6. Id.

This Court has already dismissed Outdoor's breach of contract claim upon concluding that the claim is precluded by the UCC. [FN7] The Court has also determined that Outdoor's claims for fraud (Count II), negligent misrepresentation (Count III) and civil conspiracy (Count IV) are not preempted by the UCC and that Outdoor's complaint states a legally viable claim on each of these legal theories. [FN8] Discovery has run its course and defendants have now moved for summary judgment on all



remaining claims against them. For the reasons that follow, defendants' motion is GRANTED.

> FN7. Outdoor Technologies, Inc., supra.

> FN8. Id.

## II. FACTS

Outdoor is a Delaware corporation with its principle place of business in Macon, Mississippi. [FN9] Outdoor manufactures and distributes garden accessories and related goods such as vinyl fencing, decking and rail material. Outdoor enjoyed an ongoing business relationship with Hechinger, a retail supplier of garden, outdoor and hardware products. On June 2, 1999, Hechinger issued a check for $706,735.62 made payable to Outdoor as delayed payment for goods previously supplied by Outdoor. That check was drawn on Hechinger's account at Omni, although it mistakenly indicated on its face that it was drawn on a Hechinger account at FNB. [FN10] When Outdoor received Hechinger's check it was aware that Hechinger was on the verge of filing for bankruptcy protection. Outdoor's desire to expedite payment of the check, in advance of Hechinger's bankruptcy filing, animated the events which give rise to this litigation.

> FN9. At the time these events took place, Outdoor was a wholly owned subsidiary of Jannock Limited, a Canadian corporation.

> FN10. Hechinger maintained accounts at each of the three defendant banks. Hechinger also printed its own checks. Apparently, Hechinger mistakenly identified FNB as the drawee bank on the printed check even though the check correctly identified the Omni account number.

*2 The Hechinger check was received by Outdoor at its Macon, Mississippi offices on June 4, 1999. Rather than deposit the check in the Outdoor corporate account, and face the delays of the Federal Reserve's inter-bank payment system, the corporate decision-makers at Outdoor determined that Outdoor's controller, John Hurt ("Hurt"), would travel personally to a FNB branch in Baltimore, Maryland to negotiate the check. Hurt's purpose was to secure immediate payment of the check through a wire transfer or receipt of certified funds.

On the morning of June 7, Hurt arrived at the Baltimore FNB branch to present the check for payment. The branch manager informed Hurt that the check was drawn on an Omni account, not a FNB account as indicated on the check, and that FNB could not negotiate the check. The branch manager also provided Hurt with the name of FNB corporate attorney, William Thomas ("Thomas"), to whom Hurt's questions should be addressed. Hurt returned to his hotel room and placed a telephone call to Omni. During that call, Hurt was informed that Omni was owned by Bancorp.

Armed with this information, Hurt traveled to Bancorp's corporate headquarters in downtown Baltimore seeking guidance on the quickest means to get paid on the Hechinger check. Hurt ultimately was directed to Thomas. [FN11] Hurt and Thomas met for between five and fifteen minutes in the Bancorp legal department's lobby area. [FN12] This brief conversation is the genesis of Outdoor's claims of fraud and misrepresentation.

> FN11. As it turned out, Thomas served as corporate counsel to all three corporate affiliates named as defendants: Bancorp, Omni, and FNB.

> FN12. Thomas stated during his deposition that the conversation lasted for five minutes, while Hurt stated that it lasted between ten and fifteen minutes. Because the parties do not dispute the essential content of the conversation, its actual duration is of little import.

The parties agree that during the course of the Hurt/Thomas conversation Thomas inspected the Hechinger check and confirmed that it was drawn on an Omni account. He then advised Hurt that neither FNB nor Bancorp were obligated to negotiate the check and that neither bank would do so. Thomas also generally discouraged Hurt from attempting to negotiate the check in person and, instead, prodded him to deposit the check in Outdoor's depository account and obtain payment of the check through customary channels. Undaunted, Hurt pressed Thomas to commit Omni to negotiate the check if he traveled to the closest Omni branch (located in Millsboro, Delaware). Thomas responded that if Hechinger maintained sufficient funds in the account, and if Hechinger had not yet filed for bankruptcy protection, Omni would negotiate the check upon presentation by Hurt of "proper



Not Reported in A.2d  
(Cite as: 2001 WL 541472, *2 (Del.Super.))

Page 989

authorization." [FN13] Aside from Hurt's mention that "proper authorization" would be required, Thomas and Hurt did not discuss what Omni would require as evidence of Hurt's "proper authorization" to negotiate the check. In his apparent haste to accomplish his mission, Hurt did not inquire what form of authorization would be required by Omni and Thomas did not volunteer this information. [FN14]

> FN13. Thomas' concession was contrary to Hechinger's account agreement with the defendant banks which provided that the banks were not obligated to cash a check made payable to a corporation. The banks' written policies also provided that the banks generally would not certify funds or initiate a wire transfer except at the request of a customer. The proffered reason for these policies is that the bank would bear the risk of loss if it provided immediate funds to the presenter of a check who, for whatever reason, was not authorized to negotiate the check. 6 Del. C. § 3-417.

> FN14. The record reveals that Hurt was aware that banks generally required a board of directors' resolution as evidence of an individual's authorization to conduct banking business on behalf of the corporation. The record also reveals, however, that Hurt had never himself attempted to "cash" a check made payable to Outdoor and that he was aware that others had done so by simply presenting personal identification.

Hurt then contacted his superior, Ian Douglas, to discuss the next move. Hurt and Douglas decided that Hurt should attempt to negotiate the check at Omni's branch in Millsboro. They also decided that for "proper authorization" Hurt would present a letter from Peter Orebaugh ("Orebaugh"), Outdoor's President, indicating that Hurt was authorized to negotiate the check on behalf of Outdoor. That letter, printed on Outdoor stationary, was faxed to Hurt on the morning of June 8, 1999. It read: "Please accept this letter as authorization for John Hurt, Controller of Outdoor Technologies Inc., to certify the check in the amount of $706,735.62 as payment from Hechingers [sic], Inc. Please release a certified check or wire transfer the amount according to the instructions John Hurt will provide." The letter is signed: "Peter Orebaugh, President."

*3 Hurt entered the Omni branch in Millsboro at 9:00 A.M. on the morning of June 8 in possession of both the check and the faxed Orebaugh letter. After some delay, an Omni employee at the branch reported to Hurt that she had been speaking with Thomas on the telephone and that Thomas now wished to speak with Hurt. Thomas informed Hurt that the letter from Orebaugh was not "proper authorization" and that Omni would require a resolution from Outdoor's board of directors authorizing Hurt to negotiate the check. Unable to obtain a board resolution on such short notice, Hurt sent the check, via federal express, to a Detroit, Michigan bank where Outdoor maintained a depository account. As feared by Outdoor, Hechinger initiated its bankruptcy filing on June 11 before the check was paid. This filing froze Hechinger's accounts and prevented Omni from paying the check. Consequently, the check was returned to Outdoor unpaid. The $706,735.62 owed to Outdoor by Hechinger remains outstanding.

## II. STANDARD OF REVIEW

Summary Judgment may only be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. [FN15] The Court must view the evidence of record in the light most favorable to the non-moving party. [FN16] In making its determination, the Court will consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits submitted by the parties. [FN17]

> FN15. Dale v. Town of Elsmere, Del.Supr., 702 A.2d 1219, 1221 (1997) (citation omitted).

> FN16. See Brzoska v. Olson, Del.Supr., 668 A.2d 1355, 1364 (1995) (citation omitted).

> FN17. Super. Ct. Civ. R. 56(c).

The movant bears the initial burden of showing the absence of a material factual dispute. [FN18] Upon sustaining this burden, the burden then shifts to the nonmoving party to demonstrate that a material factual issue exists. [FN19] Neither bare assertions nor conclusory allegations will allow the nonmoving party to meet this burden. [FN20] "Facts adduced under oath by the movant which remain uncontroverted must be assumed to be true." [FN21]

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



FN18. Sterling v. Beneficial Nat'l Bank, N.A., Del.Super., C.A. No. 91C-12-005, Ridgely, P.J. (April 13, 1994), Mem. Op. at 6 (citing Moore v. Sizemore, Del.Supr., 405 A.2d 679, 680 (1979)).

FN19. Id. (citation omitted).

FN20. Id. at 5-6 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Martin v. Nealis Motors, Del.Supr., 247 A.2d 831, 833 (1968)).

FN21. Ward v. Fox & Lazo, Del. Ch., C.A. No. 13582, Chandler, V.C. (July 8, 1996), Letter Op. at 7-8 (citation omitted).

### III. DISCUSSION

#### A. The Choice of Law

The parties disagree on choice of law. Outdoor argues that Delaware law applies; the defendant banks argue that Maryland law applies. The defendants perceive an advantage under Maryland's law with respect to negligent misrepresentation in that Maryland arguably requires privity of contract as a predicate to a duty of care where Delaware law does not. [FN22] The Court is not certain that the distinction appreciated by the parties is actually supported by the case law. In any event, the Court need not resolve this issue. The Court will give Outdoor the benefit of the doubt and apply the arguably less onerous burden imposed by Delaware law. In the Court's view, at the end of the day, the mandated result is not affected by choice of law considerations.

FN22. Compare Weisman v. Connors, Md. Ct.App., 540 A.2d 783, 790-94 (1988)(holding that when claiming only economic loss plaintiff must prove an "intimate nexus" or "special relationship" between the parties to establish a duty of care), with Guardian Constr. Co. v. Tetra Tech Richardson, Inc., Del.Super., 583 A.2d 1378, 1381-86 (1990)(applying Restatement (Second) of Torts, § 552, court recognized a duty of care absent contractual privity where plaintiffs allege only economic loss).

#### B. Count II, Fraud

In Delaware, the elements of fraud are: "1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance." [FN23] Delaware courts require proof of fraud to be made by a preponderance of the evidence. [FN24]

FN23. Stevenson v. Capano Dev., Inc., Del.Supr., 462 A.2d 1069, 1074 (1983)(citing Nye Odorless Incinerator Corp. v. Felton, Del.Super., 162 A. 504, 510-11 (1931); W. Prosser, Law of Torts, 685-86 (4th ed.1971)).

FN24. State v. Gardiner, Del.Super., C.A. No. 98C-02-135, Quillen, J. (June 5, 2000), Letter Op. and Order at 7 (citations omitted).

*4 The Court need not go beyond the first element of Outdoor's prima facie case for fraud to dispose of this claim. The evidence of record simply does not support the contention that Thomas made a false statement to Hurt or any other representative of Outdoor. Thomas advised Hurt that Omni would require the presentation of "proper authorization" before it would negotiate the Hechinger check. This statement was consistent with the direction Thomas provided to the Omni bank branch after Hurt left his office and consistent with banking industry practice. The fact that the conversation did not last long enough for either party to address what would or would not be deemed "proper authorization" is unfortunate but not a basis for actionable fraud. [FN25]

FN25. See Miller v. Fairchild Indus., Inc., Md. Ct. Spec.App., 629 A.2d 1293, 1303 (1993)(a statement that is not false does not support claim of fraud).

Moreover, the statements made by Thomas clearly related to future events. Generally, " 'statements which are merely promissory in nature and expressions as to what will happen in the future are not actionable as fraud." ' [FN26] Only when such statements are made with the present intention not to perform will courts endorse a fraud claim. [FN27] Defendants have presented evidence indicating that Thomas authorized Omni to negotiate the Hechinger check. [FN28] Outdoor has failed in its burden to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in A.2d                                                                                                  Page 991
(Cite as: 2001 WL 541472, *4 (Del.Super.))

present evidence contradicting the banks' proffer. [FN29] The only evidence of record that Thomas did not intend to negotiate the check is that he refused to do so when Hurt presented the check at Omni. "Ordinarily, in the absence of additional circumstances, it will be found that a mere failure to perform is as consistent with an honest intent as with a dishonest one." [FN30]

>FN26. Miller, 629 A.2d at 1302 (quoting Finch v. Hughes Aircraft Co., Md. Ct.App., 469 A.2d 867 (1984)). See also Esso Standard Oil Co. v. Cunningham, Del. Ch., 114 A.2d 380, 383 (1955)("Opinions and statements as to probable future results are not generally fraudulent even though they relate to material matters ....")(citing E. States Petroleum Co. v. Universal Oil Prods. Co., Del. Ch., 3 A.2d 768 (1939)).

>FN27. Miller, 629 A.2d at 1302 (citations omitted).

>FN28. Specifically, Thomas testified that "If [Hurt] showed up [at the Omni branch] with the proper authorities [sic] and there was money in the account and [Hechinger] hadn't filed bankruptcy, I was going to go ahead and cash it for him." (D.I. 47, Ex. 5 at 101) Defendants also presented the testimony of Shaun Murphy, a senior credit officer at FNB. Murphy's testimony establishes that he and Thomas discussed the Hurt situation, and that Thomas was prepared to authorize Omni to pay the Hechinger check. (D.I. 47, Ex. 11 at 28-36)

>FN29. Moore, 405 A.2d at 680.

>FN30. Murphy v. T.B. O'Toole, Inc., Del.Super., 87 A.2d 637, 638 (1952).

Finally, it is apparent from the record that Hurt made no effort during his discussions with Thomas to ascertain what would suffice as "proper authorization." Although the "deliberate concealment of material facts would qualify as a false representation," [FN31] the Court cannot conclude on this record that a jury could find Thomas deliberately concealed anything from Hurt. In this regard, it is particularly probative that Hurt had absolutely no evidence of authorization from Outdoor to negotiate the check at the time he first discussed the issue with Thomas. It is also clear that Hurt had not yet received his "marching orders" to proceed to Omni when he discussed procedures with Thomas. It cannot be said, then, that Thomas even knew what Hurt was going to do next with the check when he discussed Omni's requirements with Thomas, much less what evidence of authorization Hurt might present to Omni if he attempted to negotiate the check. And, in light of these and the other circumstances of the conversation, it cannot be said that Thomas deliberately concealed either that the faxed letter would be insufficient evidence of authorization or that only a board resolution would be sufficient.

>FN31. In re Asbestos Litigation, Spong Trial Group, Del.Super., C.A. No. 90C-10-72, Gebelein, J. (June 2, 1993), Mem. Op. at 5 (citing Gaffin v. Teledyne, Inc., Del.Supr., 611 A.2d 467, 472 (1992)).

When a plaintiff fails to present sufficient evidence of a factual controversy with respect to an essential element of a claim after a full and fair opportunity to discover such evidence, summary judgment is proper. [FN32] Defendants' Motion for Summary Judgment as to Count II (fraud) is GRANTED.

>FN32. Burkhart v. Davies, Del.Supr., 602 A.2d 56, 59 (1991)(quoting Celotex, 477 U.S. at 322-23); Murphy v. Berlin Constr. Co., Del.Super., C.A. 98C-01-097, Quillen, J. (Jan. 22, 1999), Letter Op. at 4-7; Giordano v. Marta, Del. Ch., C.A. No. 11613, Lamb, V.C. (Apr. 27, 1998), Mem. Op. at 12-14; In re Asbestos Litigation, supra, Mem. Op. at 4 (citations omitted); Miller, 629 A.2d at 1303.

C. Count III, Negligent Misrepresentation

*5 Under Delaware law, allegations of negligent representation require proof of the following elements: "(1) a pecuniary duty to provide accurate information, (2) the supplying of false information, (3) failure to exercise reasonable care in obtaining or communicating information, and (4) a pecuniary loss caused by justifiable reliance upon the false information." [FN33]

>FN33. Outdoor, supra, Letter Op. at 6 (citations omitted).

As was the case with Outdoor's claim of fraud, Outdoor cannot sustain a claim of negligent misrepresentation when it has failed to produce any



Not Reported in A.2d  
(Cite as: 2001 WL 541472, *5 (Del.Super.))

Page 992

evidence that the defendant banks supplied false information. [FN34] Since the Court has already concluded that Thomas' statement incontrovertibly was not false or on its face misleading, the Court would be inclined to stop its analysis here and to enter summary judgment in favor of the defendants but for Outdoor's contention that Thomas negligently misrepresented facts by omission. [FN35] Outdoor's presentation at oral argument suggested that this, in fact, is Outdoor's showcase argument. Accordingly, the Court will address this argument and the remaining elements of plaintiff's prima facie burden on this claim.

> FN34. Darnell v. Myers, Del. Ch., C.A. No. 14859-NC, Steele, V.C. (May 27, 1998), Mem. Op. at 12 ("If plaintiffs fail to prove any of the four required elements, their claim for negligent misrepresentation must fail").

> FN35. See, e.g., Restatement (Second) of Torts § 551 ("Section 551"); Schmuesser v. Schmuesser, Del.Supr., 559 A.2d 1294, 1295-96 (1989).

Section 551 provides: "One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question." [FN36] The question of whether a duty exists, while a mixed question of law and fact, is for the Court to decide as a matter of law. [FN37]

> FN36. Section 551(1) (emphasis supplied).

> FN37. Naidu v. Laird, Del.Supr., 539 A.2d 1064, 1070 (1988).

Legal duties arise from relationships. [FN38] At the heart of Section 551 is a recognition that certain "business" relationships which evolve in the context of "business transaction[s]" can give rise to a duty of complete disclosure. Restatement (Second) of Torts § 552(1) speaks in terms of disclosures made in the context of a transaction in which the speaker has a "pecuniary interest." Delaware common law embraces a "pecuniary duty to provide accurate information." [FN39] In each instance, the law contemplates that a duty of disclosure will arise when the parties are in the midst of a "business relationship" from which they expect to derive "pecuniary" benefits. Thus, while contractual privity may not be required to form a duty, something more than a casual business encounter must be demonstrated before a duty of care will be imposed.

> FN38. Id. (citing W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser & Keeton on Torts § 236 (5th ed.1984).

> FN39. Wolf v. Magness Constr. Co., Del. Ch., C.A. No. 13004, Chandler, V.C. (Sept. 11, 1995), Mem. Op. at 3.

Outdoor cannot establish the requisite relationship with the defendant banks to justify the duty of complete candor it urges the Court to impose here. Outdoor had no prior relationship with the defendant banks; prior to their meeting, Thomas had never met Hurt. During an unscheduled encounter in the lobby of defendants' legal offices, Hurt asked Thomas some questions and Thomas endeavored to respond. Outdoor has failed to identify what pecuniary interest Thomas or the banks he represented might have been protecting in the course of the discussions with Hurt and the Court cannot discern any such interest from the record sub judice. [FN40] Consequently, the Court will not impose an affirmative duty of complete disclosure upon the defendants under these circumstances.

> FN40. Indeed, Thomas' concession to authorize Omni to negotiate the check was contrary to bank policy and possibly exposed the bank to a loss if it later turned out that Hurt was not authorized to cash the check.

*6 Even assuming arguendo that the Court found a duty, and a negligent failure to provide complete information, summary judgment, nevertheless, is appropriate because Outdoor could not, as a matter of law, reasonably have relied upon Thomas' vague statement regarding "proper authorization" as the sole direction for its future conduct. [FN41] "A party is chargeable with the knowledge of what may be reasonably found if they make an investigation." [FN42] The undisputed record reveals that neither Hurt nor his superiors at Outdoor took the time to investigate what was required to accomplish their goal of prompt payment of the Hechinger check. For

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in A.2d  
(Cite as: 2001 WL 541472, *6 (Del.Super.))

Page 993

his part, Hurt was aware that banks generally required individuals to present board resolutions when conducting business with corporate bank accounts. A simple question from him in advance of his "mad dash" to Millsboro would have revealed that Omni's practice was no different than the industry practice. Under these circumstances, the Court concludes that Hurt's reliance on the vague reference to "proper authorization" was not reasonable as a matter of law. [FN43]

> FN41. Sipple v. Kaye, Del.Super., C.A. No. 83C-01-1-CV, Del Pesco, J. (Oct. 30, 1995), Order at 2 (finding, as a matter of law, that plaintiff could not reasonably have relied on statements alleged to have been misleading).

> FN42. Ward, supra, Letter Op. at 8 (citing Lock v. Schreppler, Del.Super., 426 A.2d 856, 862 (1981)); Stidham v. Kinnamon, Del.Super., C.A. No. 86C-AP-18, Ridgely, J. (Dec. 29, 1988), Mem. Op. at 7.

> FN43. Ward, supra, Letter Op. at 11-12.

Defendant's Motion for Summary Judgment as to Count III (negligent misrepresentation) is GRANTED.

D. Count IV, Civil Conspiracy

Under both Maryland and Delaware law, allegations of civil conspiracy cannot be sustained as an independent tort, but rather the allegations must relate to the completion of a tort independent of the conspiracy itself. [FN44] Since the Court has determined that Outdoor's fraud and negligent misrepresentation claims are not viable as a matter of law, Outdoor's civil conspiracy claim also must fail as there is no independent tort to sustain it. Accordingly, Defendants' Motion for Summary Judgment on Count IV (civil conspiracy) is GRANTED.

> FN44. See, e.g., Connolly v. Labowitz, Del.Super., 519 A.2d 138, 143 (1986)(citing Phoenix Canada Oil Co. v. Texaco, Inc., D. Del., 560 F.Supp. 1372, 1388 (1983); McLaughlin v. Copeland, D. Del., 455 F.Supp. 749, 752 (1978)); Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc., Md. Ct.App., 665 A.2d 1038, 1045 (1995)(citing Alexander v. Evander, Md. Ct.App.,

650 A.2d 260, 265 n. 8 (1994)).

IV. CONCLUSION

Outdoor has failed to present any evidence that the defendant banks made a false statement or that they wrongfully withheld material information. This failure of proof in the record, in the face of evidence that the banks were truthful in their discussions with Outdoor, requires that summary judgment be entered on the fraud, negligent misrepresentation and civil conspiracy claims.

IT IS SO ORDERED.

2001 WL 541472 (Del.Super.), 44 UCC Rep.Serv.2d 801

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



**TAB 11**

Not Reported in A.2d  
54 UCC Rep.Serv.2d 1073  
(Cite as: 2004 WL 2191030 (Del.Super.))  
<KeyCite Citations>

Page 677

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.

Lavon PENDER, Plaintiff,  
v.  
DAIMLERCHRYSLER CORPORATION, Defendant.

No. Civ.A.03C12022FSS.

Submitted April 1, 2004.  
Decided July 30, 2004.

Upon Defendant's Motion to Dismiss--Granted.

Renee D. Veney, Kimmel & Silverman, P.C., Wilmington, Delaware, for Plaintiff.

Tracy A. Burleigh, Marshall Dennehey Warner Coleman & Goggin, Wilmington, Delaware, for Defendant.

OPINION and ORDER

SILVERMAN, J.

*1 This case involves an automobile, and alleged violations of both Delaware and federal, consumer protection statutes. Plaintiff's car developed a problem, which persisted almost from when he bought it until after his extended warranty expired. After Plaintiff had driven 75,000 miles, and the warranty ended, Plaintiff filed suit for the car's contract price plus nearly triple that amount in statutory damages, $100,000. This decision addresses when causes of action accrue under various consumer laws, for statute of limitations purposes.

In Delaware, actions based on statutory violations are governed by a three-year statute of limitations. [FN1] Further, actions based on the federal Magnuson-Moss Act are governed by the four-year statute of limitations in Delaware's Uniform Commercial Code, § 2-725(1). Plaintiff's claims were filed outside all arguably applicable limitations periods, including strictly hypothetical ones used by the court merely for argument's sake. Because of this, and the fact that Plaintiff's warranties are not the kind that actually extend the statute of limitations, Plaintiff's claims are barred.

FN1. 10 Del. C. § 8106.

I.

On March 10, 1999, Plaintiff, Lavon Pender, purchased a new 1999 Jeep Grand Cherokee from Gambacorta Chrysler Jeep, one of Defendant DaimlerChrysler's authorized dealers. Along with the car, Plaintiff acquired a standard warranty providing that Defendant promised to cover the cost of parts and labor to repair components defective in material, workmanship or factory preparation for three years or 36,000 miles, whichever occurred first. Also, Plaintiff purchased a service contract, effective when the basic warranty expired. The service contract was for six years or 75,000 miles, whichever came first, and provided that Defendant promised to pay the total cost for parts and labor to correct defects in materials or workmanship, less a fifty-dollar deductible per visit.

The car had various problems--the remote in March 1999, ashtray and wiper blades in September 1999, seat frame in August 2001 and blower fan in January 2002. Each time Plaintiff returned the car to the dealer. Plaintiff also complained twice about a stalling problem in July and September, 1999.

More importantly, Plaintiff first encountered what would become an ongoing idling problem on July 20, 1999. Plaintiff took the car back to the dealer, and again on October 1, 1999, October 29, 1999, November 12, 1999 and November 17, 1999. On all but one occasion the dealer verified that the idling problem existed and attempted repair. Plaintiff was never charged for the repairs. Plaintiff complained again about the idling problem on November 15, 2001, and for the last time on July 8, 2003. By then, the car was over four years old and it had 74,906 miles. It also still has the idling problem. Presumably, the 2003 repair visit was meant to establish that the problem that existed in 1999 and which was worked on through 2001 was still extant when the warranty expired.

*2 Plaintiff contends that Defendant's failure to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in A.2d  
(Cite as: 2004 WL 2191030, *2 (Del.Super.))

Page 678

repair the car's defects violates Delaware's Automobile Warranty Act, and in turn, Delaware's Consumer Fraud Act, and the federal Magnuson-Moss Act. Plaintiff further contends that, as a result of Defendant's misrepresentations about the car and attendant warranty, Defendant violated the Deceptive Trade Practices Act. Defendant counters simply that all of Plaintiff's claims are barred by applicable statutes of limitations. According to Defendant, Plaintiff filed suit after any remotely conceivable limitations period. Plaintiff retorts that Defendant's repeated attempts to fix the car tolled the limitations period. According to Plaintiff the limitations period did not begin to run until the last repair attempt or the warranty's expiration in 2003. Thus, Plaintiff had until 2006 or 2007 to file suit concerning the problem that appeared in 1999.

II.

Procedurally, on December 2, 2003, Pender filed a complaint against DaimlerChrysler alleging, as mentioned, violations of four statutes in connection of his purchase of the Jeep Grand Cherokee: Delaware's Automobile Warranty Act, [FN2] or Lemon Law, Consumer Fraud Act [FN3] and Deceptive Trade Practices Act, [FN4] and the federal Magnuson-Moss Act. [FN5] Chrysler filed a motion to dismiss on January 2, 2004 and Pender answered on January 20, 2004. Oral argument on the motion to dismiss was held on February 19, 2004. Subsequently, on March 11, 2004, Chrysler filed an opening brief in support of its motion. On March 26, 2004, Pender filed an answering brief in opposition to Chrysler's motion, and Chrysler completed the motion practice by filing a reply brief on April 1, 2004.

FN2. 6 Del. C. § 5001, et seq.

FN3. 6 Del. C. § 2511, et seq.

FN4. 6 Del. C. § 2531, et seq.

FN5. 15 U.S.C. § 2301, et seq.

III.

Under Superior Court Civil Rule 12(b)(6), a motion to dismiss is appropriate where plaintiff has failed to state a claim upon which relief can be granted. All allegations made in the complaint must be accepted as true. [FN6] The complaint can only be dismissed if it is without merit as to a matter of fact or law. [FN7] A motion to dismiss must be denied, however, if plaintiff may recover under any reasonably conceivable set of circumstances. [FN8] Where a defendant supports its pleading with affidavits and depositions, the motion to dismiss is treated as a motion for summary judgment and disposed of as provided in Rule 56. [FN9]

> FN6. American Insurance Company v. Material Transit, Incorporated, 446 A.2d 1101, 1102 (Del.Super.Ct.1982).
>
> FN7. Diamond State Telephone Company v. University of Delaware, 269 A.2d 52, 58 (Del.1970).
>
> FN8. Spence v. Funk, 396 A.2d 967, 968 (Del.1978)(citing Klein v. Sunbeam Corporation, 94 A.2d 385, 391 (Del.1952)).
>
> FN9. Shultz v. Delaware Trust Company, 360 A.2d 576, 578 (Del.Super.Ct.1976)(citing Brown v. Colonial Chevrolet Company, 249 A.2d 439, 441-42 (Del.Super.Ct.1968)).

IV.

As mentioned, the issue is whether Plaintiff's claims are barred by the statutes of limitations, three years as to Plaintiff's state law-based claims and four years as to his Magnuson-Moss Act claim. Each of the claims is indeed barred. The "Lemon Law," Consumer Fraud Act and Deceptive Trade Practices Act claims are barred by § 8106 of Title 10, and the Magnuson-Moss Act claim by § 2-725(1) of Title 6. Because the warranty is for repair or replacement, and not future performance, the four-year limitations period in § 2-725(1) applies and is not extended under the "future performance" exception.

A. Three-Year Statute of Limitations

*3 Section 8106 states:
... no action based on a statute ... shall be brought after the expiration of 3 years from the accruing of the cause of such action.... [FN10]

> FN10. 10 Del. C. § 8106. See generally Butler v. Butler, 222 A.2d 269, 272 (Del.1966)(confining

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in A.2d  
(Cite as: 2004 WL 2191030, *3 (Del.Super.))

Page 679

"action based on a statute" to actions to recover money or property where new right created by statute). The three-year period begins to run when a cause of action accrues. [FN11] A cause of action accrues on the date plaintiff can first bring an action. [FN12] Put another way, the limitations period "begins to run at the time of the wrongful act." [FN13]

FN11. Dofflemyer v. W.F. Hall Printing Company, 558 F.Supp. 372, 379 (D.Del.1983).

FN12. Curran v. Time Insurance Company, 644 F.Supp. 967, 972 (D.Del.1986). See generally 6 Del. C. § 5002 (Lemon Law duty to repair applies only after consumer reports nonconformity to seller within one year of automobile's delivery).

FN13. David B. Lilly Company, Incorporated v. Fisher, 18 F.3d 1112, 1117 (3d Cir.1994) (citations omitted).

Plaintiff's Lemon Law claim most likely accrued on July 20, 1999, the date he reported the idling problem to the dealer. Before then, Plaintiff had not experienced major problems with the car and he could not have thought bringing suit would be necessary. When Plaintiff first reported the idling problem, however, he triggered the Lemon Law and the three-year limitations period under § 8106 began to run. Plaintiff's suit, filed December 2, 2003, is outside the limitations period by more than a year.

Plaintiff's Consumer Fraud Act cause of action is similarly barred by the statute of limitations. A violation of the Lemon Law automatically constitutes a violation of the Consumer Fraud Act. [FN14] Assuming that Defendant violated the Lemon Law, Plaintiff's July 20, 1999 Lemon Law accrual date is the Consumer Fraud Act accrual date. Again, because Plaintiff filed suit on December 2, 2003, he was late by more than a year.

FN14. 6 Del. C. § 5009.

Plaintiff's Deceptive Trade Practices Act cause of action is likewise barred, but in a slightly different time frame. Plaintiff alleges the statute was violated when Defendant made incorrect representations about the vehicle's characteristics and quality, and that repairs would be made under the warranty. Those representations are generally made at the time of purchase. The wrongful act occurred, and the statute of limitations began to run, then, on the car's purchase date, March 10, 1999. Moreover, the idling problem, reported by Plaintiff on July 20, 1999, implicitly contradicted representations concerning quality made by Defendant when the car was sold. Therefore, at the latest, Plaintiff was required to bring this claim by July 20, 2002.

B. "Time of Discovery" Rule Inapplicable

Even a gratuitous, lenient application of the Lemon Law does not save Plaintiff. Under the law:
(a) It shall be presumed that a reasonable number of attempts have been undertaken to conform a new automobile to the manufacturer's express warranty if ...:
(1) [s]ubstantially the same nonconformity has been subject to repair or correction 4 or more times by the manufacturer, its agents or its dealers and the nonconformity continues to exist.... [FN15]

FN15. 6 Del. C. § 5004. Here, Plaintiff returned the car to the dealer five times between July 20, 1999 and November 17, 1999 for the idling problem. After the fifth failed repair attempt, if not before, Plaintiff undeniably knew that the car's idling problem was a continually existing nonconformity.

Relying on Pack & Process, Incorporated v. Celotex Corporation, [FN16] Plaintiff essentially argues that the "time of discovery" rule applies to his three, state law-based claims. That rule provides for tolling of the statute of limitations where "an injury was inherently unknowable" and the "injured party ... was blamelessly ignorant." [FN17] In Pack & Process, the injury was inherently unknowable to plaintiff. There, defendant roof manufacturer's agents, using their expertise, were contractually required to determine whether a defect existed. Because plaintiff in Pack & Process did not have expertise, any injury there was inherently unknowable to plaintiff. Further, plaintiff was deemed blamelessly ignorant of the problem's severity because defendant represented that necessary repairs were a result of ordinary wear and tear when in fact they were not.

FN16. 503 A.2d 646 (Del.Super.Ct.1985).

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in A.2d
(Cite as: 2004 WL 2191030, *3 (Del.Super.))

Page 680

FN17. Id. at 650.

*4 Unlike Pack & Process, the injury here was not inherently unknowable and Plaintiff was not blamelessly ignorant. On the contrary, Plaintiff's repeatedly returning the car to the dealer undeniably establishes that Plaintiff was aware of the nonconformity, before the fifth repair attempt. But, even assuming arguendo that the statute of limitations did not begin to run until after the fifth repair attempt on November 17, 1999, Plaintiff still missed the deadline by more than a year.

C. Magnuson-Moss Act

Remaining is Plaintiff's Magnuson-Moss Act claim. That Act, inter alia, is tied to Delaware's version of the Uniform Commercial Code, [FN18] and claims brought under the Act are governed by the statute of limitations in the UCC. [FN19] Section 2-725 of Title 6 states:

FN18. 6 Del. C. § 1-101, et seq.

FN19. Dalton v. Ford Motor Company, Del.Super., C.A. No. 00C-09-155, Carpenter, J. (Feb. 28, 2002).

(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued ...
(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made.... [FN20]

FN20. 6 Del. C. § 2-725. See also Wilson v. Class, 1992 WL 68920, at *3 (Del.Super.)(warranty limitations period accrues on date defendant charged with breach tenders delivery of goods). The "time of discovery" rule [FN21] has not been extended to warranty cases. [FN22] Rather, the purchase date is paramount. [FN23]

FN21. See generally Kaufman v. C.L. McCabe & Sons, Incorporated, 603 A.2d 831, 835 (Del.1992)(where injury is "inherently unknowable" and plaintiff is "blamelessly ignorant," limitation period does not begin running until plaintiff has reason to know wrong committed).

FN22. S & R Associates, L.P. v. Shell Oil Company, 725 A.2d 431, 435 (Del.Super.Ct.1998)(citing Elmer v. Tenneco Resins, Incorporated, 698 F.Supp. 535, 539 (D.Del.1988)).

FN23. S & R Associates, 725 A.2d at 435 (citing Harvey v. Sears, Roebuck & Company, 315 A.2d 599, 601 (Del.Super.Ct.1973)).

Plaintiff's Magnuson-Moss Act claim is barred by the statute of limitations. Defendant tendered delivery of Plaintiff's car on March 10, 1999. Thus, any breach occurred on that date. Plaintiff was required under 6 Del. C. § 2-725 to file an action by March 10, 2003. The "time of discovery" rule does not apply to this, a warranty case. But even if the rule applied, Plaintiff would still have missed the deadline. Using Pack & Process's reasoning, the statute of limitations would have begun to run on this claim November 17, 1999. Plaintiff filed suit more than two weeks after November 17, 2003, the hypothetical deadline.

D. "Future Performance" Exception Inapplicable

Plaintiff's final argument, that this case falls within the "future performance" exception to § 2-725, is equally unavailing. Section 2-725, subsection 2, states:
... where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered. [FN24]

FN24. 6 Del. C. § 2-725(2). Ontario Hydro v. Zallea Systems, Incorporated [FN25] is helpful. In that case, a contract between buyer and seller for expansion joints included language requiring that, if at any time up to twelve months following acceptance of the equipment by the buyer the equipment should succumb to defects, the seller had to repair all defects. Ontario Hydro held that this was a repair or replacement warranty, not a future performance warranty. Essentially, a future performance warranty must "expressly provide some form of guarantee that the product will perform in the future as promised." [FN26] Conversely, a repair or replacement warranty merely provides that "if a product fails or becomes defective, the seller will replace or repair" the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in A.2d  
(Cite as: 2004 WL 2191030, *4 (Del.Super.))

Page 681

product. [FN27] Distinguishing between the two, a repair or replacement warranty "merely provides a remedy if the product becomes defective," while a future performance warranty "guarantees the performance of the product itself...." [FN28]

FN25. 569 F.Supp. 1261 (D.Del.1983).

FN26. Id. at 1266.

FN27. Id.

FN28. Id.

*5 The warranties here are repair or replacement warranties. Even though Plaintiff purchased an extended, service contract, the "future performance" exception is inapplicable. Under the limited express warranty of three years or 36,000 miles, whichever occurred first, Defendant agreed to cover the cost of parts and labor needed to repair any defective, covered component. Similarly, under the service contract of six years or 75,000 miles, whichever occurred first, Defendant agreed to pay the total cost to correct any defective, covered component. The warranties do not include performance assurances by Defendant or guarantees that repairs will be unnecessary. Plaintiff's claims are barred by the statute of limitations as explained above.

V.

In closing, the court understands the dilemma with which Plaintiff was confronted. Anyone who has owned a car with an ongoing problem appreciates the inconvenience and frustration Plaintiff experienced. Deciding to forsake the service department and go to court is daunting. Nevertheless, the statute of limitations does not let consumers have it both ways. Absent misrepresentations or fraud, which are not alleged here, plaintiffs cannot wait five years and put 75,000 miles on a "lemon" before filing suit. They must go to court in the proper time frame.

VI.

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

IT IS SO ORDERED.

2004 WL 2191030 (Del.Super.), 54 UCC Rep.Serv.2d 1073

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo