# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PENNSYLVANIA EMPLOYEE BENEFIT TRUST FUND, on behalf of itself and all others similarly situated, JOSEPH MACKEN, and COMMISSIONER LINDA A. WATTERS<br><br>Plaintiffs,<br><br>v.<br><br>ZENECA, INC. and ASTRAZENECA PHARMACEUTICALS, LP,<br><br>Defendants. | Civ. No. 05-075-ER<br>(Lead Case) |

## DEFENDANTS' REPLY BRIEF
## IN SUPPORT OF THEIR MOTION TO DISMISS

SIDLEY AUSTIN LLP
Mark E. Haddad
Alycia A. Degen
Joshua E. Anderson
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013
(213) 896-6000
mhaddad@sidley.com
adegen@sidley.com
janderson@sidley.com

SIDLEY AUSTIN LLP
John W. Treece
One South Dearborn
Chicago, IL  60603
(312) 853-7000
jtreece@sidley.com

McCARTER & ENGLISH, LLP
Michael P. Kelly (DE ID No. 2295)
Daniel M. Silver (DE ID No. 4758)
Renaissance Center
405 North King Street, 8th Floor
Wilmington, DE  19899
(302) 984-6300
mkelly@mccarter.com
dsilver@mccarter.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 1

I.  THE LAWS OF PLAINTIFFS' HOME STATES – NOT DELAWARE LAW –
    GOVERN PLAINTIFFS' CLAIMS ..................................................................... 1

II.  PLAINTIFFS FAIL TO IDENTIFY ANY ALLEGATIONS THAT ESTABLISH
     THE REQUIRED CAUSATION AND/OR RELIANCE AND INJURY ............ 5

    A.  Plaintiffs Do Not Dispute That Their Negligent Misrepresentation Claims
    Should Be Dismissed For Failure To Allege Reliance .................................... 6

    B.  Plaintiffs' Consumer Fraud Claims Should Be Dismissed For Failure To
    Adequately Allege Causation And/Or Reliance And Injury ........................... 6

        1.  Plaintiffs Fail To Allege Causation Or Reliance ..................................... 6

            a.  Plaintiffs Misconstrue Michigan, Nevada, New York, Pennsylvania,
        And Wisconsin Consumer Fraud Law ........................................... 7

            b.  Plaintiffs Have Failed To Adequately Allege Causation Even Under
        The Delaware Consumer Fraud Act ............................................. 10

            c.  *Warfarin* And *Desiano* Are Inapposite ....................................... 11

            d.  Paragraph 178 Of The Amended Complaint Does Not Establish
        Causation Or Reliance .................................................................. 14

        2.  Plaintiffs Fail To Allege Injury ............................................................. 15

        3.  TPP Plaintiffs Lack Standing Under The CPL And MCPA ................... 17

    C.  Associational Plaintiffs Fail To Allege Article III Standing ........................ 18

III.  PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED ................. 19

IV.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ........................ 19

CONCLUSION .............................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agostino v. Quest Diagnostics Inc.*,
   256 F.R.D. 463 (D.N.J. 2009) .................................................................... 4

*Alberton v. Commw. Land Title Ins. Co.*,
   247 F.R.D. 469 (E.D. Pa. 2008) ................................................................ 7

*Aronson v. GreenMountain.com*,
   809 A.2d 399 (Pa. Super. 2002) ............................................................... 8

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................................... 5, 13, 16

*Balderston v. Medtronic Sofamor Danek, Inc.*,
   285 F.3d 238 (3d Cir. 2002) .................................................................... 17

*Barbara's Sales, Inc. v. Intel Corp.*,
   227 Ill. 2d 45, 879 N.E.2d 910 (2007) .................................................. 2, 4

*Baron v. Pfizer, Inc.*,
   42 A.D.3d 627, 840 N.Y.S.2d 445 (2007) .............................................. 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................ 5, 13

*Berry v. Budget Rent A Car Sys., Inc.*,
   497 F. Supp. 2d 1361 (S.D. Fla. 2007) .................................................... 2

*Cent. Reg'l Employees Benefit Fund v. Cephalon, Inc.*,
   No. 09-3418 (MLC), 2009 WL 3245485 (D.N.J. Oct. 7, 2009) ......... 13, 17

*Chin v. Chrysler Corp.*,
   182 F.R.D. 448 (D.N.J. 1998) .................................................................. 2

*Clay v. Am. Tobacco Co.*,
   188 F.R.D. 483 (S.D. Ill. 1999) ......................................................... 2, 11

*Commw. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
   836 F.2d 173 (3d Cir. 1988) .................................................................. 15

*Commw. v. TAP Pharm. Prods., Inc.*,
   885 A.2d 1127 (Pa. Commw. Ct. 2005) ................................................. 17

*Conley v. Gibson,*
    355 U.S. 41 (1957) ........................................................................................ 13

*Depriest v. AstraZeneca Pharms. L.P.,*
    No. 08-1257, --- S.W.3d ---, 2009 Ark. 547, 2009 WL 3681868 (Ark. Nov. 5, 2009).....13, 20

*Desiano v. Warner-Lambert Co.,*
    326 F.3d 339 (2d Cir. 2003)........................................................................ 11, 12, 13

*Dix v. Am. Bankers Life Assurance Co.,*
    429 Mich. 410, 415 N.W.2d 206 (1987) .......................................................... 9

*Eames v. Nationwide Mut. Ins. Co.,*
    No. 08-4125, 2009 WL 3041997 (3d Cir. Sept. 24, 2009) .................................... 5

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,*
    482 F.3d 247 (3d Cir. 2007)........................................................................... 20

*Frederico v. Home Depot,*
    507 F.3d 188 (3d Cir. 2007).......................................................................... 15

*Gale v. Int'l Bus. Machs. Corp.,*
    9 A.D.3d 446, 781 N.Y.S.2d 45 (N.Y. App. Div. 2004) ..................................9, 10

*Grant Thornton LLP v. Suntrust Bank,*
    133 S.W.3d 342 (Tex. App. 2004) .................................................................. 3

*H-M Wexford LLC v. Encorp, Inc.,*
    832 A.2d 129 (Del. Ch. 2003)......................................................................... 6

*Hendricks v. DSW Shoe Warehouse, Inc.,*
    444 F. Supp. 2d 775 (W.D. Mich. 2006) ......................................................... 9

*Hunt v. U.S. Tobacco Co.,*
    538 F.3d 217 (3d Cir. 2008).......................................................................... 7, 8

*In re Actimmune Mktg. Litig.,*
    614 F. Supp. 2d 1037 (N.D. Cal. 2009) ........................................................... 14

*In re Actimmune Mktg. Litig.,*
    No. C 08-02376, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009)................................13, 14, 19

*In re Bextra & Celebrex Mktg. Sales Prac. & Prod. Liab. Litig.,*
    495 F. Supp. 2d 1027 (N.D. Cal. 2007) ...............................................................17, 18, 19

*In re Bridgestone/Firestone, Inc.,*
    288 F.3d 1012 (7th Cir. 2002)........................................................................ 2, 4

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
   177 F.R.D. 360 (E.D. La. 1997) ............................................................ 2

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
   174 F.R.D. 332 (D.N.J. 1997) ............................................................. 2

*In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*,
   170 F.R.D. 417 (E.D. La. 1997) ............................................................ 2

*In re Mercedes-Benz Tele Aid Contract Litig.*,
   257 F.R.D. 46 (D.N.J. 2009) ............................................................ 2, 3

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   230 F.R.D. 61 (D. Mass. 2005) ............................................................ 2

*In re Relafen Antitrust Litig.*,
   221 F.R.D. 260 (D. Mass. 2004) ............................................................ 2

*In re Rezulin Prods. Liab. Litig.*,
   210 F.R.D. 61 (S.D.N.Y. 2002) ............................................................ 2

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
   No. 2:06-cv-5774 (SRC), 2009 WL 2043604 (D.N.J. July 10, 2009) ............................ 12, 14

*In re Toshiba Am. HD DVD Mktg. & Sales Prac. Litig.*,
   No. 08-939 (DRD), 2009 WL 2940081 (D.N.J. Sept. 11, 2009) .................................. 14, 16

*In re Warfarin Sodium Antitrust Litig.*,
   214 F.3d 395 (3d Cir. 2000) ............................................................ 11, 12, 13, 16

*Kantner v. Merck & Co., Inc.*,
   No. 49D060411PL002185, 2007 WL 3092779 (Ind. Super. Ct. Apr. 18, 2007) .................. 16

*Kelley v. Microsoft Corp.*,
   251 F.R.D. 544 (W.D. Wash. 2008) ............................................................ 3

*Kussy v. Home Depot U.S.A. Inc.*,
   No. 06-12899, 2006 WL 3447146 (E.D. Mich. Nov. 28, 2006) ............................ 9

*Lony v. E.I. Du Pont de Nemours & Co.*,
   886 F.2d 628 (3d Cir. 1989) ............................................................ 5

*Lyon v. Caterpillar, Inc.*,
   194 F.R.D. 206 (E.D. Pa. 2000) ............................................................ 2, 3

*Miller v. Gen. Motors Corp.*,
   Nos. 98 C 7386 & 98 C 2851, 2003 WL 168626 (N.D. Ill. Jan. 26, 2003) ............................ 2

iv

*Molley v. Five Town Chrysler, Inc.*,
  No. 07-cv-5415, 2009 WL 440292 (E.D. Pa. Feb. 18, 2009) ................................................ 7

*Montgomery v. New Piper Aircraft, Inc.*,
  209 F.R.D. 221 (S.D. Fla. 2002) ........................................................................................ 2

*Nafar v. Hollywood Tanning Sys, Inc.*,
  No. 08-3994, 2009 WL 2386666 (3d Cir. Aug. 5, 2009) ................................................ 2, 4

*Novell v. Migliaccio*,
  309 Wis. 2d 132, 749 N.W.2d 544 (2008) ...................................................................... 8, 9

*Pa. Employee Benefit Trust Fund v. Zeneca, Inc.*,
  No. Civ. 05-075-SLR, 2005 WL 2993937 (D. Del. Nov. 8, 2005) ...................................... 19

*Parkinson v. Hyundai Motor Am.*,
  258 F.R.D. 580 (C.D. Cal. 2008)........................................................................................ 3

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)............................................................................................................ 3

*Picus v. Wal-Mart Stores, Inc.*,
  256 F.R.D. 651 (D. Nev. 2009) .......................................................................................... 8

*Prohias v. AstraZeneca Pharms., L.P.*,
  No. 05-2433-CA-30, 2006 WL 4634292 (Fla. Cir. Ct. Oct. 11, 2006), *aff'd*, 958 So.
  2d 1054 (Fla. Ct. App. 2007), *rev. denied*, 969 So. 2d 1014 (Fla. 2007) ............................ 19

*Prohias v. Pfizer, Inc.*,
  485 F. Supp. 2d 1329 (S.D. Fla. 2007) .............................................................................. 19

*Ramsgate Court Townhome Ass'n v. West Chester Borough*,
  313 F.3d 157 (3d Cir. 2002)............................................................................................... 20

*Ranke v. Sanofi-Synthelabo Inc.*,
  436 F.3d 197 (3d Cir. 2006)............................................................................................... 20

*Rivera v. Wyeth-Ayerst Labs.*,
  283 F.3d 315 (5th Cir. 2002).............................................................................................. 11

*S. Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*,
  No. 08 CV 5175(KMW), 2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009) ............ 11, 12, 13, 14

*Se. Laborers Health & Welfare Fund v. Bayer Corp.*,
  No. 08-1928-MD, 2009 WL 2355747 (S.D. Fla. July 30, 2009) .............................. 12, 14, 15

*Seldon v. Home Loan Servs., Inc.*,
  No. 07-04480, 2009 WL 2394182 (E.D. Pa. Aug. 4, 2009) ................................................ 7

*Slobin v. Henry Ford Health Care,*
   469 Mich. 211, 666 N.W.2d 632 (2003)............................................................. 17

*Spacesaver Corp. v. Marvel Group, Inc.,*
   621 F. Supp. 2d 659 (W.D. Wis. 2009) .............................................................. 9

*Stephenson v. Capano Dev., Inc.,*
   462 A.2d 1069 (Del. 1983) ............................................................................... 11

*Sutherland v. Remax 2000,*
   872 N.Y.S. 2d 693, 2008 WL 3307201 (N.Y. Sup. Ct. 2008) ........................... 10

*Thompson v. Jiffy Lube Int'l, Inc.,*
   250 F.R.D. 607 (D. Kan. 2008) ........................................................................ 2

*Tracker Marine, L.P. v. Ogle,*
   108 S.W.3d 349 (Tex. App. 2003) ............................................................2, 4, 5

*Valente v. Sofamor, S.N.C.,*
   48 F. Supp. 2d 862 (E.D. Wis. 1999) ............................................................... 8

*Valley Forge Towers S. Condominium v. Ron-Ike Foam Insulators, Inc.,*
   393 Pa. Super. 339, 574 A.2d 641 (Pa. Super. Ct. 1990) .................................. 17

*Weinberg v. Sun Co.,*
   565 Pa. 612, 777 A.2d 442 (2001)..................................................................... 8

*Weiss v. AstraZeneca Pharms. LP,*
   No. BC 323 107, 2009 WL 602942 (Cal. Super. Ct. Mar. 5, 2009), *appeal docketed,*
   No. B215901 (Cal. Ct. App. May 6, 2009)........................................................ 19

*Williams v. Scottrade, Inc.,*
   No. 06-10677, 2006 WL 2077588 (E.D. Mich. July 24, 2006) ........................... 9

*Wright v. Gen. Mills, Inc.,*
   No. 08cv1532, 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009)........................... 16

*Young v. Joyce,*
   351 A.2d 857 (Del. 1975) ................................................................................ 11

*Zine v. Chrysler Corp.,*
   236 Mich. App. 261, 600 N.W.2d 384 (Mich. Ct. App. 1999) ......................17, 18

*Zinser v. Accufix Research Inst., Inc.,*
   253 F.3d 1180 (9th Cir. 2001)........................................................................... 2

**STATUTES AND RULES**

Fed. R. Civ. P. 7(a) ................................................................................................ 15

Fed. R. Civ. P. 8 ....................................................................................... 5, 6, 11, 13

Fed. R. Civ. P. 9(b) ........................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 15

N.Y. Gen. Bus. Law § 349 ................................................................................. 9, 10

**OTHER AUTHORITIES**

2 Moore's Federal Practice § 12.34[2] (3d ed. 2009) .............................................. 15

Restatement (Second) of Conflict of Laws § 6 (1971) .............................................. 4

Restatement (Second) of Conflict of Laws § 148 (1971) ............................... 1, 2, 3, 4

## INTRODUCTION

AstraZeneca respectfully submits this Reply Brief in Support of its Motion to Dismiss Plaintiffs' Amended Complaint.[1]  Plaintiffs' Answering Brief ("PB") spends eight pages (PB 3-10) reciting general allegations from the Amended Complaint regarding AstraZeneca's allegedly deceptive marketing of Nexium®.  That recitation underscores the Amended Complaint's two fundamental defects:  (1) the failure to allege any causal connection between allegedly deceptive Nexium marketing and plaintiffs' Nexium purchases; and (2) the failure to allege facts sufficient to show that plaintiffs were injured by the challenged marketing.  Plaintiffs' failure to cure (or even show that they can cure) these defects warrants dismissal with prejudice.

## ARGUMENT

**I.     THE LAWS OF PLAINTIFFS' HOME STATES – NOT DELAWARE LAW – GOVERN PLAINTIFFS' CLAIMS**

Plaintiffs advance no serious argument for applying Delaware law.  Their Amended Complaint concedes that "laws of the several states" govern their claims.  Am. Compl. ¶¶ 1, 195.  They do not dispute that the relevant "laws of the several states" vary from state to state, *see* OB 11-12, or that the Restatement's "most significant relationship" applies here, PB 11-18.  However, they have no viable theory under the Restatement for applying Delaware law.

*First*, plaintiffs ignore part 1 of Restatement (Second) of Conflict of Laws § 148 (1971) ("Restatement § 148"), which AstraZeneca showed requires application of the laws of plaintiffs' home states to their claims.  OB 13.  That alone is dispositive of the choice of law analysis.

*Second*, even if this Court reaches the factors listed in part 2 of § 148, plaintiffs do not

---

[1] Capitalized terms have the same meaning as in AstraZeneca's Opening Brief ("OB").

attempt to apply those factors, but instead rely on an outlier case that is contrary to the great weight of authority and obviously misapplies § 148(2). Relying on *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009), plaintiffs argue that Delaware law should apply to the claims of non-Delaware plaintiffs because Delaware is the forum state and the location of AstraZeneca's headquarters, where the allegedly deceptive marketing was "conceived and launched." PB 12-14, 16-18. This Court should not follow *Mercedes-Benz*. To begin with, *Mercedes-Benz* conflicts with numerous cases, including the Third Circuit's subsequent decision in *Nafar v. Hollywood Tanning Sys, Inc.*, No. 08-3994, 2009 WL 2386666, at *4-5 (3d Cir. Aug. 5, 2009), holding that the § 148(2) factors require application of the law of plaintiffs' home states. OB 14-15. In addition, the forum state is not a relevant contact under § 148(2), and courts have repeatedly refused to apply the law of the defendant's home state to the claims of non-resident plaintiffs and class members simply because it is defendant's home.[2] Next, applying Delaware law to plaintiffs' claims would violate due process because no plaintiff resides or purchased Nexium in Delaware. Am. Compl. ¶¶ 16-25; *see, e.g., Lyon*, 194 F.R.D. at

---

[2] *See, e.g., In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015-18 (7th Cir. 2002); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187-88, (9th Cir. 2001); *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 627-28 (D. Kan. 2008); *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1364-66 (S.D. Fla. 2007); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 82-83 (D. Mass. 2005); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 276-78 (D. Mass. 2004); *Miller v. Gen. Motors Corp.*, Nos. 98 C 7386 & 98 C 2851, 2003 WL 168626, at *2-3 (N.D. Ill. Jan. 26, 2003); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 69-71 (S.D.N.Y. 2002); *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 225-29 (S.D. Fla. 2002); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 216-18 (E.D. Pa. 2000); *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 497-98 (S.D. Ill. 1999); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 369-71 (E.D. La. 1997); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 347-348 (D.N.J. 1997); *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 170 F.R.D. 417, 422-23 (E.D. La. 1997); *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 70-71, 879 N.E.2d 910, 924-25 (2007); *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 355 (Tex. App. 2003).

213 ("Applying the Pennsylvania consumer fraud act to all putative class members' claims would be a violation of the due process rights of those plaintiffs who do not live in Pennsylvania and/or who did not purchase their boats in Pennsylvania." (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-23 (1985))).

Finally, the comments to § 148 demonstrate that *Mercedes-Benz* misapplied § 148(2). The place where plaintiff received the alleged misrepresentation "constitutes approximately as important a contact as does the place where defendant made the representations," and neither contact is as "important a contact as is the place where the plaintiff acted in reliance on the defendant's representations." Restatement § 148, cmt. g. Further, "[t]he domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant." Restatement § 148, cmt. i. Moreover, *Mercedes-Benz* applied New Jersey law even though four of the six § 148(2) factors favored the law of plaintiffs' home states, *Mercedes-Benz*, 257 F.R.D. at 67-68, but the Restatement provides that "[i]f any two of the [six factors], apart from the defendant's domicil, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues." Restatement § 148, cmt. j. The *Mercedes-Benz* court simply ignored Comments g, i, and j, and, therefore, its § 148 analysis is unpersuasive.[3]

---

[3] Plaintiffs' other authorities are also inapposite and/or distinguishable. *See Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 552-53 (W.D. Wash. 2008) (unlike here, defendant *and* some of plaintiffs were from the forum state, and, as in *Mercedes-Benz*, the district court failed to consider Comment j to § 148); *Grant Thornton LLP v. Suntrust Bank*, 133 S.W.3d 342, 358-59 (Tex. App. 2004) (unlike here, only two of the § 148(2) factors favored applying the law of plaintiffs' home states, and the court cited but failed to apply Comment j to § 148); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 597 (C.D. Cal. 2008) (applied California's "governmental interest" test, not Restatement's "most significant relationship" test).

Thus, plaintiffs have not rebutted the "strong presumption under Section 148 that the consumer fraud law of each class plaintiff's home state should apply to his respective claim."[4]

*Third*, plaintiffs argue that Delaware law should apply to non-residents' claims based on an analysis of the general factors listed in Restatement (Second) of Conflict of Laws § 6 (1971) ("Restatement § 6").  PB 11-15.  Plaintiffs are incorrect.  The specific factors listed in § 148(2) are more important than the general, non-claim-specific factors listed in § 6.[5]  But, even if the § 6 factors were relevant, the result would be the same because those factors also favor applying the law of each plaintiff's home state to that plaintiff's claims.[6]  Moreover, the fact that "Plaintiffs would lack any redress at all under" their own states' laws (PB 14 n.5, 16) is the reason those laws *must* be applied, not a reason not to apply them.  *See, e.g., Bridgestone*, 288 F.3d at 1018, 1020 ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules.");

---

[4] *Nafar*, 2009 WL 2386666, at *4-5 (citing *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 463 (D.N.J. 2009)); *see also Tracker Marine*, 108 S.W.3d at 357 n.58 ("Section 148 so clearly points to the consumer's location rather than the manufacturer's that one writer calls it 'one of the most easily applied tests in the Restatement.'") (citation omitted).

[5] *See, e.g., Barbara's Sales*, 227 Ill. 2d at 66, 879 N.E.2d at 922 ("section 148 is more appropriate [than §§ 6 and 145] because it is applied more precisely to claims based on false representations and thus provides the proper analytical framework for our 'most significant relationship' approach"); *Tracker Marine,* 108 S.W.3d at 357 n.60 ("the Restatement generally requires us to rely less on the general principles (section 6) than on the application of those principles to the particular issue to be resolved (section 148)").

[6] *See, e.g., Nafar*, 2009 WL 2386666, at *5 ("[W]e have been referred to no Section 6 considerations that would appear to rebut the presumption that each prospective plaintiff's home state has the most significant interest in litigating its residents' claims."); *Agostino*, 256 F.R.D. at 463 ("Nothing in the analysis of the principles delineated in Section 6 of the Restatement rebuts the presumption that each prospective plaintiff's home state has the most significant interest in litigating its residents' claims."); *Tracker Marine,* 108 S.W.3d at 355-58 (holding that § 6 factors favored applying laws of plaintiffs' home states).

*Tracker Marine*, 108 S.W.3d at 358 (rejecting argument that law of defendant's home state should apply "because it is one of the most liberal consumer protection statutes in the country").[7]

Thus, the law of each plaintiff's home state should govern that plaintiff's claims.

## II.   PLAINTIFFS FAIL TO IDENTIFY ANY ALLEGATIONS THAT ESTABLISH THE REQUIRED CAUSATION AND/OR RELIANCE AND INJURY

Plaintiffs concede that Rule 9(b)'s "particularity" requirement applies to their claims, OB 17-18; PB 10-11; *Eames v. Nationwide Mut. Ins. Co.*, No. 08-4125, 2009 WL 3041997, at *2 (3d Cir. Sept. 24, 2009) (affirming Rule 9(b) dismissal of DCFA claim); that Rule 9(b)'s "particularity" requirement applies to their allegations of causation, reliance, and injury, OB 18-19 (citing cases); and that their allegations must satisfy the requirements of Rule 8, as clarified by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), OB 19; PB 10.

Under both Rule 9(b) and Rule 8, plaintiffs fail to adequately allege the essential elements of causation and/or reliance and injury.  Plaintiffs effectively concede that their negligent misrepresentation claims should be dismissed because they do not dispute that those claims require reliance, or that they have not alleged that they, their doctors, or their members' doctors relied on any allegedly deceptive Nexium marketing.  The consumer fraud claims of TPP Plaintiffs and plaintiffs McGrorty, Scofield, and Tikkuri fail for the same reason because, despite plaintiffs' arguments to the contrary, the applicable consumer fraud laws also require reliance. Moreover, plaintiffs do not dispute that their consumer fraud claims require causation and injury,

---

[7] *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628 (3d Cir. 1989), is inapposite because it applied Delaware's old choice of law rules, not the Restatement's "most significant relationship" test.  *Id.* at 642-43.  Moreover, *Lony* actually supports AstraZeneca's argument because it affirmed the district court's application of the law of plaintiff's home state (rather than the law of defendant's home state) to plaintiff's negligent misrepresentation claim.  *Id.* at 643.

and their Brief confirms that they have not alleged a causal connection between any allegedly deceptive Nexium marketing and any injury suffered by the plaintiffs.

### A. Plaintiffs Do Not Dispute That Their Negligent Misrepresentation Claims Should Be Dismissed For Failure To Allege Reliance

Plaintiffs do not dispute that their negligent misrepresentation claims require reliance. OB 16 & App. at 1-6; *see also H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 142 (Del. Ch. 2003) ("Justifiable reliance is an element of . . . negligent misrepresentation under Delaware law."). Nor do they dispute that they fail to allege that they, their doctors, or their members' doctors relied upon any allegedly deceptive Nexium marketing. OB 21-27, 30-31. Thus, plaintiffs' negligent misrepresentation claims should be dismissed with prejudice.

### B. Plaintiffs' Consumer Fraud Claims Should Be Dismissed For Failure To Adequately Allege Causation And/Or Reliance And Injury

Plaintiffs' consumer fraud claims all require causation and/or reliance. OB 16 & App. at 1-6. Plaintiffs' Answering Brief confirms they cannot adequately allege these essential elements.

#### 1. Plaintiffs Fail To Allege Causation Or Reliance

Plaintiffs do not dispute that they fail to allege that: (1) they were exposed to any allegedly deceptive Nexium ads, that they were deceived by or relied upon those ads in paying for Nexium, or that those ads caused them to pay for Nexium; or (2) their (or their members') doctors were exposed to any allegedly deceptive Nexium marketing, that they were deceived by or relied upon such marketing, or that such marketing caused them to prescribe Nexium to plaintiffs (or their members). OB 22-27, 30-31. Under either Rule 9(b) or Rule 8, these failures to plead causation or reliance require dismissal. Plaintiffs offer four responses; none has merit.

a.     **Plaintiffs Misconstrue Michigan, Nevada, New York, Pennsylvania, And Wisconsin Consumer Fraud Law**

Plaintiffs argue that they do not need to plead reliance to "state valid causes of action under" the consumer fraud laws of Michigan, Nevada, New York, Pennsylvania, and Wisconsin, and that they have adequately pleaded causation.  PB 29-37.  Plaintiffs are incorrect.

<u>Pennsylvania (PEBTF, AFSCME, and Scofield)</u>.  The consumer fraud claims of plaintiffs PEBTF, AFSCME, and Scofield are governed by the Pennsylvania Consumer Protection Law ("CPL").  OB 11-15; *supra* at 1-5.  To state their CPL claims, PEBTF, AFSCME, and Scofield must allege facts sufficient to establish reliance.  *See* OB 26-27, 30 n.15 (citing *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008)).  Despite the Third Circuit's binding holding in *Hunt*, plaintiffs argue, based on the Court's decision in *Alberton v. Commw. Land Title Ins. Co.*, 247 F.R.D. 469 (E.D. Pa. 2008), that "'proof of justifiable reliance is no longer required to succeed on a claim under the UTPCPL.'"  PB 33 (citation omitted).

Plaintiffs fail to disclose that the Third Circuit specifically disapproved of *Alberton*'s conclusion that the CPL does not require reliance.  *Hunt*, 538 F.3d at 225 n.15 ("We thus think mistaken those trial-court opinions that rely on the 1996 amendment to conclude that reliance is no longer required of private plaintiffs suing under the Consumer Protection Law's catch-all provision.  *See, e.g.*, *Alberton v. Commonwealth Land Title Ins. Co.*, 247 F.R.D. 469, 480-81 (E.D. Pa. 2008) . . . .").[8]  Thus, the CPL requires reliance, which means that the failure of

---

[8] Plaintiffs' other authorities are not to the contrary.  *See Molley v. Five Town Chrysler, Inc.*, No. 07-cv-5415, 2009 WL 440292, at * 3 (E.D. Pa. Feb. 18, 2009) (declining to reach the question of whether a claim under the CPL "catch all" provision requires reliance because, unlike here, plaintiffs in that case alleged that they "act[ed] in reliance on the misrepresentation"); *Seldon v. Home Loan Servs., Inc.*, No. 07-04480, 2009 WL 2394182, at *16 (E.D. Pa. Aug. 4, 2009) (continued . . .)

PEBTF, AFSCME, and Scofield to allege that they, their doctors, or their members' doctors relied on allegedly deceptive Nexium marketing is fatal to their CPL claims.[9]

Nevada (McGrorty).   Plaintiff McGrorty's consumer fraud claim is governed by the Nevada Deceptive Trade Practices Act ("NDTPA").   OB 11-15; *supra* at 1-5.   To state her NDTPA claim, McGrorty must allege facts sufficient to establish reliance.   OB 26-27 (citing *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009)).   Plaintiffs cite *Picus* (PB 37), but fail to acknowledge the reliance requirement it imposed.

Wisconsin (Tikkuri).   Plaintiff Tikkuri's consumer fraud claim is governed by the Wisconsin Deceptive Trade Practices Act ("WDTPA").   OB 11-15; *supra* at 1-5.   To state her WDTPA claim, Tikkuri must allege facts sufficient to establish reliance.   OB 26-27 (citing *Valente v. Sofamor, S.N.C.*, 48 F. Supp. 2d 862, 874 (E.D. Wis. 1999)).   Plaintiffs argue incorrectly that *Valente* was overruled by the Wisconsin Supreme Court, PB 34, but that court cited *Valente* with approval for the proposition that:   "Reliance is an aspect of the third element [of a WDTPA claim], whether a representation caused the plaintiff's pecuniary loss."   *Novell v.*

---

(. . . continued)

(holding that a claim under the CPL "catch all" provision requires "justifiable reliance," and dismissing several of plaintiffs' claims for failure to allege reliance).

[9] *See*, *e.g.*, *Hunt*, 538 F.3d at 227 (reversing denial of motion to dismiss CPL claim because plaintiff "has not adequately alleged that he justifiably relied on [defendant's] deception, for he has not alleged that [defendant's] deception induced him to purchase [defendant's] products or engage in any other detrimental activity"); *Weinberg v. Sun Co.*, 565 Pa. 612, 618, 777 A.2d 442, 446 (2001) (holding that "plaintiff must allege reliance, that he purchased Ultra® because he heard and believed Sunoco's false advertising that Ultra® would enhance engine performance"); *Aronson v. GreenMountain.com*, 809 A.2d 399, 405 (Pa. Super. 2002) ("Each plaintiff must allege reliance, and here that means that each plaintiff purchased GreenMountain energy because he or she viewed and believed GreenMountain's false advertisements.").

*Migliaccio*, 309 Wis. 2d 132, 152, 749 N.W.2d 544, 553 (2008); *see also Spacesaver Corp. v. Marvel Group, Inc.*, 621 F. Supp. 2d 659, 662-64 (W.D. Wis. 2009) (dismissing WDTPA claim because "plaintiff does not allege that it was 'induced' to do anything by defendant").  Thus, the WDTPA requires reliance as an aspect of causation.

Michigan (Watters).  Plaintiff Watters' consumer fraud claim is governed by the Michigan Consumer Protection Act ("MCPA").  OB 11-15; *supra* at 1-5.  To state her MCPA claim, Watters must allege facts sufficient to establish causation and reliance.  OB 30 n.15 (citing *Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775, 782-83 (W.D. Mich. 2006)); *see also Kussy v. Home Depot U.S.A. Inc.*, No. 06-12899, 2006 WL 3447146, at *7 (E.D. Mich. Nov. 28, 2006) (dismissing MCPA claim for lack of reliance); *Williams v. Scottrade, Inc.*, No. 06-10677, 2006 WL 2077588, at *7 (E.D. Mich. July 24, 2006) (same).  Plaintiffs do not dispute that the MCPA requires causation, but argue, based on *Dix v. Am. Bankers Life Assurance Co.*, 429 Mich. 410, 415 N.W.2d 206 (1987), that "the MCPA does not require proof of reliance."  PB 29.  Plaintiffs are incorrect.  *Dix* held that MCPA plaintiffs "need not individually prove reliance" to obtain class certification if they can "establish that a reasonable person would have relied on the" alleged misrepresentation.  *Dix*, 429 Mich. at 418, 415 N.W.2d at 209.  Thus, the court merely recognized that, in some instances, class-wide reliance may be inferred.  It did not hold that reliance is not an element of an MCPA claim.  *See Kussy*, 2006 WL 3447146, at *7 (distinguishing *Dix* and holding that MCPA requires reliance).  In any event, there is no dispute that Watters must allege facts sufficient to establish causation.

New York (Macken).  Plaintiff Macken's consumer fraud claim is governed by New York General Business Law, Section 349.  OB 11-15; *supra* at 1-5.  To state his § 349 claim, Macken must allege facts sufficient to establish causation.  OB 26; PB 35; *Gale v. Int'l Bus.*

*Machs. Corp.*, 9 A.D.3d 446, 447, 781 N.Y.S.2d 45, 47 (N.Y. App. Div. 2004) (affirming dismissal of § 349 claim because, although plaintiff identified particular misleading statements, "he nowhere states in his complaint that he saw any of these statements before he purchased or came into possession of his hard drive," and  "[i]f the plaintiff did not see any of these statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury"); *Sutherland v. Remax 2000*, 872 N.Y.S. 2d 693, 2008 WL 3307201, at *4-5 (N.Y. Sup. Ct. 2008) (dismissing § 349 claim because "[t]here are no allegations that [plaintiff] observed or was influenced by any advertisements by Well Fargo").

Thus, plaintiffs' consumer fraud claims all require causation and/or reliance.  However, plaintiffs do not dispute that they failed to allege that (1) they, their doctors, or their members' doctors were exposed to any allegedly deceptive Nexium marketing, let alone to describe the substance of the message they saw, (2) they, their doctors, or their members' doctors were deceived by that message, (3) they, their doctors, or their members' doctors relied on that message in purchasing or prescribing Nexium, or (4) that such message caused them to pay for Nexium or their doctors or their members' doctors to prescribe Nexium.  Accordingly, plaintiffs' consumer fraud claims should be dismissed.  *See* OB 20-27, 30-31 (citing cases); *infra* at 13-14.

### b. Plaintiffs Have Failed To Adequately Allege Causation Even Under The Delaware Consumer Fraud Act

As discussed above, plaintiffs incorrectly assert that the DCFA applies to their consumer fraud claims.  PB 18-22.  Even if that were so, plaintiffs have not stated a DCFA claim. Plaintiffs concede that the DCFA requires them to allege "a causal link between the Defendants'

deceptive marketing campaign and Plaintiffs' losses." PB 2, 11.[10]  However, plaintiffs have not

adequately alleged causation under Rule 9(b) or Rule 8.  *See supra* at 10; OB 20-27, 30-31.

### c.    *Warfarin* And *Desiano* Are Inapposite

Relying on *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395 (3d Cir. 2000), and

*Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003), plaintiffs argue that "any

requirement of causation may be established by allegations that plaintiffs paid higher prices

because of the defendant drug manufacturer's campaign of deception."  PB 18-21.  This

argument fails because courts have repeatedly rejected "price inflation" theories – another name

for "fraud-on-the-market" theories – outside of the securities context, including in the

pharmaceuticals context.  OB 32-35 (citing cases).  Recognizing this authority, plaintiffs

disclaim reliance on the "price inflation" theory.  PB 3 ("Plaintiffs have not alleged fraud on the

market, *i.e.*, that the price of Nexium was inflated because of Defendants' fraudulent scheme.").

---

[10] *See also Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983) (holding that DCFA plaintiff may only "recover for an[] injury resulting from the direct and natural consequences of his acting on the strength of the defendant's statements"); *Young v. Joyce*, 351 A.2d 857, 859 (Del. 1975) (holding that DCFA plaintiff may only "recoup any actual losses suffered as a result of fraud or deception practiced against him"); *Clay*, 188 F.R.D. at 502-03 (relying on *Young* and holding that the DCFA requires a plaintiff to "establish that the defendants' misconduct was the proximate cause of his or her damages").  Even if the DCFA did not require it, causation is required to establish Article III standing (OB 16 n.10), and plaintiffs' allegations do not satisfy Article III's causation requirement.  *See, e.g., Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319-22 (5th Cir. 2002) (reversing and ordering dismissal for lack of Article III standing because plaintiffs failed to allege facts sufficient to show that defendant's alleged wrongdoing caused their doctors to prescribe the drug, or that they were injured by their purchase of the drug); *S. Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175(KMW), 2009 WL 3151807, at *5-8 (S.D.N.Y. Sept. 30, 2009) (dismissing TPPs' claims for failure to adequately allege Article III causation because "Plaintiffs do not expressly allege that physicians relied upon Defendant's misrepresentations").

Even if plaintiffs had not disclaimed their "price inflation" theory, these cases do not support the proposition that vague allegations that plaintiffs "paid more" because of a marketing campaign state a claim.  *Warfarin* addressed antitrust – not consumer fraud – claims, and the unique facts of that market permitted an inference of causation that is not available here.  There were only two drugs in the market – Coumadin and a generic substitute – and plaintiffs alleged that, by effectively excluding the generic substitute, DuPont caused them to pay for Coumadin. *Warfarin*, 214 F.3d at 397.  The court held that, because Coumadin was the *only* alternative drug, plaintiffs had "no choice" but to buy Coumadin.  *Id.* at 401.  No comparable allegation is made here, where five PPIs other than Prilosec and Nexium were available.  Am. Compl. ¶ 51.[11]

*Desiano* shows plaintiffs' failure to allege causation and reliance.  There, TPPs alleged the facts missing here – that "had they not been deceived by the Defendants' misrepresentations about the safety of Rezulin, they would have taken steps so as not to purchase Rezulin at the prices set by Warner-Lambert," including "to exclude it altogether from their approved schedules, set a low scheduled value, set a high copay obligation, and otherwise dissuade doctors from prescribing it."  *Desiano*, 326 F.3d at 349 n.9.  Where, as here, TPP Plaintiffs offer no comparable allegations, numerous courts have not hesitated to dismiss the complaint.[12]

---

[11] *See In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774 (SRC), 2009 WL 2043604, at *21 (D.N.J. July 10, 2009) (distinguishing *Warfarin*).

[12] *See infra* at 13-14; OB 20 (citing cases); *S. Ill. Laborers*, 2009 WL 3151807, at *7 (distinguishing *Desiano*); *Se. Laborers Health & Welfare Fund v. Bayer Corp.*, No. 08-1928-MD, 2009 WL 2355747, at *14-15 (S.D. Fla. July 30, 2009) (same); *Schering-Plough*, 2009 WL 2043604, at *17-18 (same).  The dicta hypothetical from *Desiano* that plaintiffs rely upon (PB 20-21) is also inapplicable.  The hypothetical involved marketing of a drug as "a great advancement" over an older drug when it was actually "exactly as . . . effective" as the older drug and priced higher.  *Desiano*, 326 F.3d at 349-50.  Here, however, plaintiffs admit that Nexium was proven *more effective* than Prilosec on certain parameters, and that Nexium was

(continued . . .)

Finally, *Warfarin* and *Desiano* are further distinguishable because neither case applied the "particularity" requirement of Rule 9(b).  Instead, both applied the "no set of facts" pleading standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which the Supreme Court subsequently expressly "retire[d]" in *Twombly* "as an incomplete, negative gloss on an accepted pleading standard."  *Compare Warfarin*, 214 F.3d at 397, *and Desiano*, 326 F.3d at 347, *with Twombly*, 550 U.S. at 561-63.  Since *Twombly*, federal district courts in this circuit and others have repeatedly dismissed complaints against prescription drug manufacturers in cases involving pharmaceutical marketing for failure to adequately allege causation and/or reliance and injury under both Rule 8 and 9(b).  OB 20 (citing cases).  Since the filing of AstraZeneca's Opening Brief, three other district courts – including one from this circuit – have done the same thing. *See In re Actimmune Mktg. Litig.*, No. C 08-02376, 2009 WL 3740648, at *10-14 (N.D. Cal. Nov. 6, 2009) (dismissing consumers' and TPPs' consumer fraud claims for failure to adequately allege causation and reliance); *Cent. Reg'l Employees Benefit Fund v. Cephalon, Inc.*, No. 09-3418 (MLC), 2009 WL 3245485, at *3-4 (D.N.J. Oct. 7, 2009) (dismissing TPPs' fraud claim for "fail[ure] to meet the pleading requirements of *Twombly*, *Iqbal*, and Rule 9(b)"); *S. Ill. Laborers*, 2009 WL 3151807, at *5-8 (dismissing TPPs' consumer fraud, negligent misrepresentation, and

---

(. . . continued)

initially priced *lower* than Prilosec.  Am. Compl. ¶¶ 58, 76-77, 168; PB 7 n.2, 20 n.10, 23; *see also Depriest v. AstraZeneca Pharms. L.P.*, No. 08-1257, --- S.W.3d ---, 2009 Ark. 547, 2009 WL 3681868, at 6 (Ark. Nov. 5, 2009) (holding that "the FDA-approved labeling did, in fact, indicate that the approved dose of Nexium was superior to the approved dose of Prilosec at healing erosive esophagitis").

unjust enrichment claims for failure to adequately allege Article III causation because "Plaintiffs do not expressly allege that physicians relied upon Defendant's misrepresentations").[13]

       **d.**      **Paragraph 178 Of The Amended Complaint Does Not Establish Causation Or Reliance**

Plaintiffs argue (PB 10, 19) that causation is adequately alleged in Paragraph 178 of the Amended Complaint, which reads: "The claims of the representative Plaintiffs are typical of the claims of the Class because they, like all Class members, have purchased Nexium and have been harmed by Defendants' misconduct because they would not have purchased Nexium had they known the truth." Am. Compl. ¶ 178. Numerous courts have held, in similar contexts, that such an allegation is merely conclusory and insufficient to support claims of this type under Rule 9(b) and *Twombly/Iqbal*.[14] Thus, Paragraph 178 does not salvage plaintiffs' claims.

---

[13] *See also In re Toshiba Am. HD DVD Mktg. & Sales Prac. Litig.*, No. 08-939 (DRD), 2009 WL 2940081, at *13 (D.N.J. Sept. 11, 2009) (dismissing consumer fraud claim for lack of causation because "Plaintiffs fail to allege when Toshiba made its alleged misrepresentations and when, if ever, the Plaintiffs were exposed to those misrepresentations").

[14] *See, e.g.*, OB 19; *Actimmune*, 2009 WL 3740648, at *10-14 (dismissing consumer fraud claims for lack of reliance even though plaintiffs alleged their doctors were "'likely' exposed to fraudulent conduct and 'likely' relied upon that conduct"); *S. Ill. Laborers*, 2009 WL 3151807, at *1-2, 5-8 (dismissing consumer fraud, negligent misrepresentation, and unjust enrichment claims for lack of causation even though plaintiffs alleged "they would not have paid [a] premium for Lipitor if they had known that Defendant was engaging in unlawful marketing"); *Southeast Laborers*, 2009 WL 2355747, at *2, 10-18 (dismissing consumer fraud, negligent misrepresentation, and unjust enrichment claims for lack of causation and reliance even though plaintiffs alleged they "'would never have agreed to pay for Trasylol had they known the true risk of the drug'"); *Schering-Plough*, 2009 WL 2043604, at *25-26, 31, 33-34 (dismissing consumer fraud, negligent misrepresentation, and unjust enrichment claims for lack of causation and reliance even though plaintiffs alleged defendants deceptive marketing "'caused third party payors to pay for an increased amount of medication that did not benefit their members'"); *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1051-56 (N.D. Cal. 2009) (dismissing consumer fraud claims for lack of causation even though plaintiffs alleged "'[i]n reliance on Defendants' representations, tens of thousands of prescriptions were written by pulmonologists for the treatment of IPF and tens of thousands of consumers and/or [TPPs] paid for Actimmune® prescriptions needlessly'"); *cf. Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629, 840 N.Y.S.2d 445

(continued . . .)

## 2. Plaintiffs Fail To Allege Injury

Plaintiffs concede that their consumer fraud claims require injury as an essential element. OB 16 & App. 1-6; PB 19. As noted above, plaintiffs have abandoned the "price inflation" theory of injury stated in their Amended Complaint. *Compare* Am. Compl. ¶¶ 188-90 *with* PB 3. Instead, plaintiffs argue that "they paid more for Nexium than they would have paid for Prilosec in its generic or brand-name form." PB 3, 10. Plaintiffs' argument fails.

*First*, plaintiffs' assertion in their Brief that "they paid more for Nexium than they would have paid for Prilosec in its generic or brand-name form" is irrelevant because the 89-page Amended Complaint contains no such allegations. *See Commw. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("'It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (citation omitted)).[15]

*Second*, plaintiffs do not dispute that they fail to allege what they paid for Nexium; which of the other six PPIs their (or their members') doctors would have prescribed to them instead of Nexium; or what they would have paid for that unidentified PPI. OB 27-28, 31-32. That failure is fatal to plaintiffs' ability to establish injury under their theory.[16]

_____

(. . . continued)

(2007) (affirming dismissal of consumer fraud claim; plaintiff's allegation that "she would not have purchased the drug [Neurontin] absent defendant's deceptive practices" was insufficient).

[15] *See also Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) ("we do not consider after-the-fact allegations in determining the sufficiency of her complaint under Rules 9(b) and 12(b)(6)"); *see also* 2 Moore's Federal Practice § 12.34[2] (3d ed. 2009) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").

[16] *See Southeast Laborers*, 2009 WL 2355747, at *9 (dismissing TPPs' claims because determining whether they were injured would "require speculation as to what alternative
(continued . . .)

*Third*, contrary to plaintiffs' assertion (PB 10, 19), ¶¶ 168 and 173 of the Amended Complaint do not establish injury *to plaintiffs*. Neither paragraph mentions any plaintiff, let alone alleges what that plaintiff paid for Nexium, what other medication that plaintiff would have paid for instead of Nexium, or what that plaintiff would have paid for that other medication. Indeed, ¶ 168 alleges that: "AstraZeneca priced Nexium *below* Prilosec." Am. Compl. ¶ 168 (emphasis added). Nor do plaintiffs' generalized allegations that they paid for Nexium and were therefore injured salvage their claims. PB 10, 19 (citing Am. Compl. ¶¶ 16-22). That is precisely the type of conclusory pleading of injury that is insufficient under both Rule 9(b) and *Twombly/Iqbal*. *See* OB 19; *see also Wright v. Gen. Mills, Inc.*, No. 08cv1532, 2009 WL 3247148, at *5 (S.D. Cal. Sept. 30, 2009) (plaintiff's "sparse allegation of injury-in-fact does not meet the *Twombley* (sic) and *Iqbal* pleading standard").

*Fourth*, plaintiffs' reliance on *Warfarin* to establish injury (PB 18-19) is misplaced. As noted above, *Warfarin* applied a since-rejected pleading standard and, as plaintiffs concede, it relied on a price inflation theory plaintiffs have now abandoned. *See supra* at 11, 13; PB 3, 18-19. Moreover, plaintiffs there alleged that they themselves paid inflated prices for Coumadin. *Warfarin*, 214 F.3d at 398. Here, plaintiffs allege only that they paid for Nexium, not that they

---

(. . . continued)

medications a particular physician would have ordered in a particular surgery, and how much that medication would have cost"); *Kantner v. Merck & Co., Inc.*, No. 49D060411PL002185, 2007 WL 3092779, at 3 ¶ 16 (Ind. Super. Ct. Apr. 18, 2007) (dismissing consumer's claims because she "makes no allegation regarding the price of Vioxx as compared to non-prescription painkillers"); *see also Toshiba*, 2009 WL 2940081, at *13 (dismissing consumer fraud claim because "Plaintiffs fail to allege where . . . they purchased their HD DVD Players; how much they paid for the HD DVD Players; and how much regular DVD players cost at the time (i.e., how much of a 'premium' they claim to have paid for their HD DVD Players)").

16

would have paid less for some unidentified alternative medication.  Am. Compl. ¶¶ 16-22.

### 3.  TPP Plaintiffs Lack Standing Under The CPL And MCPA

PEBTF, AFSCME, and Watters each failed to plead another essential element of their claims.  They purport to have purchased Nexium to further the provision of health insurance, *not* for the requisite "personal, family, or household purposes."  OB 29-30 (citing *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 242 (3d Cir. 2002) ("we have uncovered no Pennsylvania decision finding actionable a non-representative plaintiff's claim based on others' 'personal uses'"), and *Zine v. Chrysler Corp.*, 236 Mich. App. 261, 271, 600 N.W.2d 384, 392 (Mich. Ct. App. 1999) ("The intent of the [MCPA] is 'to protect consumers in their purchases of goods which are primarily used for personal, family or household purposes.'").[17]

Relying on *Valley Forge Towers S. Condominium v. Ron-Ike Foam Insulators, Inc.*, 393 Pa. Super. 339, 574 A.2d 641 (Pa. Super. Ct. 1990), *Commw. v. TAP Pharm. Prods., Inc.*, 885 A.2d 1127 (Pa. Commw. Ct. 2005), and *In re Bextra & Celebrex Mktg. Sales Prac. & Prod. Liab. Litig.*, 495 F. Supp. 2d 1027 (N.D. Cal. 2007), plaintiffs argue that they have standing under the CPL and MCPA.  PB 29-32.  All three cases are inapposite.

In *TAP Pharm.* and *Valley Forge*, the courts held that plaintiffs had standing under the CPL because they sued in their "representative capacity" on *behalf* of consumers.  *TAP Pharm.*, 885 A.2d at 1141-43; *Valley Forge*, 393 Pa. Super. at 343, 347-48, 352-55, 574 A.2d at 643, 645, 647-49.  Here, PEBTF and AFSCME do not assert claims in a representative capacity on behalf of their members; they purport to assert claims on behalf of themselves.  Am. Compl. ¶¶ 16, 18.

---

[17] *See also Slobin v. Henry Ford Health Care*, 469 Mich. 211, 216-18, 666 N.W.2d 632, 634-35 (2003) (holding that MCPA claim fails because law firm's purchase of "medical records" was "not 'primarily for personal, family, or household use'"); *accord Cent. Reg'l*, 2009 WL 3245485, at *3 (dismissing TPP's consumer fraud claim for lack of standing).

In *Bextra*, the district court held that TPPs had MCPA standing.  *Bextra*, 495 F. Supp. 2d at 1033-34.  This Court should not follow *Bextra* because the district court in that case ignored the Michigan appellate court's decision in *Zine*.  Moreover, Watters is different from the plaintiff in *Bextra*; she is *not* a TPP and she does not allege that she purchased any Nexium.  Instead, she is a former insurance regulator purporting to sue on behalf of two insolvent TPPs that allegedly paid for Nexium.  Am. Compl. ¶ 17.  Thus, TPP Plaintiffs lack standing.

### C.    Associational Plaintiffs Fail To Allege Article III Standing

Associational Plaintiffs do not dispute that they lack standing to sue in their own right, but instead must rely on principles of "associational standing."  OB 35.  They lack associational standing because they have not alleged facts sufficient to establish that their *members* suffered an injury caused by AstraZeneca's allegedly deceptive Nexium marketing, and because their members would need to participate in this lawsuit to prove their claims.  OB 35-37 (citing cases).[18]  Associational Plaintiffs rely upon conclusory allegations that their members "have used and paid for Nexium and have been injured by the unlawful conduct alleged in the Complaint," PB 27, which are insufficient for the reasons set forth above.  Associational Plaintiffs' argument that they can establish the requisite causation, reliance, and injury without the participation of their members (PB 28) is similarly unavailing.  To establish causation, reliance, and injury on behalf of their members, they would need testimony from their members and/or their members' doctors that the allegedly deceptive Nexium marketing caused them to purchase or prescribe Nexium, or that they or their doctor relied on that marketing in purchasing or prescribing

---

[18] Because their consumer fraud claims are governed by Indiana (USAI), Wisconsin (WCA), and North Carolina (NCFS) law, Associational Plaintiffs would have to allege causation, reliance, and injury on behalf of their members.  *See supra* at 8-9; OB 16 & App. at 1, 4, 6.

Nexium, and that absent the challenged marketing, their doctor would have prescribed a different PPI that would have been cheaper for them than Nexium. *See Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1339-40 (S.D. Fla. 2007); *Bextra*, 495 F. Supp. 2d at 1038.

## III.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

Plaintiffs do not dispute that their unjust enrichment claim is based on the same factual allegations as their consumer fraud and negligent misrepresentation claims. Am. Compl. ¶¶ 208-13. Nor do they dispute that, to the extent their tort claims fail, their unjust enrichment claims should fail as well. OB at 37-38 & n.17; *Actimmune*, 2009 WL 3740648, at *16. Thus, if plaintiffs' tort claims are dismissed, their unjust enrichment claims should also be dismissed.

## IV.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Plaintiffs argue incorrectly that they should be allowed to amend because "no court has ever dismissed any complaint in this action for failure to allege causation or reliance." PB 39.

*First*, Judge Robinson previously dismissed these plaintiffs' negligent misrepresentation and unjust enrichment claims for lack of reliance. *Pa. Employee Benefit Trust Fund v. Zeneca, Inc.*, No. Civ. 05-075-SLR, 2005 WL 2993937, at *5 (D. Del. Nov. 8, 2005).

*Second*, the Florida state courts dismissed a materially identical action brought by the same counsel as in this action for lack of causation and injury. *See Prohias v. AstraZeneca Pharms., L.P.*, No. 05-2433-CA-30, 2006 WL 4634292 (Fla. Cir. Ct. Oct. 11, 2006), *aff'd*, 958 So. 2d 1054 (Fla. Ct. App. 2007), *rev. denied*, 969 So. 2d 1014 (Fla. 2007).

*Third*, a California state court granted summary judgment to AstraZeneca in a materially identical action brought by the same counsel as in this action based on plaintiffs' failure to prove causation. *Weiss v. AstraZeneca Pharms. LP*, No. BC 323 107, 2009 WL 602942, at 3-9 (Cal. Super. Ct. Mar. 5, 2009), *appeal docketed*, No. B215901 (Cal. Ct. App. May 6, 2009).

19

*Fourth*, AstraZeneca has repeatedly raised these same challenges to plaintiffs' allegations in this action, including in two prior motions to dismiss, and on appeal from the dismissal of plaintiffs' Consolidated Complaint.  OB 38.  Plaintiffs amended their complaint again after all of these challenges, and still did not cure the challenged defects.  This history alone requires dismissal with prejudice.  OB 39 (citing cases).

A recent decision of the Arkansas Supreme Court underscores the problem plaintiffs face. In *DePriest*, the court affirmed the dismissal of plaintiffs' 290-page complaint in a materially identical action, concluding that *none* of the Nexium ads plaintiffs challenged was actionable under the state consumer fraud statute or state common law.  2009 Ark. 547, 2009 WL 3681868, at 6-8.  Here, plaintiffs challenge the same ads.  The fact that most (if not all) of the Nexium ads plaintiffs challenge are not actionable makes their failure to plead with specificity what ads allegedly caused their injury all the more problematic.

*Finally*, leave to amend should be denied because plaintiffs do not provide a draft amended complaint or even explain how they could cure the defects described above in any amended complaint.  *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) (discussing Third Circuit's "long-standing" rule "that a failure to submit a draft amended complaint is fatal to a request for leave to amend").[19]

## CONCLUSION

For the foregoing reasons, AstraZeneca's Motion should be granted, and plaintiffs' Amended Complaint should be dismissed with prejudice.

---

[19] *See also Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 205-06 (3d Cir. 2006) (affirming denial of leave to amend where plaintiffs merely requested leave in opposition to motion to dismiss and did not move for leave or provide proposed amended complaint); *Ramsgate Court Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002) (same).

Dated:  November 17, 2009

McCARTER & ENGLISH, LLP

By: /s/ Daniel M. Silver
Michael P. Kelly (DE ID No. 2295)
Daniel M. Silver (DE ID No. 4758)
Renaissance Center
405 North King Street, 8th Floor
Wilmington, DE  19899
(302) 984-6300
mkelly@mccarter.com
dsilver@mccarter.com

SIDLEY AUSTIN LLP
Mark E. Haddad
Alycia A. Degen
Joshua E. Anderson
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013
(213) 896-6000
mhaddad@sidley.com
adegen@sidley.com
janderson@sidley.com

SIDLEY AUSTIN LLP
John W. Treece
One South Dearborn
Chicago, IL  60603
(312) 853-7000
jtreece@sidley.com

*Attorneys for Defendants*

21